# 22-2057

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

MINHYE PARK,

*Plaintiff-Appellant,*

—against—

DAVID DENNIS KIM,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## APPENDIX
## VOLUME I OF II
### (PAGE A-1 to A-263)

ROBERT B. GIBSON DANIEL
S. RATNER ALEJANDRA R.
GIL HEIDELL, PITTONI,
MURPHY
    & BACH, LLP
81 Main Street, Suite 112
White Plains, New York 10601
(914) 559-3100

*Attorneys for Defendant-Appellee*

JAE S. LEE
JSL LAW OFFICES P.C.
626 RXR PLAZA
Uniondale, New York 11556
(718) 461-8000

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

PAGE

District Court Docket Entries ................................................................................ A-1

Complaint, dated June 13, 2020 ....................................................................... A-11

Proposed Discovery Plan, Rule 26 (f), dated November 11, 2020 ................... A-20

Memorandum of Low in Support Plaintiff's Objection to Defendant's Motion to
    Compel, dated August 5, 2021 ................................................................... A-22

Oppo. & Request Settlement Conference, dated August 9, 2021 ..................... A-24

Transcript of Civil Cause for Status Conference, dated August 11, 2021 ........ A-65

Expert Report, dated September 13, 2021 ......................................................... A-91

Plaintiff's Motion for Protective Order, dated September 18, 2021 ................. A-95

Letter for Motion for Sanctions, dated September 22, 2021 ........................... A-100

Letter for Plaintiff's Deposition Time Zone Issue, dated September 24, 2021 A-103

Examination Before Trial, dated January 6, 2022 .......................................... A-105

Examination Before Trial Transcript, dated January 26, 2022 ....................... A-191

Eastern District of New York - LIVE Database 1.7 (Revision 1.7.1)

APPEAL,ACO,MAGAPP

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:20-cv-02636-PKC-LB

Park v. Kim                                      Date Filed: 06/13/2020
Assigned to: Judge Pamela K. Chen                Date Terminated: 08/25/2022
Referred to: Magistrate Judge Lois Bloom         Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Medical Malpractice     Nature of Suit: 362 Personal Inj. Med.
                                                 Malpractice
                                                 Jurisdiction: Diversity

**Plaintiff**

**Minhye Park**                      represented by **Jae Soog Lee**
                                                 Jsl Law Offices, P.C.
                                                 626 Rxr Plaza
                                                 Uniondale, NY 11358
                                                 718-461-8000
                                                 Fax: 866-449-8003
                                                 Email: jae@lawjsl.com
                                                 *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**David Dennis Kim**                 represented by **Alejandra R. Gil**
                                                 Heidell, Pittoni, Murphy & Bach, LLP
                                                 81 Main Street
                                                 White Plains, NY 10601
                                                 914-559-3100
                                                 Fax: 914-949-1160
                                                 Email: agil@hpmb.com
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Bianca Marie Van Deusen**
                                                 Heidell, Pittoni, Murphy & Bach
                                                 99 Park Avenue
                                                 7th Floor
                                                 New York, NY 10016
                                                 212-286-8585
                                                 Fax: 212-490-8966
                                                 Email: bvandeusen@hpmb.com
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Hayley B Newman**
                                                 Heidell, PIttoni, Murphy & Bach, LLP
                                                 NY
                                                 99 Park Avenue
                                                 NEW YORK

**A-2**

New York, NY 10016
212-286-8585
Email: hnewman@hpmb.com
*ATTORNEY TO BE NOTICED*

**Olivia Darius**
Heidell Pittoni Murphy & Bach LLP
81 Main Street
White Plains, NY 10601
914-559-3100
Fax: 914-949-1160
Email: odarius@hpmb.com
*ATTORNEY TO BE NOTICED*

**Robert B. Gibson**
Heidell, Pittoni, Murphy & Bach, LLP
81 Main Street
White Plains, NY 10601
914-559-3100
Fax: 914-949-1160
Email: rgibson@hpmb.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/13/2020 | 1 | COMPLAINT *MINHYE PARK* against DAVID DENNIS KIM filing fee $ 400, receipt number ANYEDC-12922956, filed by MINHYE PARK. (Lee, Jae Soog) (Entered: 06/13/2020) |
| 06/15/2020 | | Case Assigned to Judge Pamela K. Chen and Magistrate Judge Lois Bloom. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Davis, Kimberly) (Entered: 06/15/2020) |
| 06/15/2020 | 2 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action (a jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all parties wish to consent**. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent** <u>**unless**</u> **all parties have signed the consent.** (Davis, Kimberly) (Entered: 06/15/2020) |
| 06/15/2020 | 3 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Davis, Kimberly) (Entered: 06/15/2020) |
| 06/15/2020 | | NOTICE re 3 Quality Control Check - Attorney Case Opening : Due to the amount of errors made when filing this case, Plaintiff counsel is advised to refer to the Attorney Case Opening Video Tutorial/Manual before filing another case electronically. (Davis, Kimberly) (Entered: 06/15/2020) |
| 09/14/2020 | | ORDER: The 1 Complaint in this matter was filed on June 13, 2020. Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff was required to serve Defendant with the Summons |

| | | |
|---|---|---|
| | | and a copy of the Complaint by September 11, 2020. Plaintiff shall file proof of service or a status report in this matter by September 28, 2020. Failure to do so may result in a dismissal of this case for failure to prosecute. Ordered by Judge Pamela K. Chen on 9/14/2020. (Li, Caroline) (Entered: 09/14/2020) |
| 09/15/2020 | | CORRECTED ORDER: The 1 Complaint in this matter was filed on June 13, 2020. Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff was required to serve Defendant with the Summons and a copy of the Complaint by September 11, 2020. Plaintiff shall file proof of service or a status report in this matter by September 28, 2020. Failure to do so may result in a dismissal of this case for failure to serve. Ordered by Judge Pamela K. Chen on 9/15/2020. (Li, Caroline) (Entered: 09/15/2020) |
| 09/28/2020 | 4 | First MOTION for Extension of Time to File *Proof of service* by Minhye Park. (Attachments: # 1 Affidavit, # 2 Proposed Summons) (Lee, Jae Soog) (Entered: 09/28/2020) |
| 09/29/2020 | | ORDER: Plaintiff reports that the Defendant was served with the Complaint, but not the Summons, in this action. Plaintiff requests to electronically file the Summons. This request is denied. Plaintiff shall serve the Summons **and** Complaint, in accordance with Federal Rule of Civil Procedure Rule 4 and file proof of service by October 28, 2020. If Plaintiff fails to file proof of service of the Summons and Complaint by October 28, 2020, I will recommend that this case should be dismissed under Federal Rule of Civil Procedure 4(m). Ordered by Magistrate Judge Lois Bloom on 9/29/2020. (Wilhelm, Samantha) (Entered: 09/29/2020) |
| 10/08/2020 | 5 | SUMMONS Returned Executed by Minhye Park. David Dennis Kim served on 10/1/2020, answer due 10/22/2020. (Lee, Jae Soog) (Entered: 10/08/2020) |
| 10/22/2020 | 6 | NOTICE of Appearance by Hayley B Newman on behalf of David Dennis Kim (aty to be noticed) (Newman, Hayley) (Entered: 10/22/2020) |
| 10/22/2020 | 7 | ANSWER to 1 Complaint by David Dennis Kim. (Newman, Hayley) (Entered: 10/22/2020) |
| 10/22/2020 | 8 | NOTICE of Appearance by Olivia Darius on behalf of David Dennis Kim (aty to be noticed) (Darius, Olivia) (Entered: 10/22/2020) |
| 10/23/2020 | 9 | ORDER: The Court shall hold the initial conference by telephone in plaintiff's medical malpractice case on November 12, 2020 at 2:00 p.m. The parties shall call the Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 promptly at 2:00 p.m. on November 12, 2020. A planning conference pursuant to Rule 26(a) shall be held by November 5, 2020. Parties are advised that they must contact each other before making any request for an adjournment to the Court. Any request for an adjournment must be electronically filed with the Court at least seventy-two (72) hours before the scheduled conference. Ordered by Magistrate Judge Lois Bloom on 10/23/2020. (Wilhelm, Samantha) (Entered: 10/23/2020) |
| 10/26/2020 | 10 | NOTICE of Appearance by Robert B. Gibson on behalf of David Dennis Kim (aty to be noticed) (Gibson, Robert) (Entered: 10/26/2020) |
| 11/11/2020 | 11 | REPORT of Rule 26(f) Planning Meeting (Newman, Hayley) (Entered: 11/11/2020) |
| 11/12/2020 | | Minute Entry for proceedings held before Magistrate Judge Lois Bloom: Telephone Conference held on 11/12/2020 (AT&T Log #2:04-2:42.) (Rein, Gilbert) (Entered: 11/12/2020) |
| 11/12/2020 | | ORDER: The Court held the initial conference in plaintiff's medical malpractice case on November 12, 2020 and declined to set discovery deadlines. As discussed on the record, plaintiff shall provide signed medical record releases to defendant by November 20, 2020. |

| | | |
|---|---|---|
| | | Plaintiff shall reserve defendant with a proper summons and the complaint by December 11, 2020 and shall file proof of service on the docket by December 15, 2020. The parties shall meet and confer regarding a mutual protective order and discuss what fact discovery is needed. The parties are encouraged to discuss settlement. The Court shall hold a telephone conference on December 22, 2020 at 11:00 a.m. The parties shall call the Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 promptly at 11:00 a.m on December 22, 2020. Parties are advised that they must contact each other before making any request for an adjournment to the Court. Any request for an adjournment must be electronically filed with the Court at least seventy-two (72) hours before the scheduled conference. Ordered by Magistrate Judge Lois Bloom, on 11/12/2020. (Rein, Gilbert) *Modified.* (Entered: 11/12/2020) |
| 12/09/2020 | 12 | Summons Issued as to David Dennis Kim. (Brown, Marc) (Entered: 12/09/2020) |
| 12/15/2020 | 13 | SUMMONS Returned Executed by Minhye Park. David Dennis Kim served on 12/14/2020, answer due 1/4/2021. (Lee, Jae Soog) (Entered: 12/15/2020) |
| 12/22/2020 | | Minute Entry for proceedings held before Magistrate Judge Lois Bloom: Telephone Conference held on 12/22/2020. (AT&T Log #11:00-11:30.) (Rein, Gilbert) (Entered: 12/22/2020) |
| 12/22/2020 | | ORDER: The Court held a telephone conference in plaintiff's medical malpractice case on December 22, 2020 and set the following deadlines. Any request to join other parties or to amend the pleadings shall be filed by January 22, 2021. FED. R. CIV. P. 16 (b)(3)(A). The parties shall complete all discovery by June 15, 2021. Upon the completion of discovery, any party seeking to file a dispositive motion shall request a pre-motion conference by June 29, 2021 in accordance with Judge Chen's Individual Motion Practices and Rules. Ordered by Magistrate Judge Lois Bloom on 12/22/2020. (Rein, Gilbert) (Entered: 12/22/2020) |
| 06/01/2021 | 14 | MOTION for Extension of Time to Complete Discovery *Letter to Judge re: Extension of Time* by David Dennis Kim. (Newman, Hayley) (Entered: 06/01/2021) |
| 06/02/2021 | | ORDER: Defendant requests, with plaintiff's consent, an extension of time to complete discovery. ECF No. 14 . The request is granted. The parties shall complete all discovery by September 30, 2021. Upon the completion of discovery, any party seeking to file a dispositive motion shall request a pre-motion conference by October 15, 2021 in accordance with Judge Chen's Individual Motion Practices and Rules. Ordered by Magistrate Judge Lois Bloom on 6/2/2021. (Rein, Gilbert) (Entered: 06/02/2021) |
| 07/16/2021 | 15 | Letter MOTION for Discovery by David Dennis Kim. (Newman, Hayley) (Entered: 07/16/2021) |
| 07/22/2021 | | ORDER: Defendant requests permission to file a motion to compel discovery. ECF No. 15 . The request is granted. Defendant shall file his motion to compel by July 29, 2021 and plaintiff shall file her response by August 5, 2021. The Court shall hold a telephone conference on August 11, 2021 at 11:30 a.m. The parties shall call the Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 promptly at 11:30 a.m. on August 11, 2021. Parties are advised that they must contact each other before making any request for an adjournment to the Court. Any request for an adjournment must be electronically filed with the Court at least seventy-two (72) hours before the scheduled conference. Ordered by Magistrate Judge Lois Bloom on 7/22/2021. (Rein, Gilbert) (Entered: 07/22/2021) |
| 07/29/2021 | 16 | MOTION to Compel *for an order compelling the production of discovery, documents and answers to interrogatories.* by David Dennis Kim. (Newman, Hayley) (Entered: 07/29/2021) |

| | | |
|---|---|---|
| 07/29/2021 | 17 | MOTION to Compel *for an order compelling the production of discovery, documents and answers to interrogatories.* by David Dennis Kim. (Attachments: # 1 Declaration Declaration in Support of Motion to Compel, # 2 Exhibit Exh A.-Summons and Complaint, # 3 Exhibit Exh B. -Defendants Answer, # 4 Exhibit Exh C.- Defendants First Set of Interrogatories and First Demand for the Production of Documents, # 5 Exhibit Exh D.- Plaintiffs Response to Defendants First Demand for Interrogatories and Rule 26 Disclosures, # 6 Exhibit Exh E. -Defendants Letter to Plaintiff date February 8, 2021, # 7 Exhibit Exh F. -Defendants Letters to Plaintiff dated March 9, 2021, # 8 Exhibit Exh G. - Defendants Letter to Plaintiff dated April 29, 2021, # 9 Exhibit Exh H. -Defendants Second Demand for Production of Documents, # 10 Exhibit Exh I. - Defendants Letter to Plaintiff dated June 21, 2021, # 11 Exhibit Exh J.-Plaintiffs medical records from her treatment with Dr. Kim, # 12 Exhibit Exh K. - Plaintiffs First Request for Admission, # 13 Exhibit Exh L.- Defendants Letter to Plaintiff dated March 9, 2021 concerning Plaintiffs First Request for Admissions, # 14 Exhibit Exh M.-Sharefile Receipt documenting that plaintiffs counsel was sent Dr. Kims chart on February 10, 2021, # 15 Rule 37 Certification, # 16 Memorandum in Support Memorandum of Law in support of Motion to Compel) (Newman, Hayley) (Entered: 07/29/2021) |
| 08/05/2021 | 18 | RESPONSE in Opposition re 16 MOTION to Compel *for an order compelling the production of discovery, documents and answers to interrogatories.* filed by Minhye Park. (Lee, Jae Soog) (Entered: 08/06/2021) |
| 08/09/2021 | 19 | MOTION for Hearing by Minhye Park. (Attachments: # 1 Exhibit A. D ltr to court,7.16,2021, # 2 Exhibit B. Def med records, p31, # 3 Exhibit C. med records of MIRAE, # 4 Exhibit D. med records of ROSEMOM, # 5 Exhibit E. Patient consent _ Korean & English _11.16, 2017, # 6 Exhibit F. invalid consent form_ 11.27, 2017, # 7 Exhibit G. P emails_ 7.5, 2021) (Lee, Jae Soog) (Entered: 08/09/2021) |
| 08/11/2021 | | Minute Entry for proceedings held before Magistrate Judge Lois Bloom: Telephone Conference held on 8/11/2021. (AT&T Log #11:38-12:17.) (Rein, Gilbert) (Entered: 08/11/2021) |
| 08/11/2021 | | ORDER: The Court held a telephone conference in plaintiff's medical malpractice case on August 11, 2021. Defendant's motion to compel, ECF Nos. 15 - 17 , is granted. By September 10, 2021, plaintiff shall provide: records regarding her lost earnings; the names of her experts and their expert reports; and authorizations for collateral source insurance records from 2010 through the present. **This is a Court Order and plaintiff must comply.** Plaintiff is warned that if she fails to comply with the Court's Order to produce discovery, she may be subject to sanctions, which could include dismissal of this action.<br><br>The parties shall complete all discovery, including depositions, by September 30, 2021. Plaintiff shall make herself available for her deposition ahead of the September 30, 2021 deadline. Depositions should be conducted remotely.<br><br>Plaintiff's request for a settlement conference, ECF No. 19 , is denied without prejudice. Ordered by Magistrate Judge Lois Bloom on 8/11/2021. (Rein, Gilbert) (Entered: 08/11/2021) |
| 08/20/2021 | 20 | TRANSCRIPT of Proceedings held on August 11, 2021, before Judge Bloom. Court Transcriber: ARIA SERVICES, INC.. Email address: aria@leinen.net. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/10/2021. Redacted Transcript Deadline set for 9/20/2021. Release of Transcript Restriction set for 11/18/2021. (Rocco, Christine) (Entered: 08/20/2021) |

| | | |
|---|---|---|
| 08/25/2021 | 21 | MOTION for Leave to Appeal in forma pauperis by Minhye Park. (Attachments: # 1 transcript, # 2 order, # 3 request, # 4 report, # 5 deposition, # 6 Def email) (Lee, Jae Soog) (Entered: 08/26/2021) |
| 08/27/2021 | | ORDER: The Court denies Plaintiff's 21 request to vacate Magistrate Judge Lois Bloom's discovery rulings, which based on the Court's review of the record, it finds are eminently reasonable, fair, and justified. Contrary to Plaintiff's contention, Judge Bloom thoroughly explained the reasons for her rulings during the August 11, 2021 conference, which were largely driven by *Plaintiff's* failure to produce relevant and material discovery, necessary for the logical, efficient, and fruitful progression of other discovery, such as depositions, and settlement discussions in this case. (*See* Transcript for August 11, 2021 Conference, Dkt. 21-1, at Tr. 3:24-18:1 (addressing the need for Plaintiff to produce the requested documents and explaining why it was premature to schedule a settlement conference); Tr. 17:7-12 (denying Plaintiff the opportunity to orally move to compel); Tr. 19:9-22:10 (addressing depositions).) If anything, Judge Bloom has tried to assist Plaintiff and her counsel in understanding what Plaintiff will need to prove her malpractice claim, such as expert medical testimony, and request for lost earnings, such as earnings records. (*Id.* at Tr. 10:11-13, 22:10-23:9.) Thus, Judge Bloom's discovery rulings were far from "clearly erroneous," and the Court will not disturb them. Ordered by Judge Pamela K. Chen on 8/27/2021. (Irving, Louisa) (Entered: 08/27/2021) |
| 09/13/2021 | 22 | RESPONSE to Discovery Request by Minhye Park. (Lee, Jae Soog) (Entered: 09/13/2021) |
| 09/16/2021 | 23 | Letter *requesting permission to file motion to dismiss* by David Dennis Kim (Newman, Hayley) (Entered: 09/16/2021) |
| 09/18/2021 | 24 | MOTION for Protective Order by Minhye Park. (Lee, Jae Soog) (Entered: 09/18/2021) |
| 09/20/2021 | | ORDER: Plaintiff requests a protective order addressing the time of her scheduled deposition. ECF No. 24 . Her request states that her deposition is scheduled for today, Monday, September 20, 2021, however, she filed her request on the evening of Saturday, September 18, 2021 when the Court was unavailable. Id.<br><br>The parties shall file a joint status letter by September 24, 2021 stating whether they proceeded with plaintiff's deposition. If the deposition did not proceed, the parties' letter shall state an agreed upon date and time for plaintiff's rescheduled deposition. Ordered by Magistrate Judge Lois Bloom on 9/20/2021. (Rein, Gilbert) (Entered: 09/20/2021) |
| 09/20/2021 | | ORDER: Defendant's 23 letter request is respectfully referred to the Honorable Lois Bloom, Magistrate Judge, for resolution. Ordered by Judge Pamela K. Chen on 9/20/2021. (Irving, Louisa) (Entered: 09/20/2021) |
| 09/22/2021 | 25 | MOTION for Sanctions by Minhye Park. (Lee, Jae Soog) (Entered: 09/22/2021) |
| 09/23/2021 | 26 | Letter by David Dennis Kim (Attachments: # 1 Exhibit A: Deposition Notice with Affidavit of Service, # 2 Exhibit B: Deposition Notice for March 2021, # 3 Exhibit C: Emails, # 4 Exhibit D: Joint Letter in Response to Court Orders, # 5 Exhibit E: Emails to Plaintiff Re Joint Letter Ordered by Court) (Newman, Hayley) (Entered: 09/23/2021) |
| 09/23/2021 | | ORDER: Plaintiff's 25 motion for sanctions is respectfully referred to the Honorable Lois Bloom, Magistrate Judge, for resolution. Ordered by Judge Pamela K. Chen on 9/23/2021. (Irving, Louisa) (Entered: 09/23/2021) |
| 09/24/2021 | 27 | RESPONSE to Motion re 24 MOTION for Protective Order filed by Minhye Park. (Lee, Jae Soog) (Entered: 09/25/2021) |
| 09/27/2021 | | ORDER: The Court shall hold a telephone conference on October 6, 2021 at 10:00 a.m. The parties shall call the Chambers telephone conference line at (888) 363-4734 and use |

| | | |
|---|---|---|
| | | the access code 4444221 promptly at 10:00 a.m. on October 6, 2021. Parties are advised that they must contact each other before making any request for an adjournment to the Court. Any request for an adjournment must be electronically filed with the Court at least seventy-two (72) hours before the scheduled conference. Ordered by Magistrate Judge Lois Bloom on 9/27/2021. (Rein, Gilbert) (Entered: 09/27/2021) |
| 09/27/2021 | 28 | NOTICE OF APPEAL by Minhye Park. Appeal Record due by 9/27/2021. (Lee, Jae Soog) (Entered: 09/27/2021) |
| 09/28/2021 | | APPEAL FILING FEE DUE re 28 Notice of Appeal Payment in the amount of $505.00, can be made in person to the clerks office, or mailed in or paid online with the event *Civil Case Appeal Filing Fee*. (Jones, Vasean) (Entered: 09/28/2021) |
| 09/28/2021 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 28 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Jones, Vasean) (Entered: 09/28/2021) |
| 10/06/2021 | | Minute Entry for proceedings held before Magistrate Judge Lois Bloom: Telephone Conference held on 10/6/2021. (AT&T Log #10:02-10:13.) (Rein, Gilbert) (Entered: 10/06/2021) |
| 10/06/2021 | | ORDER: The Court held a telephone conference in plaintiff's medical malpractice case on October 6, 2021. Discovery is stayed pending a decision on plaintiff's appeal of the Court's discovery order to the Court of Appeals. Ordered by Magistrate Judge Lois Bloom on 10/6/2021. (Rein, Gilbert) (Entered: 10/06/2021) |
| 11/19/2021 | 29 | NOTICE of Appearance by Bianca Marie Van Deusen on behalf of David Dennis Kim (aty to be noticed) (Van Deusen, Bianca) (Entered: 11/19/2021) |
| 11/24/2021 | 30 | MANDATE of USCA as to 28 Notice of Appeal filed by Minhye Park. IT IS HEREBY ORDERED that the appeal is dismissed effective October 29, 2021 unless by that date appellant either pays the fee in full, moves for in forma pauperis status in District Court or, if District Court has denied in forma pauperis status, moves in this Court for in forma pauperis status. If appellant has filed the motion in District Court and the motion is pending, appellant must so advise this Court in writing by the same date. Issued as Mandate: 11/24/2021. USCA# 21-2459. (Jones, Vasean) Modified on 12/13/2021 (Jones, Vasean). (Entered: 11/24/2021) |
| 11/29/2021 | | ORDER: The Court of Appeals has dismissed plaintiff's appeal of the Court's discovery Order. ECF No. 30 . The stay of discovery in this matter is lifted. Plaintiff shall have one final opportunity to comply with the Court's discovery Order which was affirmed by Judge Chen. The parties shall complete all discovery by January 14, 2022. As set forth in the Court's Order, plaintiff shall produce: records regarding her lost earnings; the names of her experts and their expert reports; and authorizations for collateral source insurance records from 2010 through the present. See Electronic Order dated Aug. 11, 2021. Plaintiff shall also respond to defendant's interrogatories and document demands. **This is a Court Order and plaintiff must comply.** This is plaintiff's last chance. The parties shall still meet and confer regarding any discovery dispute that has not already been ruled upon prior to making an application to the Court. Local Civil Rule 37.3 Plaintiff's application for a protective Order, ECF No. 24 , is denied.

Defendant previously requested permission to file a motion to dismiss, ECF No. 23 , and plaintiff previously filed a motion for sanctions, ECF No. 25 . If plaintiff fails to comply with the Court's instant Order to produce the outstanding discovery by January 14, 2022, the parties shall brief their motions as follows: defendant shall file his motion to dismiss and his opposition to plaintiff's motion for sanctions by January 28, 2022; plaintiff shall |

|            |    | file her opposition to defendant's motion to dismiss by February 18, 2022 as well as any reply regarding her motion for sanctions; defendant may file a reply regarding the motion to dismiss by February 25, 2022.

Any request to extend these deadlines must be made in writing on notice to the other side at least three days before the deadline. Ordered by Magistrate Judge Lois Bloom on 11/29/2021. (Rein, Gilbert) (Entered: 11/29/2021) |
| --- | --- | --- |
| 12/15/2021 | 31 | NOTICE to Take Deposition by David Dennis Kim. (Van Deusen, Bianca) (Entered: 12/15/2021) |
| 12/17/2021 | 32 | NOTICE of Appearance by Alejandra R. Gil on behalf of David Dennis Kim (aty to be noticed) (Gil, Alejandra) (Entered: 12/17/2021) |
| 12/20/2021 | 33 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Minhye Park (Lee, Jae Soog) (Entered: 12/20/2021) |
| 12/20/2021 |    | ORDER: In summary fashion, Plaintiff appeals all of the rulings in Magistrate Judge Bloom's 11/29/2021 Docket Order. (Dkt. 8.) Magistrate Judge Bloom's docket order dealt with various non-dispositive issues, such as discovery disputes, an application for a protective order, and a briefing schedule for a motion to dismiss and a sanctions motion. (11/29/2021 Docket Order.) A district judge will modify or set aside a magistrate judge's determination on such non-dispositive, pre-trial matters only where the determination was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Pressley v. City of New York*, No. 11-CV-3234 (PKC) (RER), 2016 WL 1271480, at *1 (E.D.N.Y. Mar. 31, 2016). The court has reviewed all of the rulings contained in Magistrate Judge Bloom's 11/29/2021 Docket Order. None are clearly erroneous or contrary to law. Accordingly, Plaintiff's 33 appeal of Magistrate Judge Bloom's 11/29/2021 Docket Order is DENIED. All of the rulings in the 11/29/2021 order are affirmed, and all of the deadlines in that order remain operative. Ordered by Judge Pamela K. Chen on 12/20/2021. (Stephan, Keegan) (Entered: 12/20/2021) |
| 01/12/2022 | 34 | MOTION for Extension of Time to Complete Discovery *requesting additional time to complete fact discovery, including the deposition of our client, Dr. Kim.* by David Dennis Kim. (Gil, Alejandra) (Entered: 01/12/2022) |
| 01/13/2022 |    | ORDER: Defendant, with plaintiff's consent, requests an extension of time to complete discovery. ECF No. 34 . The request is granted. The parties shall complete all discovery by January 28, 2022.

Defendant states that plaintiff has still failed to produce discovery in accordance with the Court's prior Order. Id. The Court previously set a motion schedule for defendant's motion to dismiss and plaintiff's motion for sanctions. If plaintiff fails to produce the outstanding discovery by January 28, 2022, the parties shall serve and brief their motions as follows: defendant shall serve his motion to dismiss and plaintiff shall serve her motion for sanctions by February 4, 2022; plaintiff shall serve her opposition to defendant's motion to dismiss and defendant shall serve his opposition to the motion for sanctions by February 25, 2022; the parties may serve a reply regarding their motions by March 4, 2022; The parties fully briefed motions shall be electronically filed on March 4, 2022.

No request to extend these deadlines will be considered unless it is made in writing on notice to the other side at least three days before the deadline. Plaintiff's previously filed motion for sanctions, ECF No. 25 , which was filed without being fully briefed, shall be marked as withdrawn without prejudice and refiled according to the schedule set forth above. Ordered by Magistrate Judge Lois Bloom on 1/13/2022. (Rein, Gilbert) (Entered: 01/13/2022) |

**A-9**

| | | |
|---|---|---|
| 03/04/2022 | 35 | MEMORANDUM in Support *of Defendant's Motion to Dismiss/Compel* filed by All Defendants. (Attachments: # 1 Notice of Motion Notice of Motion Compel/Dismiss, # 2 Declaration Declaration in Support of Motion to Compel/Dismiss, # 3 Memorandum in Support Memorandum of Law in Support of Motion to Dismiss/Compel, # 4 Certificate of Service Rule 37- Certification) (Van Deusen, Bianca) (Entered: 03/04/2022) |
| 03/10/2022 | | ORDER: Defendant filed his motion to dismiss on March 4, 2022. ECF No. 35 . The fully briefed motion, including plaintiff's opposition, was due on that date. See Electronic Order dated Jan. 13, 2022. Although defendant's filing references plaintiff's opposition, the Court was not provided with a copy of plaintiff's papers. Plaintiff shall file her opposition to defendant's motion by March 14, 2022. <br><br> The Court notes that plaintiff's fully briefed motion for sanctions was also due on March 4, 2022; no such motion has been filed and no motion would be accepted at this time. See Electronic Order dated Jan. 13, 2022. Ordered by Magistrate Judge Lois Bloom on 3/10/2022. (Rein, Gilbert) (Entered: 03/10/2022) |
| 03/14/2022 | 36 | MEMORANDUM in Opposition filed by Minhye Park. (Lee, Jae Soog) (Entered: 03/15/2022) |
| 03/15/2022 | 37 | EXHIBIT *A-M* by Minhye Park. Related document: 36 Memorandum in Opposition filed by Minhye Park. (Attachments: # 1 Exhibit EXIBIHIT B, # 2 Exhibit EXIBIHIT D, # 3 Exhibit EXIBIHIT E, # 4 Exhibit EXIBIHIT G, # 5 Exhibit EXIBIHIT H, # 6 Exhibit EXIBIHIT I, # 7 Exhibit EXIBIHIT J, # 8 Exhibit EXIBIHIT K, # 9 Exhibit EXIBIHIT L, # 10 Exhibit EXIBIHIT L-1, # 11 Exhibit EXIBIHIT M) (Lee, Jae Soog) (Entered: 03/15/2022) |
| 03/15/2022 | 38 | MOTION for Sanctions by Minhye Park. (Attachments: # 1 Exhibit) (Lee, Jae Soog) (Entered: 03/15/2022) |
| 03/15/2022 | 39 | Letter MOTION to Dismiss *in further support of defendant's Motion to Dismiss* by David Dennis Kim. (Attachments: # 1 Exhibit Exh. A. - Plaintiffs Opposition Papers dated February 25, 2022, # 2 Exhibit Exh. B. -Plaintiffs Opposition Papers dated March 14, 2022) (Van Deusen, Bianca) (Entered: 03/15/2022) |
| 04/25/2022 | 40 | REPORT AND RECOMMENDATION: For the reasons stated in the attached Report, it is respectfully recommended under 28 U.S.C. § 636(b) that defendant's motion to dismiss this action under Federal Rules of Civil Procedure 37(b)(2)(A)(v) and 41(b) should be granted. Should this Report be adopted, defendant should be granted fourteen days to submit a reasonable fee application supported by contemporaneous records as well as a brief addressing who should be responsible for the fee. *Objections to R&R due by 5/9/2022* See Attached Report Ordered by Magistrate Judge Lois Bloom on 4/25/2022. (Rein, Gilbert) (Entered: 04/25/2022) |
| 05/09/2022 | 41 | Letter MOTION for Extension of Time to File Response/Reply by Minhye Park. (Lee, Jae Soog) (Entered: 05/09/2022) |
| 05/10/2022 | | ORDER: Plaintiff requests an extension of time to object to my April 25, 2022 Report and Recommendation. ECF No. 41. The request is granted. Plaintiff shall file her objection by May 23, 2022. Ordered by Magistrate Judge Lois Bloom on 5/10/2022. (Rein, Gilbert) (Entered: 05/10/2022) |
| 05/24/2022 | 42 | OBJECTION to 40 Report and Recommendations filed by Minhye Park. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit) (Lee, Jae Soog) (Entered: 05/24/2022) |
| 05/24/2022 | | ORDER: On or before June 8, 2022, Defendant shall file a response to Plaintiff's 42 objections to Judge Bloom's 40 Report & Recommendation. Ordered by Judge Pamela K. |

|  |  | Chen on 5/24/2022. (Stephan, Keegan) (Entered: 05/24/2022) |
|---|---|---|
| 06/08/2022 | 43 | REPLY in Opposition re 42 Objection to Report and Recommendations *Response to plaintiffs Rule 72 objections* filed by David Dennis Kim. (Attachments: # 1 Exhibit Exhibit A - cover letter and affidavit of service) (Gil, Alejandra) (Entered: 06/08/2022) |
| 08/24/2022 | 44 | ORDER ADOPTING REPORT AND RECOMMENDATION: For the reasons explained in the attached Memorandum & Order, Magistrate Judge Bloom's 40 Report and Recommendation is adopted in full; Plaintiff's 38 motion for sanctions is denied; Defendant's 38 motion to dismiss this case pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(v) and 41(b) is granted; and, within 14 days of the date of this Memorandum & Order, Defendant shall submit a reasonable fee application supported by contemporaneous records as well as a brief addressing who should be responsible for the fee. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case. Ordered by Judge Pamela K. Chen on 8/24/2022. (Stephan, Keegan) (Entered: 08/24/2022) |
| 08/25/2022 | 45 | CLERK'S JUDGMENT dated 8/25/22 that Plaintiff's motion for sanctions is denied; that Defendant's motion to dismiss this case pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(v) and 41(b) is granted; and that, within 14 days of the date of this Memorandum & Order, Defendant shall submit a reasonable fee application supported by contemporaneous records as well as a brief addressing who should be responsible for the fee. ( Ordered by Jalitza Poveda, Deputy Clerk on behalf of Brenna B. Mahoney, Clerk of Court on 8/25/2022 ) (Guzzi, Roseann) (Entered: 08/25/2022) |
| 09/07/2022 | 46 | MOTION for Attorney Fees *Memorandum of Law in Support of Application for Attorneys' Fees* by David Dennis Kim. (Attachments: # 1 Exhibit Exh A. - Invoices, # 2 Exhibit Exh B - Resumes) (Gil, Alejandra) (Entered: 09/07/2022) |
| 09/08/2022 |  | ORDER REFERRING MOTION: The 46 motion for attorneys' fees is respectfully referred to the Honorable Lois Bloom, U.S.M.J. Ordered by Judge Pamela K. Chen on 9/8/2022. Motions referred to Lois Bloom. (Stephan, Keegan) (Entered: 09/08/2022) |
| 09/18/2022 | 47 | NOTICE OF APPEAL by Minhye Park. Filing fee $ 505, receipt number ANYEDC-15949615. Appeal Record due by 10/3/2022. (Lee, Jae Soog) (Entered: 09/18/2022) |
| 09/19/2022 |  | Electronic Index to Record on Appeal sent to US Court of Appeals. 47 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Jones, Vasean) (Entered: 09/19/2022) |
| 10/07/2022 |  | ORDER: Plaintiff has filed a notice of appeal of the Court's Order dismissing the case and imposing sanctions. See ECF No. 47. In the interests of justice, the Court stays defendant's motion for attorney's fees and costs, ECF No. 46, pending resolution of plaintiff's appeal. Defendant shall file a letter regarding the status of the appeal by January 5, 2023 or sooner if the appeal is adjudicated. Ordered by Magistrate Judge Lois Bloom on 10/7/2022. (IK) (Entered: 10/07/2022) |

JS 44 (Rev. 02/19)
## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MINHYE PARK | DAVID DENNIS KIM, MD |

**(b)** County of Residence of First Listed Plaintiff  S.KOREA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

JSL LAW OFFICES, P.C.
626 RXR PLAZA, UNIONDALE, NY11556, (718) 463-8000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
Plaintiff
- ☐ 3  Federal Question
*(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
Defendant
- ☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☒ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Defendant failed to remove the fetus from plaintiff.

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
150.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE _____                          SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #  _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☑

I, JSL LAW OFFICES, P.C. _____, counsel for _____ PLAINTIFF _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐  monetary damages sought are in excess of $150,000, exclusive of interest and costs.

☐  the complaint seeks injunctive relief.

☐  the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?      ☐ Yes   ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?      ☐ Yes   ☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?      ☑ Yes   ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received: .

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?      ☐ Yes   ☐ No

*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑  Yes                    ☐  No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐  Yes   (If yes, please explain   ☑  No

I certify the accuracy of all information provided above.

Signature: _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MINHYE PARK,                                            Civil Docket No.

                                    Plaintiff,          **COMPLAINT**

            -against-


DAVID DENNIS KIM, M.D.,

                                    Defendant.
-------------------------------------------------------------------X

     Plaintiff, by their attorneys, JSL LAW OFFICES, P.C., as and for their Complaint,

respectfully allege, upon information and belief as follows:

### I. PRELIMINARY STATEMENT

     1.   On November 22, 2017, the plaintiff was lawfully on the defendant premises and the

defendant DAVID DENNIS KIM undertook to examine and diagnose, and confirmed that plaintiff

was five weeks pregnant. On November 27, 2017, the defendant undertook plaintiff's surgery to

remove the fetus. On December 19, 2017, plaintiff discovered that the defendant failed to remove

fetus on November 27, 2017 when plaintiff visited a doctor in South Korea who told her that she

was nine weeks pregnant and that the fetus was not healthy and would be born with defects. On

December 29, 2017, the plaintiff underwent surgery to remove the fetus from her womb in South

Korea.

### II. JURISDICTION

     2.   This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in

that such jurisdiction is founded upon the diversity of citizenship between the parties to this action

and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-five

thousand ($75,000) Dollars and 28 U.S.C. §§ 1331, 1334, and 1367. Plaintiffs' action for declaratory, injunctive, and /or monetary relief is authorized by 28 U.S.C. §§ 1343(a)(VI), 2201 & 2202 and the aforementioned statutory and constitutional provisions.

3.   Plaintiff further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

### III. VENUE

4.   Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) as  a substantial part of the events or omissions giving rise to the claim occurred  in Queens County.

### IV. JURY DEMAND

5.   Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

### V. THE PARTIES

5. Plaintiff MINHYE PARK is at all times relevant hereto, resident of the South Korea.

6. Defendant DAVID DENNIS KIM had its principal place of business in Flushing, NY, County of Queens.

### VI. GENERAL ALLEGATIONS

7.   That at all times herein mentioned, defendant DAVID DENNIS KIM, MD was a physician duly  licensed to practice medicine in the State of New York.

8.   That at all times herein mentioned, defendant DAVID DENNIS KIM represented

himself to be a specialist in the field of Anesthesiology  and Obstetrics  & Gynecology and represented that he possessed the required and necessary knowledge, education, qualifications, skills, learning, training and experience to qualify as a specialist in the field.

9.   That at all times herein mentioned, defendant DAVID DENNIS KIM was providing medical services at 143-16 Sanford Avenue, Flushing, NY 11355.

10.   That at all times herein mentioned, defendant DAVID DENNIS KIM owned, was one of the owners, a lessee,  or a lessor of the premises located at 143-16 Sanford Avenue, Flushing, NY 11355.

11.   That at all times hereinafter mentioned, defendant DAVID KIM, M.D managed, maintained and controlled  a facility, located at 143-16 Sanford Avenue, Flushing, NY 11355.

12.   That all times hereinafter mentioned, plaintiff, MINHYE PARK, sought care and/or treatment from the defendant, their agents, servants, partners and/or employees, at the aforesaid facility.

13.    That at all times hereinafter mentioned, the defendants, their agents, servants, partners and/or employees, undertook and agreed to render treatment and procedure to the plaintiff.

14.   That at all times herein mentioned, defendant DAVID DENNIS KIM had physicians, nurses and personnel to provide medical care and attention to Plaintiff. That on or about November 16, 2017, November 17, 2017, November 22, 2017 and November 27, 2017, the plaintiff was lawfully on the defendant premises and came under the care and treatments of the defendant DAVID DENNIS KIM.

15.   That the defendant DAVID DENNIS KIM undertook to examine and diagnose, and confirmed that  plaintiff was five weeks pregnant on November 22, 2018.

16.   That the defendant DAVID DENNIS KIM undertook a surgery to remove the fetus

on November 27, 2017, attention and treatment rendered to the Plaintiff was not in accordance with accepted standards of good and accepted removal fetus surgery and was negligent and careless under the circumstances.

17.   That the treatment and procedures rendered by the defendant  were negligent in failing to timely and properly perform all necessary and proper diagnose, treat and surgical care, and in failing immediately admit his patient after the surgery the plaintiff was in severe pain as a result of the surgery.

18.   That o**n or about December 19, 2017, Plaintiff first time discovered that defendant failed to terminate the fetus** when Plaintiff visited a doctor in South Korea who told her that she was nine weeks pregnant and that the fetus was not healthy and would be born with defects. Plaintiff visited another doctor to get a second opinion and that doctor confirmed what the previous doctor in South Korea had diagnosed.

19.   That on or about December 29, 2017, the plaintiff finally underwent surgery to remove the fetus from her womb in South Korea.

20.   The defendants, their agents, servants, partners and/or employees, were negligent and careless in the services rendered for and on behalf of the plaintiff, MINHYE PARK, in negligently and carelessly failing and neglecting to use reasonable care in the services rendered for and on behalf of the plaintiff, MINHYE PARK, in negligently and carelessly failing and neglecting to heed plaintiff, MINHYE PARK's condition, in negligently and carelessly departing from accepted practices and services rendered, in failing to successfully operate and/or properly operate the fetal surgery.

21.    As a result of the foregoing acts, omissions and/or departures from good and

acceptable practice on the part of the defendants, their respective agents, servants, partners and/or employees, the plaintiff, MINHYE PARK, was injured.

22.    That by reason of the foregoing, Plaintiff had additional scars and costs due to the need to repeat the procedure, needed to start her recovery process again and was unable to work for several months. Plaintiff had also suffered and continued physical pain and severe emotional distress, anxiety , fear, required medical care and upset at the failure of the first surgery, and will suffer permanent effects as a result of the Defendant's negligence herein.

23.    That this case falls within one of the exceptions enumerated by CPLR 1602.

24.    That as a result of the foregoing, Plaintiff was caused in a sum in excess of the jurisdictional limitations of this Court.

## AS AND FOR A FIRST CAUSE OF ACTION

25.    Plaintiff repeat and reallege each and every allegation contained in paragraphs numbered "1" through "24" of the Complaint as if fully set forth at length herein.

26.  That on November 27, 2017, the plaintiff was lawfully on the defendant′s premises.

27.   Defendant, DAVID KIM, M.D. agreed to render professional services to remove the fetus and  failed to proceed the fetal surgery. Due to defendant's negligence and a general duty of care to defendant's patient, MINHYE PARK, this resulted in a botched fetal surgery and the fetus was not successfully removed from the plaintiff's womb.

28.    By reason of the foregoing, the plaintiff was caused to suffer pain, discomfort, disability, and mental and emotional shock and was damaged thereby.

29.    Due to defendant's negligence, plaintiff MINHYE PARK is entitled to compensatory damages in a sum which exceeds the jurisdictional limit of this Court.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR LACK OF INFORMED CONSENT

30.    Plaintiff repeat and reallege each and every allegation contained in paragraphs numbered "1" through "29" of the Complaint as if fully set forth at length herein.

31.    That Defendant , his agents, servants and/or employees failed to obtain an informed consent in that he failed to provide the plaintiff any diagnose  made, treatment prescribed, and risks and alternatives to said course of treatment.

32.    Had informed consent been given, Plaintiff as a reasonably prudent person would not have consented.

33.    That as a result of the foregoing, Plaintiff was caused to sustain damages in a sum in excess of the jurisdictional limitation of this Court.

**WHEREFORE**, Plaintiff demands judgment against defendant on the First Cause of Action  and on the Second Cause of Action in the amount of  ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00), together with the costs and disbursements of this action, with interest from the date of the verdict to be rendered herein.

Dated: Uniondale, NY
       June 12, 2020

JSL LAW OFFICE P.C.

_____
JAE S. LEE
626 RXR PLAZA
UNIONDALE, NY 11556

To:
DAVID DENNIS KIM, M.D.
143-16 Sanford Ave
Flushing, New York 11355

## RULE 26(f) MEETING REPORT

**CASE NAME: Minhye Park v. David Dennis Kim, M.D.**

**DOCKET NO.: 1:20-cv-02636**

Have the parties met and conferred? Yes Date? November 5, 2020

Date the Rule 26(a)(1) initial disclosures were exchanged? Not yet. We agreed to serve this disclosure as well as initial demands by November 19, 2020.

## PROPOSED DISCOVERY PLAN

1. Deadline for parties to provide properly executed authorizations/releases: Authorizations by December 15, 2020 and parties to respond to all other initial demands by January 15, 2021.

2. Deadline to join new parties or amend the pleadings: December 15, 2020.

3. Should any changes be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or by local rule?[1] Yes ☐ No ☒

4. Deadline to file any protective order: Not applicable

5. The parties shall complete all fact discovery by: June 15, 2021.

   Deposition of plaintiff to be conducted via video-conference with an interpreter by March 30, 2021.

   Deposition of Dr. Kim to be conducted on or by April 19, 2021.

6. The parties shall complete expert discovery, if necessary, by: Plaintiff may not do expert discovery because Kim's negligence is obvious. Defendant intends to retain an expert.

7. The parties shall file any pre-motion conference request by:[2] To be determined as needed.

8. Should the Court hold an early settlement conference in this action?[3] Yes ☒ No ☐

   Plaintiff's counsel requests a settlement conference on or around February 26, 2021. Defense counsel does not object to participation in a settlement conference after initial discovery has been exchanged but maintains that a settlement demand should be conveyed before participating in a conference.

2308490.1

9. Have the parties agreed to a plan regarding electronic discovery?[4] Yes __ No x__

This is premature and does not seem to be applicable to the issues in this case, at this juncture.

10. Do the parties consent to trial before a magistrate judge pursuant to 28 U.S.C. §636?[5]
(Answer no if any party declines to consent without indicating which party has declined) Yes ☐ No ☒

---

[1] If yes, the parties should be prepared to address the proposed changes at the initial conference.
[2] The parties are reminded to comply with the individual rules of the presiding district court judge.
[3] Prior to the initial conference, counsel shall discuss with their clients and their adversaries whether an early settlement conference, or other form of alternative dispute resolution, is appropriate in this case and be prepared to explain their reasons to the Court.
[4] If yes, the parties shall file a letter detailing the parties' proposed plan regarding electronic discovery.
[5] The fillable consent form AO 85 is available at https://www.nyed.uscourts.gov/forms/all-forms/general_forms and must be signed by all parties and filed electronically.

2308490.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

MINHYE PARK,                                              Case No. 1:20-cv-02636

                                    Plaintiff,

              -against-


DAVID DENNIS KIM, M.D.,

                                    Defendant.
--------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPEL

Plaintiff respectfully submits this memorandum of law in support of her objection to Defendant's motion to compel Plaintiff to produce documents and discovery in response to Defendant's discovery demands and to provide complete answers to Defendant's interrogatories.

Defendant's motion must be denied because Defendant seeks incredibly overbroad and irrelevant to this action and violation of Plaintiff's right to privacy under Health Insurance and Accountability Act of 1966,  in addition to the limitation of Rule 26.

Plaintiff served all necessary and material discovery responses and production of documents  relevant to this action, including all medical records from the two physicians, Mirae Obstetrics and ROSEMOM BOGY CLINIC in South Korea.  With respect to the collateral source records, Plaintiff provided authorizations for the collateral source records of the insurance records. That's the Defendant's responsibility to obtain the records.

The defendant is using the discovery process to harass Plaintiff and Plaintiff has supplied

sufficient discovery. And therefore, Plaintiff respectfully requests a settlement conference.  As

stated in <u>Miranda v. Haywood</u>, 2010 U.S. Dist. LEXIS 256780 (E.D.N.Y. Jan. 22, 2010), the

United States Magistrate Judge noted that "[a]s a matter of course, this Court routinely schedules

settlement conferences in every case before the court when the parties request such a conference

or when the parties have exchanged sufficient information to make such a conference appropriate."

        Respectfully submitted,

Dated: Uniondale, NY
       August 5, 2020

           JSL LAW OFFICE P.C.

           _____
              JAE S. LEE
              626 RXR PLAZA
              UNIONDALE, NY 11556
              (718) 461-8000

# JSL Law Offices, P.C.

**626 RXR PLAZA, Uniondale, NY 1156**
Tel:  (718) 461-8000
Fax: (866) 449-8003
_____

August 9, 2021


***VIA ECF***

Honorable Pamela Chen
United States District Court
Eastern District Of New York
225 Cadman Plaza East
Brooklyn, New York 11201


Re: **1:20-cv-02636**
**(Minhye Park v. David Kim, M.D.)**


Dear Judge Chen:

Our office represents Plaintiff MINHYE PARK in the above- referenced action for medical malpractice.  We submit this letter  to request a settlement conference that Defendant is using the discovery process to harass Plaintiff and that Plaintiff has supplied sufficient discovery. As stated in Miranda v. Haywood, 2010 U.S. Dist. LEXIS 256780 (E.D.N.Y. Jan. 22, 2010), the United States Magistrate Judge noted that "[a]s a matter of course, this Court routinely schedules settlement conferences in every case before the court when the parties request such a conference or when the parties have exchanged sufficient information to make such a conference appropriate." Haywood at 14.

### Defendant's Counsel Untruthfully Stated

Plaintiff must point out that Defendant's counsel untruthfully stated that Plaintiff came to New York only to obtain the abortion.  EXHBIT A (Defendant's letter dated July 17, 2021) Plaintiff was travelling in the United State before she saw the Defendant.   Plaintiff visited Defendant for the first time on November 16, 2017 as her symptoms indicated that she was likely pregnant. Defendant told Plaintiff that it's too early to determine whether Plaintiff was pregnant

or not, and asked Plaintiff to come later. During her second visit on November 21, 2017, Defendant confirmed that the plaintiff was indeed pregnant and performed the surgery on November 27, 2017. The Defendant's counsel falsely alleged the above only to insult or harass the Plaintiff.  Also Defendant's counsel insulted Plaintiff by the implication that Plaintiff had two prior abortions. Finally, the Defendant's counsel incorrectly asserts that Plaintiff signed a consent form.

### *Defendant's Failure to Terminate Plaintiff's Pregnancy And NO  Expert Testimony Needed*

On December 13, 2017, Defendant Dr. Kim admitted his failure to terminate Plaintiff's pregnancy by stating that Plaintiff was recalled to review the results of the termination of pregnancy on November 27, 2017 and Defendant  explained to the Plaintiff that the pregnancy was still present. EXHIBIT B (Dr. Kim's note, page 31); *see* Def Ex. J (entire records of Dr. Kim, document #17-11)

In addition, the two physicians in South Korea examined the Plaintiff, including the use of ultrasound test, and determined the damaged fetus was still alive in Plaintiff's womb. Plaintiff provided all medical records to Defendant. And therefore, **Plaintiff does not need extra expert testimony.**  EXHIBIT C (MED REC_MIRAE Obstetrics and gynecology_12.19.2017); EXHIBIT D (MED REC_ROSEMOM BOGY CLINIC)

Due to defendant's negligence to Plaintiff, the fetus was not successfully removed from the plaintiff's womb. Our traumatized Plaintiff had to undergo a second procedure, leaving her with additional scars and a longer recovery period.  Plaintiff was caused to suffer pain, discomfort, mental anguish and emotional distress and was damaged thereby.

### *Plaintiff Has Not Consented to Waive Defendant's Liability If the Fetus Is Alive After the Surgery*

Plaintiff cannot speak English or understand spoken English.  Plaintiff confirmed that on November 16, 2017, Plaintiff signed a patient information sheet when an interpreter of the Defendant's staffs translated said sheet into Korean and it was written out in Korean as well. EXHIBIT E (Patient consent form in Korean & English 11/16/2017)

Defendant's counsel misleads this court that Plaintiff signed consent form on November 27, 2017  and that Plaintiff took the risk after surgery. The alleged consent form dated November 27, 2017 was written in **English only, not in Korean.** EXHIBIT F (Informed Consent Form 11/27/2021, page 5, Queens Surgical Care Center). There was **no Korean interpreter** on that day. And, in fact, the consent form the Defendant's counsel alleged **does not include any language specifying that Plaintiff consented to the risk that the Defendant may fail to properly remove the fetus.**

On November 27, 2017, Plaintiff met Defendant at the Queens Surgical Center. Defendant can't speak Korean. Defendant gestured for the Plaintiff to follow Defendant into a room and Defendant preformed the surgery directly.  Plaintiff did not sign any papers on November 27, 2017. **The handwritten Plaintiff's name, date and signature are not hers** but someone else's, and Plaintiff has never seen the papers before or after the surgery and no one informed any risks from

the surgery. EXHIBIT G  (Plaintiff's emails dated July 5, 2021 were translated in English. Plaintiff was unable to get it notarized due to COVID-19)

Defendant failed to obtain an informed consent to the risk that Defendant may fail to properly remove the fetus.  Had informed consent been given, Plaintiff as a reasonably prudent person would not have consented.

### Plaintiff Is Not Required to Assist Defendant's Discovery

Defendant's counsel kept asking for the insurance records as collateral sources to prove prior two abortions.  As Defendant's counsel has admitted Plaintiff served all authorizations to collect her medical records, including collateral sources. That insurance providers in South Korea delayed responding to Defendant is not Plaintiff's responsibility, nor is Plaintiff required to assist Defendant Discovery.

Plaintiff had only one prior abortion roughly 10 years ago from the date the Defendant's failed to remove the fetus. This occurred when Plaintiff was a teenager. At that time, her boyfriend brought her to a clinic, and she does not remember or know the place or name of the clinic. The medical records of the Defendant Dr. Kim only shows that someone checked the box "twice" with no date or place noted.  An abortion from the 10 years ago is not relevant to this action. If the prior abortion is relevant or important to Plaintiff's surgery on November 27, 2017, Defendant Dr. Kim, must have asked the dates and places of prior abortion(s) and recorded the same in his medical notes. But nowhere is it noted in the records that the Plaintiff had two abortions.

Furthermore, requesting all the history of Plaintiff's life violates Plaintiff's privacy and civil rights as it may include the release of information related to AIDS, HIV, sexually transmitted disease, tuberculosis, or genetics, if any.  Therefore, Defendant's attempt to force Plaintiff to provide all insurance records, without any exclusion, must be denied.

### Damage Calculation:

An oriental doctor said that a woman requires postpartum care for at least 3 weeks after an abortion. https://news.joins.com/article/6999017   The doctor added that since an abortion causes not only physical damages but emotional distress, such abortions are much more serious than a regular delivery, and thus there is more postpartum care required as compared to a normal delivery. Upon an abortion, her body drastically changes such as, headache, stomachaches, pelvic pain, uterine inflammation, and hormonal imbalance.  Bleeding and inflammation in the process of removing a fetus may cause scratches and damages on endometrium and cervix, the doctor emphasized, as well as possible sterility in the future. *See id.*

Due to Defendant Dr. Kim's failure to terminate the fetus, Plaintiff had to undergo the abortion surgery twice,  and was forced to consult with the two Korean doctors if she could keep the fetus and deliver it. The doctors did not recommend it because Defendant Dr. Kim had already performed general anesthesia, scratched it, and administered antibiotic and other drugs to the Plaintiff.  The failure of the Defendant Dr. Kim's to exercise standard and reasonable medical care

caused the Plaintiff physical damages and severe emotional distress. In addition, the plaintiff faces the very real possibility of sterility in the future at a rate that is twice the normal rate after a successfully performed abortion. In addition Plaintiff incurred medical expenses in South Korea, urgent peak time flight ticket in December 2017 to South Korea, and postpartum care.

### *Lost Wages*

During the postpartum period of one year, Plaintiff's lost wages would be calculated pursuant New York Workers' Compensation Act and the minimum wage she would have possible earned.

### *Conclusion*

Plaintiff has provided sufficient discovery responses, and Defendant keeps harassing plaintiff to increase their billable hours. Plaintiff respectfully requests this court to set up a settlement conference.

Respectfully submitted,

Dated: Uniondale, New York
      August 9, 2021

*/s/ Jae S. Lee*
  Jae S. Lee
  JSL LAW OFFICES, P.C.
  *Attorneys for Plaintiff*
  626 RXR PLAZA
  Uniondale, New York 11556



99 PARK AVENUE   NEW YORK, NY  10016-1601
TEL: 212-286-8585   FAX: 212-490-8966
WWW.HPMB.COM

**Hayley Newman**
**Partner**
**hnewman@hpmb.com**

July 16, 2021

<u>**VIA ECF**</u>

Honorable Pamela Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Minhye Park v. David Kim, M.D.
       Docket 1:20-CV-02636(PC)
       <u>Our File 778-1018</u>

Dear Judge Chen:

      Our law firm represents Dr. David Kim in this action for medical malpractice.  We are
requesting permission to file a discovery motion compelling plaintiff to produce her medical
records relevant to the claims at issue in this lawsuit and to produce other discovery responses
which remain outstanding.

      Over the past few months and since filing the joint request for an extension of time to
complete discovery, our firm attempted to communicate with plaintiff's counsel in good faith to
resolve these issues.  In addition to sending letters and emails, we called plaintiff's counsel five
times in June.  Only some of these calls were responded to by Ms. Lee - via email.  On July 7,
2021, our firm was finally able to arrange a phone conference with Ms. Lee.  During this meet
and confer, we discussed the discovery issues that are the subject of this letter-motion.  Ms. Lee
believes her client satisfied her discovery obligations and advised that she will not produce
additional medical records, collateral source records, documentation in support of plaintiff's
claims for lost earnings or, supplemental discovery responses as to interrogatories that were
clearly insufficient.  Moreover, plaintiff has not served expert disclosure or an expert report, to
date.

HEIDELL, PITTONI, MURPHY & BACH, LLP

NEW YORK   |   CONNECTICUT   |   WESTCHESTER   |   LONG ISLAND

2425586.1

Honorable Pamela Chen
Re:  Minhye Park v. David Kim, M.D.
July 16, 2021
Page -2-



Briefly, plaintiff claims our client, Dr. Park, negligently performed an abortion in November 2017.  Plaintiff is a resident of South Korea and traveled to New York for the procedure.  All of plaintiff's relevant prior and subsequent medical records are located in South Korea.  Unfortunately, this means that the Court and our firm cannot compel production of records from this country.  It is uncontroverted that prior to the abortion at issue in this case, Ms. Park underwent two previous abortions.  To date, we have been unable to obtain the records of the prior procedures.  These are relevant to our expert's review of the case as well as plaintiff's claim for informed consent asserted in this action.

In addition to medical records, we have been unable to obtain any insurance/collateral source records from South Korea which would contain the names of plaintiff's physicians and we could discern the identity of the relevant prior/subsequent providers based upon these records.  It is plaintiff's position that the records are irrelevant.  She also advised our firm that her client may not recall the name of the prior abortion providers, which is why the insurance records are of particular importance.

To date, plaintiff has not produced any records in support of the claims for lost earnings, despite claiming her client was unable to work for several months as a result of the treatment at issue.  Nor has she produced any subsequent gynecology records from 2019 to present that would reveal whether plaintiff's alleged injuries are ongoing or fully resolved.  Plaintiff did not produce records in support of the claims for emotional distress, either.

With respect to discovery, plaintiff's counsel served interrogatory responses some of which are inadequate or not responsive to the demands (i.e. when asked to identify witnesses, plaintiff's counsel stated that plaintiff's family are witnesses to the events described in the Complaint but failed to identify family members by name, description and failed to provide an address).  This information should have been produced in plaintiff's Rule 26(a) response.  Without witness disclosures, defendant cannot determine whether there will be nonparty witnesses to depose about the events at issue.

Plaintiff also produced photographs allegedly taken in a physician's office but failed to respond to our demand for the metadata for each photograph, as well as information as to where each photograph was taken and who is depicted in the photo.

Without this discovery, defendant is prejudiced in defending this case.  Moreover, our office cannot conduct an informed deposition of the plaintiff.

Given the issues above, we respectfully request permission to file a motion pursuant to Rule 37 to compel plaintiff to produce all outstanding discovery or, issue in sanctions and reasonable costs due to plaintiff's non-compliance and/or, dismiss the case should plaintiff fail to comply by a date-certain.

2425586.1



Honorable Pamela Chen
Re:   Minhye Park v. David Kim, M.D.
July 16, 2021
Page -3-


       This is the first application for this request.  At present, the deadline to complete fact discovery is September 30, 2021.


       Respectfully submitted,


HN:mn                        Hayley Newman

cc:   **VIA ECF**

       JSL Law


2425586.1

Age      Gravida:      Para:           LMP           QuestQuanum™

Chief Complaint:
- Annual GYN visit
- Vaginal discharge
- Vaginal itch
- Missed period
- Irregular menses
- Pregnancy
- Birth control
- Infertility
- Medicine refill
- Patient recalled

DOS 12/13/2017 Patient was recalled by my office to review the results of the pathology report from her procedure on 11/27/2017. Patient denies any complaints of fever, chills, abdominal/pelvic pain or vaginal bleeding.

HPI:      see progress notes from 11/16/2017 and 11/21/2017.

Medical History:
|_ Patient denies the medical conditions below except for those checked in the box.
- Hypertension
- Asthma
- Diabetes
- Thyroid disorder
- Anemia
- Blood dyscrasia

Surgical History:
|_ Patient denies any history of surgical procedures.

Family History:
|_ Patient denies family history of any known gynecologic cancer or breast cancer.

Obstetrical History:
|  Patient denies any obstetrical history.

Gynecologic History:
|_ Patient denies any history of gynecologic

Social History:
Marital status:
|_Single    | Married  |  Divorced |  Widowed

Occupational status:
|  Denies  |  Employed    |  Student

Toxic habits:
|_ Denies toxic habits
- Smokes cigarrettes
- Drinks alcohol
- Uses recreational drugs

Medications:

Allergies.
|_ NKDA

**PHYSCIAL EXAM:**

QuestQuanum™

Chaparrone present

| | | | |
|---|---|---|---|
| Height: | inches | Wieght | lbs. |
| HEENT: | NCAT | | |

PULSE:     beats per min
BP:   /   mmHg
RR:    breaths per min
TEMP:    'F

|_ CELIA ASHLEY – Secretary
|_ JASMIN KIM – Secretary
|‾ SHARON – Secretary
|‾ EILEEN KIM – Manager
|‾ ALSO AS KOREAN TRANSLATOR

**HEENT:** |‾ NCAT
|‾ PERRLA
|_ Throat clear/supple. No palpable goiter.
General appearance: No apparent distess.

**Cardiac:** ☑ S1S2
☑ Regular rate and rhythm.
☑ No murmurs appreciated
Vitals: p 76 bp 110/62 rr 18

**Lungs:** ☑ Clear to ausculatation bilaterally

**Abdomen:** ☑ Soft         |_ Tender |_ Generalized tenderness
☑ +Bowel sounds            |‾ Right lower quadrant
☑ Non Tender                |‾ Left lower quadrant
☑ No palpable masses        |‾ Right upper quadrant
                              |‾ Left upper quadrant

Guarding    |_ NO    |_ YES
Rebound    |‾ NO    |‾ YES
Rigidity     |_ NO    |_ YES

**Extremities:** ☑ No calf tenderness bilaterally
☑ No edema bilaterally

**Skin:** ☑ No visible skin lesions
☑ Normal skin turgor

**Pelvic:** External Female Genitalia:
☑ Normal external female genitalia
Vagina:
☑ Normal appearing rugae
☑ No visible discharge
Cervix:
☑ No cervical motion tenderness
☑ No obvious cervical lesions
Uterus:
☑ AV |_ Mid Position |_ Retroverted
☑ Non Tender
|‾ Gravid
Adnexae:
☑ No adnexal tenderness bilaterally
☑ No palpable masses bilaterally
Rectovaginal:
|_ No palpable masses
|‾ Normal sphincter tone

Cervical OS: closed and no bleeding.

Page 3 of 4

Assessment & Plan:
QuestQuanum™

Patient was recalled to review the results of the termination of pregnancy on 11/27/2017.
Patient reports to have occasional nausea, but denies any fever chills, pelvic pain or vaginal
bleeding. The result of the pathology report reported decidua with reactive changes. No villi
**Tests Performed/Ordered**

| PAP Smear

| Genprobe

| Mammogram

| Dexa Scan

Page 4 of 4

**Assessment & Plan**
QuestQuanum™

seen. . Pelvic exam: non tender uterus and the cervical os was closed without any bleeding visualized.  Bedside sonogram: small fetus with movement visualized. Gestational age by LMP of 11/16/2017 is 8 weeks and 3 day. I explained to the patient that the pregnancy was still present

**Tests Performed/Ordered**

| PAP Smear

| Genprobe

☐ Mammogram

| Dexa Scan

Page 4 of 4

000031

ㄱ진료실

# 예진. 상담 기록부

2017-12-

| 등록번호 | 70167 | | 종 별 | 국민건강보험 | | 보험조합명 | |
|---|---|---|---|---|---|---|---|

| 환자 | 성 명 | 박민혜 | | 성별/년령 | F   29 | 피보험자 | 기 호 | |
|---|---|---|---|---|---|---|---|---|
| | 주민등록번호 | | | | | | 번 호 | 30026659587 |
| | 주 소 | 881 | | | | | 성 명 | 박민혜 |
| | 자취득일 | 2016-04-06 | | 전 화 | | | 주민등록번호 | |
| | E-mail | | | | | | | |

| 보호자 이름 | 내병현 | | 직업 : | | 연락처 010-7605-7662 |
|---|---|---|---|---|---|

주 호소(C. C)   fluid
M/20 마취에서 DzC 화16
(주사에 50mo성 뭐가 낭았대 라지 DzC
해야 된다라 함.
Va bleeding (→)
아대이임
미신임
23낮통

| | 가족력 | 과거력 |
|---|---|---|
| 신 장 병 | | |
| 심 장 병 | | |
| 고 혈 압 | | |
| 결 핵 | | |
| 성 병 | | |
| 갑상선 기능장애 | | |
| 당 뇨 병 | | |
| 현재복용중인 약 | . | |
| 천 식 | | |
| 간 질 | | |
| 정 신 과 질 환 | | |
| 혈 액 질 환 | | |
| 수 혈 | | |
| 수 술 및 사 고 | | |
| 주사및약물부작용 | | |
| 기 타 | | |

**산과력**

Prenatal care :
Local,          Hospital,          None

| | 성 명 | 직업 | 혈액형 | 키 | 체 중 |
|---|---|---|---|---|---|
| 산 모 | | | Ot | 161cm | 5⅞ kg |
| 남 편 (만   세) | | | | cm | kg |

활력징후 Bp 114/75   Pulse        Temp

| 월경력 | LMP | 10/13 |
|---|---|---|
| | PMP | |
| | EDC | |
| | Onset | |
| | Interval | regu |
| | Duration | 40L |
| | Amount | Mod |
| | Dysmenorrhea | . |
| | Menarche | |
| | Menopause | |

Contraception

결혼력 ⓢ, M,   W,   D,   Sep,   Yrs Married)

Parity  G:  3    P:        Prem:
        AA:  3   SA:        Alive:

| 임신중독증( ) | 제왕절개술( 회) | 산후출혈( ) | 염색체검사( ) |
|---|---|---|---|
| 자궁근종수술( ) | 자궁경관무력증( ) | 양수과다증( ) | 태아발육지연( ) |
| 다태임신( ) | 알레르기반응( ) | 기형(태아)( ) | 기타: |

**분만력**

| 분만년도 | 임신기간 | 진통시간 | 태아상태 | 분만방법 | 성 별 | 출생시 체중 | Remarks |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**A-36**



Pelv. ex

Ext. Gen

Vag

Cx.

| Ut. | Posit. | Av. | T. | Rv |
|---|---|---|---|---|
| | Size | | | |
| | Consi. | S. | F. | |
| | Mob. | Good | Fair | Poor |
| | Tend | mild | mod. | sev |
| Adnexa | Rt. | | | |
| | Lt. | | | |
| Gul-de-sac | | | | |
| Rec. Ex | | | | |

P.P. :              FHR :

O.S.  :             Station :

Effacement :       Memb :

Abd.ex

IMPRESSION

| 날 짜 | 진 료 내 역 | 서   명 |
|---|---|---|
| 2017.12.19 | | |



# Rosemom  OBGY  CLINIC

원본대조필

No. 42313   진료실 3

010-5895-538
(055) –

| | | |
|---|---|---|
| Date : 2017  06 | 기 호 | 1 |
| Name : 박민혜   Age : 28 | 번 호 | 30026659587 |
| Address : ▬▬▬▬▬▬ | 기관명칭 | |
| IMPRESSION : | 주민등록 번 호 | 88 ▬▬▬▬ |
| 비효  r o·itus(+) ... 2016년 | 피보험자 | 박민혜  자격취득일  2016-04-06 |

C.C  Pap. TVS, 사후피임약처방

| | | | | | |
|---|---|---|---|---|---|
| MENS : | LMP 6/12 | | PMP | | EDC |
| PARITY : | ♂ — ♀ — | (NSVD / C/S) | | last D/C : | |
| PH : | Medical     Hypertension     DM,     Hepatic,     Renal,     Tbc,     others : | | | | |
| | Operation | | | | |
| | Drug hypersensitivity : | | | | |
| Physical exam : | Ht :     Wt :     BP :     P/R | | | | |
| | General | | | 백신 (—) | |
| | E.N.T. | | | | |
| | Heart & Lungs | | | | |
| | abdomen | | | | |
| | Extremities | | | | |
| | others | | | | |
| Pelvic exam : | | | | | |

HUMANGATE T:02-799-3119

BJC00325H15749

| Date | Progress & Treatment | Dr. sign |
|------|---------------------|----------|

2017. 6. 22

Veg. spoting
멍멍? coc 부동하여 회복? 없음

LMP : 6.12 (?)
pnp : R

USG (TV)
Ut : n.s ∈n-triple lme
Adn : Neg both
R+ → DF
Cx : n.s & ⊕
v.D spotry (—)

Rx) ㅌ=2ㅣㄴ 1.   L-Pap.

2017. 11. 04    LMP 10/2          ovulo? :        2b
LAP / leukorrhea / foul odor

USG : N~S
↳ HT (±)           } ⟍ tender (±)
v.D ; yellowish ↑↑

Rx) p.o ×5d.

.  . 9.   LMP 10/13   11/중 예정 (?) ? ? ?      임신? , 임당 want      2b

11)개 | 12.1개LMP
< 01 | 5)Kg     (11/2?) DC (며개니시)   시작후 2개월 안옴      USGF
                     (머가니)                              경남 창원시 의창구 명곡로 96
                     CRL 8+4  →  EDC 2018. 7. 24          헬빙프라자3층  ??? ???
                     < FUT OK  →                          로즈맘여성산부인과의원  OB Lab ??
                                                          전 ??? ??? 04

🐢 로즈맘여성산부인과

이원의료재단
EONE LABORATORIES
검사의뢰서 43243473

| 검사자 | 서한익 | MT (3577) | |
| 보고자 | 이정수 | MD (542) | |
| 보고자 | 오귀영 | MD (607) | |

# LABORATORY REPORT

OB Lab

☐ 외래   ☐ 병실                                              ☐ STAT   ☐ ROUTINE

| 발행일자 | 20  년  월  일 | 생년월일 | | 1과 | 2과 | 3과 | 5과 |
| 등록번호 | | L M P | | 몸 무 게 | | | kg |
| 성   명 | | 보고일시 | 20 | 보 고 자 | | | |

| 01 | HEMATOLOGY | 03 | URINALYSIS | 05 | GTT(50g) | | | mg/dl |
|---|---|---|---|---|---|---|---|---|
| | WBC(4.91-12.3) ×10³/㎕ | | Glucose | | GTT(100g) | FBS(95mg/dl) | | mg/dl |
| | RBC(3.80-5.05) ×10⁶/㎕ | | Protein | | | 1hr(180mg/dl) | | mg/dl |
| | Hb(11.93-14.3) g/dl | | PH | | | 2hr(155mg/dl) | | mg/dl |
| | Hct(36.81-43.71) % | | Occult blood | | | 3hr(140mg/dl) | | mg/dl |
| | MCV(83.89-100.66) fL | | WBC /HPF | | | | | |
| | MCH(27.21-33.27) pg | | RBC /HPF | 06 | CHEMISTRY | | 07 | W/S & Gram Stain |
| | MCHC(31.85-33.87) g/dl | | Yeast | | GOT(AST) 0-31 u/l | | WBC | /HPF |
| | Plt(202.39-323.95) ×10³/㎕ | | Trichomonas | | GPT(ALT) 0-32 u/l | | Yeast | /HPF |
| | Seg(52.84-78.33) % | 04 | SEROLOG & E/A | | T.Protein 6.2-8.4 g/dl | | Trichomonas | /HPF |
| | Lym(18.65-41.01) % | | HBsAg NEGATIVE | | Albumin 3.5-5.0 g/dl | | Gram(+) cocci or rods | |
| | Mono(2.48-6.15) % | | HBsAb | | BUN 4.6-23.3 mg/dl | | Gram(-) cocci or rods | |
| 2 | Blood Group | | AIDS | | Creatine 0.5-0.9 mg/dl | | Gram(-) diplococci intra or extra | |
| | ABO Group | | β-HCG(CLIA) mIu/mL | | Glucose 55-115 mg/dl | | | |
| | RH type | | | | | | | |

한병리과의원  이원의료재단
Han Pathology Clinic

| | | | | |
|---|---|---|---|---|
| 성명 | 부민혜 (F/29) | 진료의 성명 | 산부인과 / | 2017-12-20 |
| | | 소 견 | 조지혜 | 감검보고일 2017-12-21 07:32 |
| 등록번호 | 42313 | 접수번호 | 43-20171220-0457 | 기 타 |
| 검체종류 | S:Serum | | | |

| 보험코드 | 검 사 명 | 결 과 | 판정 | 참 고 치 | 검사 |
|---|---|---|---|---|---|
| CY170003 | 25-OH Vitamin D,Total | 9.06 | | 성인 | S |
| | | | | Deficiency < 10.00 | |
| | | | | Insufficiency 10.00~30.00 | |
| | | | | Sufficiency 30.01~100.00 | |
| | | | | Toxicity > 100.00 ng/mL | |
| | | | | 소아 | |
| | | | | Severe deficiency ≤ 5.00 | |
| | | | | Deficiency ≤ 15.00 | |
| | | | | Insufficiency 15.01~20.00 | |
| | | | | Sufficiency 20.01~100.00 | |
| | | | | Excess > 100.00 | |
| | | | | Toxicity > 150.00 ng/mL | |
| C4861003 | HAV Ab IgG | Negative(0.11) | | Negative < 1.0 S/co | S |
| C4862003 | HAV Ab IgM | Negative(0.24) | | Negative < 0.8 | S |
| | | | | Equivocal 0.8 ~ <1.2 | |
| | | | | Positive ≥ 1.2 S/CO | |
| C468241C | Rubella IgG | Positive(15.05) | | Negative < 5.00 | S |
| | | | | Equivocal 5.00~9.99 | |
| | | | | Positive > 9.99 IU/mL | |
| C468341C | Rubella IgM | Negative(0.11) | | Negative < 1.20 | S |
| | | | | Equivocal 1.20~1.59 | |
| | | | | Positive > 1.59 Index | |
| 360003 | TSH (Pregnancy) | 0.430 | | 1st Trimester 0.1~2.5 | S |
| | | | | 2nd Trimester 0.2~3.0 | |
| | | | | 3rd Trimester 0.3~3.5 mIU/L | |

상기항목 중 • 표시된 검사항목은 전문의가 검증하였습니다.

검사보고 완료입니다.

이원의료재단
DCNE Laboratories

| | | | |
|---|---|---|---|
| 검사자 | 서한익 | MT (3577) | |
| 보고자 | 이정수 | MD (542) | |
| 보고자 | 오귀현 | MD (507) | |

QuestQuanum™

**David D. Kim, MD**
<u>**Obstetrics and Gynecology**</u>
**143-16 Sanford Ave., 1st Floor**              Tel.   718-445-1700
**Flushing, NY 11355**                          Fax. 718-445-3097

## Patient Consent Form

Our Notice of Privacy Practices provides information about how we may use and disclosed pro-
tected health information about you. The Notice contains a Patient Rights section describing
your rights under the law. You have the right to review our Notice before signing this Consent.
The terms of our Notice may change. If we change our Notice you may obtain a revised copy by
contacting our office.

You have the right to request that we restrict how the protected health information about you is
used or disclosed for treatment, payment, or health care operation. We are not required to
agree to this restriction, but if we do, we shall honor that agreement.

By signing this form you consent to our use and disclosure of protected health information about
you for treatment, payment, and healthcare operations. You have the right to revoke this Con-
sent, in writing, signed by you. However, such a revocation shall not affect any disclosures we
have made in reliance on your prior Consent. The Practice provides this form to comply with the
Health Insurance Portability and Accountability Act of 1996 (HIPPA).

The Patient understands that :

1.   Protected health information my be disclosed or used for treatment, payment, or
     healthcare operations.
2.   The Practice has a Notice of Privacy Practices and that the patient has the opportunity to
     review this Notice
3.   The practice reserves that right to change the Notice of Privacy Practices.
4.   The patient has the right to restrict the uses of their information but the Practice does not
     have to agree to those restrictions.
5.   The Patient may revoke this Consent in writing at any time and all future disclosures will
     then cease
6.   The Practice may condition receipt of treatment upon the execution of this Consent.

This consent was signed by ___Park Min hye_____ ___11/16/17___
                              (printed name of patient or representative)

_____     Date
Signature (I have received a copy of the privacy notices)     ___2oln. 11./b___

Witness:
_____     Date
        (Printed name of Practice representative )

_____     Date
Signature

000003

QuestQuanum™

**David D. Kim, MD**
**Obstetrics and Gynecology**
143-16 Sanford Ave., 1st Floor
Flushing, NY 11355

Tel.  718-445-1700
Fax. 718-445-3097

### Patient Demographic Insurance Form

Name(이름) : _Park  Min  hye_____ Date(날짜): 2017. 11. 16

Address(주소): ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇_____

City: _____ State: _____ Zip Code: _____

Date of Birth (생년월일): ___▇▇▇___ Cell Phone(전화번호): 917 883 3535
Home Phone: _____
Work Phone: _____

Primary Insurance Carrier: _____

Insurance ID #: _____ Date Insurance Started: _____

Reason for Visit: _____

Referring Doctor / Friend: _____

Would you like to have a female present as a chaperone during your exam?          YES   (NO)
(검사도중 여성분이 같이 계시길 원하시나요?)
Would you like to have a Korean translator?(한국어 통역이 필요하신가요?)          (YES)   NO

May Dr. Kim's office call you and leave a message? (음성메세지를 남겨도 괜찮은가요?)          (YES)   NO

The provider (David D. Kim, MD) may release to governmental agencies, insurance carriers or
their designated agents or the legal or financial departments representing me or the provider, all
information needed to substantiate payment for my medical care and permit representative
thereof to examine and make copies of records in relation to such care and treatment.

I hereby assign, transfer and set over to David Kim, MD monies and/or benefits to which I may
be entitled from governmental agencies, and insurance carriers or others who are financially
liable for my hospitalization and/or medical care to cover the costs of treatment rendered to my-
self or dependent I will contact David Kim, MD In writing within 30 days of any changes to my
insurance and; or of the above information and agree to pay him in full any deductible and co-
payment my insurance requires me to pay.

Signature of Patient(서명): _____ Date(날짜): 2017. 11. 16

000002

QuestQuanum™

환자분께서는 의료보험이 현재 유효한지
환자분께서 직접 확인하시고 진찰에
임하셔야 됩니다.
만료된 의료보험으로 진찰을 받으실 경우,
환자분께서 **PAY** 하셔야 합니다.

## IT IS YOUR RESPONSIBILITY TO CHECK THE ELIGIBILITY OF YOUR INSURANCE BEFORE THE VISIT. IF YOUR INSURANCE IS NOT ACTIVE AT THE TIME OF SERVICE, YOU HAVE TO PAY FOR THE VISIT.

SIGNATURE OF PATIENT: _____

DATE: _____ 20 ㅣ7 . 11 . 16 _____

000004

**A-45**

Case 1:20-cv-02636-PKC-LB   Document 19-5   Filed 08/09/21   Page 4 of 4 PageID #: 198

QuestQuanum™

# 린치종후군 및 유전성 유방암 및 난소암 종후군에 대한위험 평가

환자 이름: _Park Min hye_    담당 의사: _11/6/17_
생년월일: _63/2,15._    작성 일자: _11/6/17_

지침: 귀하의(또는 귀하의 가족 (모계/아버지)의) 또는 부계(아버지)쪽 모두에 해당하는 경우 9번 등 그라비 표시를 하십시오. 각 내용 다음에, 귀하와의 관계 및 진단 연령을 적으십시오. 귀하 중 다음과 같은 가족 구성원이 해당됩니다:

부모, 형제, 자매, 아들, 딸, 조부모, 손자녀, 숙모, 숙부, 조카, 질녀.

각각의 행목은 개별로 답변하여야 합니다. 질문에 답할 때 통일할 수 있습니다. 본 설문지는 유전성 유방 및 난소암 종후군, 그리고 린치 종후군의 일반적인 양상에 대한 선별검사 도구입니다. 이 내용을 귀하의 의료진과 공유하여 귀하의 유전성 암 위험을 결정하는데 도움이 되도록 하십시오.

| | 대상 및 지단암 | 자신 | 가족 | 진단시 연령 |
|---|---|---|---|---|
| 예 아니오 | 50세 이전에 지단(자궁내막) 함 | | | |
| 예 아니오 | 50세 이전에 대장암 | | | |
| 예 아니오 | 동일인 또는 부계 쪽에서2건 이상 의 린치 징후군* | | | |

*다음을 포함한 린치 종후군 관련 암: 대장/직장, 자궁/자궁내막, 난소, 위, 신장/요도, 담즙, 수담, 췌장, 뇌, 그리고 피지 선종/암종 등

| | 유형 및 난소 암 | 자신 | 가족 | 진단시 연령 |
|---|---|---|---|---|
| 예 아니오 | 50세 이전에 유방암 | | | |
| 예 아니오 | 난소암 | | | |
| 예 아니오 | 동일인 또는 부계 또는 모계 쪽에서 2건의 원발성(유관함)의 유방암* | | | |
| 예 아니오 | 남성 유방 암 | | | |
| 예 아니오 | 상종 유성 유전변이(BRCA1/2, EPI, PR., HER2+) | | | |
| 예 아니오 | 모든 연령대에서 3건 이상의 HBOC 관련 암* | | | |
| 예 아니오 | 모든 연령대에서 HBOC 관련 암의 아시케나지 유대인(Ashkenazi Jewish) 조상 및 개인 또는 가족력* | | | |

*HBOC 관련 암은 유방(DCIS 포함), 난소, 췌장, 그리고 공격성 전립선 암을 포함합니다. 첫번째 부계 및 모계의 1,2,3차 친계 친/반(含)을 포함합니다.

| | | | | |
|---|---|---|---|---|
| 예 아니오 | 귀하나 귀하의 가족 중에 유전성 암 위험에 대한 검사를 받은 사람이 있습니까? | | | |

귀하나 귀하의 가족이 암 위험이 있는 경우 기록해 주십시오:

_11/16/17_
담당 서명    일자

설문 검사 지시:
☐ 추가위험 평가 및/또는 유전자 검사 대상자: ☐ 린치 ☐ HBOC
☐ 김 환자를 위해 환자에게 알림 정보
☐ 추가검사 내용 없음

☐ 환자에게 유전자 검사 체인 검토:
  ☐ 수락    ☐ 거절 _11/16/17_
담당의료진 서명    일자

000005

PCRA-09-10    ©2013
1 설문 질문 유방암에 대해 자세히 아시려면 귀하의 의료진에게 문의 바랍니다. 귀하의 모든 건강 관리 관련 질문은 의료진과 상담하십시오. Myriad 및 Myriad 로고는 미국 및 기타 방목 관할(국)에서 Myriad Genetics, Inc.의 상표 또는 등록 상표입니다. ©2013

000005

PCRA-09-10    MYRIAD®

2/22/2021 9:55 AM  FROM: Fax QSCA LLC  TO: 19732424033  PAGE: 013 OF 013

# CERTIFICATION OF CUSTODIAN

**MINHYE PARK**

vs.

N/A

I am the authorized Custodian of Records for: **QUEENS SURGICAL CARE CENTER** and I have the authority to certify the attached records of:

**MINHYE PARK, ▮▮▮▮▮▮▮**
STATE ARTRIUM CITY, ▮
SSN: N/A, DOB: ▮▮▮▮▮▮
MEDICAL RECORDS & DIAGNOSTIC FILMS ON CD

Being duly sworn according to law, I hereby certify, depose and say that these records were searched and reproduced in my presence at my direction. These records were prepared in the ordinary course of business by authorized personnel on or about the time of the event or act and careful search for the records has been made by me or under my direction. Therefore, these records constitute all the records of said individual described above.

**I HEREBY CERTIFY THAT THE FOLLOWING IS TRUE AND CORRECT:**

A: I HAVE ATTACHED ___10___ PAGES / _____ # OF X-RAYS.
B: THIS INCLUDES ALL MATERIAL REQUESTED.
C: THIS INCLUDES ALL CORRESPONDENCE BETWEEN ALL FACILITIES.
D: I HAVE ATTACHED THE PATIENT INFORMATION SHEET OR ID SHEET WHEN APPLICABLE.
E: PRIOR APPROVAL REQUIRED FOR FEES IN EXCESS OF $250 FOR HOSPITALS
   AND $150 FOR ALL OTHER PROVIDERS.

__2/22/2021__                          _____
Date                                   **Sign Here

**THE DOCUMENTS REQUESTED ARE NOT IN OUR POSESSION DUE TO THE FOLLOWING:**

___ No Records              ___ Records Destroyed After _____ Years
   ** Read below

___ No X-Rays               ___ X-Rays Destroyed After _____ Years
   ** Read below
Other _____

It is to be understood that this does not mean that the requested information does not exist under another spelling or another name. However, with the information furnished to our office and to the best of my knowledge, I certify the above to be a true and accurate statement.

_____                _____
Date                                    **Sign Here

## MUST SIGN AND RETURN THIS PAGE!

CE01 - 49908-03

C0, S1

2/22/2021 9:55 AM FROM: Fax QSCA LLC TO: 19732424033 PAGE: 003 OF 013

**Today's Date** 11/27/17     **Physician** D Kim

| **Patient Information/ Registration** | |
|---|---|
| Patient Name:<br>Last PARK    First Minhye | Date of Birth:<br>Place of Birth or Ethnicity:    Age: |
| Street Address: | |
| City, State, Zip: | Home telephone: |
| Cell Phone:<br>(917) 683 - 3535 | Employer:     Phone: |
| Marital Status ☑ Single ☐ Married<br>☐ Widowed/Divorced | Misc. Info. |
| Height 5 3   Weight 110 | ☐ Male    ☐ Female |
| May we leave messages on your answering machine? ☐ Yes ☐ No<br><span style="font-size:smaller">(note: the representative from our office will never leave any personal health information on an answering machine)</span> | |
| Emergency Contact: Min<br>Relationship: Friend | Telephone<br>(917) 283 - 0019 |
| Have you been seen by our practice before: ☐ Yes ☐ No   Date of Last Visit | |
| Who is picking you up after surgery? Friend | |
| What number can we reach you at the day after your surgery? | |

| **Insurance Information** | | | |
|---|---|---|---|
| Primary Insurance | | | DR D KIM 11-27-17 |
| Company Name:<br>none - | Policy ID# / Group ID# | Allergies | PARK, MINHYE<br>F, DOB |
| Secondary Insurance | | | |
| Company Name: | Policy ID# | Asthma | Heart Disease |
| | | Diabetes | |
| | | Rh | IV |
| If Policy Holder is other than the Patient, please complete the following: | | | |
| Policy Holder Name: | Date of Birth | High Blood Pressure | |

| **Referring Physician Information** | | |
|---|---|---|
| Physician Name: | Is this the primary care giver? | ☐ Yes ☐ No |
| Street Address: | If not, name of PCP: | |
| City, State, Zip: | Telephone: | |

I authorize the release of medical information which could include HIV status, communicable disease, or drug abuse information to and from my primary care and referring physician(s), outside laboratories or consultants, if needed, in the course of my examination and treatment and as necessary to process insurance claims, insurance applications and prescriptions until revoked in writing. I also authorize payment of medical benefits to the physician and QSCA LLC. I understand and agree that regardless of my insurance status, I am responsible for the balance of my account for any professional services rendered.

By signing this form I assure the information provided is complete and accurate to the best of my knowledge. If any of the above information should change, I understand that it is my responsibility to inform the organization of such changes. I have reviewed and understand, and a copy of the following information has been made available to me: **Information regarding the ownership of the practice; the expertise of the associated physicians; the Patient Rights and Responsibilities; the Patient Grievance Process; Notice of Privacy Practice.**

X _____     Minhye Park     11/27/17
Signature of Patient or Responsible Party     Printed Name     Date

2/22/2021 9:55 AM  FROM: Fax QSCA LLC  TO: 19732424033   PAGE: 004 OF 013

---

| Last Name | First Name | DOB  /  / | Date  /  / |
|---|---|---|---|

### Patient Medical History
*** Please use back of form if more space is needed

**ALLERGIES:** (list all meds and reactions) ❑Penicillin ❑Iodine ❑Tetracycline ❑Novocain ❑Ampicillin ❑Seafood ❑Other

*none*

**List all Present Illnesses/ Recent Diagnosis/Previous Surgeries:**

*TOP*

**List all medications, herbs, OTC medications, vitamins currently taking**

*none*

**Have you had any previous negative reaction to anesthesia?** ❑Yes  ☑No If yes please explain

**Do you take any of the following medications?** ❑ Coumadin/ Warfarin ❑ Plavix ❑ Aspirin ❑ NSAIDs ☑NONE
**Any issues related to:** ❑ Sight Impairment ❑Hearing ❑ Communication: Language
**Do you have a cough/cold /stuffy nose** ❑Yes ☑No   **Do you have?** ❑ Dentures  ❑ Contact Lenses ❑ Loose Teeth
**When was the last time you had something to eat?**____ 9 ____ AM/PM )  **Drink?**_____ 9 _____ AM/PM
**Do you smoke?** ☑Yes ❑No   **Use Alcohol?** ☑Yes ❑No  **Frequency**
**Do you use any of the following?** ❑ Amphetamines ❑ Crack ❑ Cocaine ❑ Heroin ❑ Marijuana ❑ Valium
❑ Other drug_____ Last time used_____

**Who is taking you home after the proceduere?**  *friend*

**Do you have a personal or family history of any of the following? S (Self) F (Family) No (None)**

| | S | F | No | | S | F | No | | S | F | No |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Abdominal Pain/ cramps | ❑ | ❑ | ❑ | Gastrointestinal Bleeding | ❑ | ❑ | ❑ | Mitral Valve prolapse | ❑ | ❑ | ❑ |
| Acid reflux/ heartburn | ❑ | ❑ | ❑ | Gonorrhea (V.D.) | ❑ | ❑ | ❑ | Nausea/ Vomiting | ❑ | ❑ | ❑ |
| Anemia | ❑ | ❑ | ❑ | Heart Disease | ❑ | ❑ | ❑ | Osteoporosis | ❑ | ❑ | ❑ |
| Asthma or Lung Disease | ❑ | ❑ | ❑ | Heart Murmur | ❑ | ❑ | ❑ | Ovarian cysts | ❑ | ❑ | ❑ |
| Bleeding (Excessive) | ❑ | ❑ | ❑ | Hepatitis | ☑ | ❑ | ❑ | Polyps | ❑ | ❑ | ❑ |
| Cancer (type) | ❑ | ❑ | ❑ | Herpes | ❑ | ❑ | ❑ | Pulmonary embolus | ❑ | ❑ | ❑ |
| Chlamydia | ❑ | ❑ | ❑ | High Blood Pressure | ❑ | ❑ | ❑ | Sickle cell anemia/ trait | ❑ | ❑ | ❑ |
| Clinical Depression | ❑ | ❑ | ❑ | HIV/AIDS | ❑ | ❑ | ❑ | Sleep Apnea | ❑ | ❑ | ❑ |
| Diabetes | ❑ | ❑ | ❑ | Infection of the Uterus, Ovaries (PID) | ❑ | ❑ | ❑ | Stomach Ulcer | ❑ | ❑ | ❑ |
| Diarrhea | ❑ | ❑ | ❑ | | | | | Syphilis (V.D) | ❑ | ❑ | ❑ |
| Digestive disease | ❑ | ❑ | ❑ | Irritable Bowel Syndrome | ❑ | ❑ | ❑ | Thyroid Problem | ❑ | ❑ | ❑ |
| Epilepsy, convulsions, seizures | ❑ | ❑ | ❑ | Kidney problems | ❑ | ❑ | ❑ | Tuberculosis | ❑ | ❑ | ❑ |

**Menstrual Cycle Information**

| Yes | No | |
|---|---|---|
| ❑ | ❑ | Bleeding/spotting since last menstrual period? When?_____ |
| ❑ | ❑ | Do you have cramping? |
| ❑ | ❑ | Periods are usually every 25-35 days? If NO how often?_____ |

How many days do you flow_____

Date of Last Menstrual Period  6 / 6 / 1

**Previous problems with deliveries or abortions?**

_____

Date of Last Pregnancy Test_____
Previous Pap Smears results: ❑ None ❑Normal ❑Abnormal

Previous surgical procedures on your cervix: ❑None
❑Colposcopy ❑Leep ❑Cryo ❑Cone biopsy ❑Laser

Birth Control Methods Used: ❑None ❑Pills ❑Patch ❑Depo
❑Condoms ❑ Sponge ❑Nuvaring ❑Diaphragm ❑ IUD ❑BTL

**Previous Pregnances**
How many times have you been pregnant? _____ 2

Number of live births_____

Number of Vaginal deliveries_____

Number of Caesarean sections_____

Number of abortions_____ 2

Number of miscarriages_____

Have you had an Ectopic pregnancy? If so how many?___

Do you have any questions you wish to remember to ask the doctor?_____

_____

_____

| TO THE BEST OF MY KNOWLEDGE, THE ABOVE INFORMATION IS TRUE AND COMPLETE. | |
|---|---|
| Patient's Signature _____ | Date 1/17/1 |

2/22/2021 9:55 AM  FROM: Fax QSCA LLC  TO: 19717424033  PAGE: 011 OF 013

## QSCC Corporation
136-20 38th Ave Suite 51
Flushing NY 11354

## NewPath Diagnostics
42-11 Parsons Blvd., 1st Floor
Flushing, NY 11355
Tel: (718) 321-1108
Fax: (718) 321-0158 / (718) 408-1477

Tel (71 ___ 39-7474
DR. ___  DR D KIM 11-27-17
PARK. M NHYE
F. DOB

### PATIENT INFORMATION

| Last Nam | First Name | M.I. | D.O.B. | ☐ M ☐ F |
|---|---|---|---|---|

| Street Address | Apt# | City | State |
|---|---|---|---|

| Phone | SSN | Insured name (if different from patient) | Insured D.O.B. |
|---|---|---|---|

### INSURANCE INFORMATION

| Insurance Name | I.D. # | Group # |
|---|---|---|

☐ Bill QSCC   ☐ Bill Client   ☐ Bill Insurance   ☐ Self   ☐ Spouse   ☐ Child

| Physician Name | NPI# |
|---|---|

### SPECIMEN INFORMATION

| Date Collected | Time AM PM | Fasting ☐ hr | Fax results to: | Call results to: | STAT |
|---|---|---|---|---|---|

It is the ordering party's responsibility to order only those tests medically necessary for the diagnosis and treatment of the patient.

| ICD9 code | | | | |
|---|---|---|---|---|

### HISTOPATHOLOGY REQUEST
INFORMATION BELOW IS IMPORTANT FOR PROPER INTERPRETATION

CLINICAL DIAGNOSIS

PERTINENT MEDICAL HISTORY / OPERATIVE FINDINGS

PREVIOUS SURGERY
(IF EXAMINED AT THIS LAB INCLUDE PATHOLOGY # )

IF GYN SPECIMEN: LMP ___
month / day / year

☐ Oral Contraceptives   ☐ Post Menopausal
☐ Pregnant   ☐ Hormonal therapy (Specify)
☐ Post Abortion   ☐ Abnormal Bleeding
☐ Post Partum   ☐ DES Exposure
☐ IUD

#### TYPE OF SKIN BIOPSY
JAR#: ___ ☐ PUNCH
JAR#: ___ ☐ SHAVE
JAR#: ___ ☐ INCISIONAL
JAR#: ___ ☐ EXCISIONAL
JAR#: ___ ☐ EXCISIONAL WITH
MARGIN EXAMINATION

#### SITE OF BIOPSY:
JAR#: ___ ☐ ENDOCERVIX
JAR#: ___ ☐ ENDOMETRIUM
JAR#: ___ ☐ CERVICAL POLYP.
JAR#: ___ ☐ ENDOMETRIAL POLYP.
JAR#: ___ ☐ CONE BIOPSY
JAR#: ___ ☐ P.O.C.

PLEASE IDENTIFY CONTAINERS (NOT LIDS) WITH PATIENT NAME

For Lab Use Only

2/22/2021 9:55 AM  FROM: Fax QSCA LLC  TO: 19732424033   PAGE: 005 OF 013

136-20 38th Ave, Sui  DR D KIM 11-27-17
PARK, MINHYE

Patients Name: _M. and D E Pth_  Date of Birth: ___  Da  F. DOB

nos  11/17/17

### Informed Consent for Termination of Pregnancy

I hereby give my full and informed consent to: Dr. _D. Kim_  and his/her associates at
QSCA LLC to terminate my pregnancy. I have considered my alternatives regarding this pregnancy and I voluntarily and
of my own free will consent to the termination of pregnancy procedure.   _current future_

_Doing Discation AND come natural HC_

I authorize the above physician and/or his/her associates to carry out such diagnostic procedures, administer treatment,
anesthetics and/or medications, as he/she may deem necessary and advisable to insure my proper treatment.

My physician has fully explained the risks, and drawbacks involved as well as the possibility of complications from the
procedure, including _PAIN, BLEEDING INFECTION, PERFORATION OF UTERUS,_
and the benefits of the procedure. We have also discussed alternatives including no treatment; to the procedure along with
those risks and benefits. I am aware that no guarantee or assurances as to the results of the procedure have been made and
I have been told that no guarantee of results could be made. By signing this consent, I agree that all the foregoing has
taken place to my satisfaction _RETAINED PRODUCTS, EMERGENCY_
_ASHERMAN SYNDROME, AMCEN CERVICE_
_DEFENSION_

I have received pre and post-operative (before and after) instructions; both written and verbal. I was given a chance to ask
questions and all of my questions have been answered to my satisfaction. I am aware of the recovery period required as
well as any potential problems I may encounter during this time

I represent that my medical history is accurate including medical conditions, use of medications, allergies to medications,
use of any drugs (such as marijuana, crack, cocaine, heroin, valium, codeine) or alcohol. I am aware that withholding
information regarding my medical history or use of drugs could be life threatening, and that the physicians treating me are
NOT responsible for complications related to the information that I withhold.

Therefore, I authorize my physician in addition to any assistants whom he/she might designate, to perform this operation
together with any preoperative or postoperative treatment upon me.

I authorize the operating physician to perform any procedures, which he may deem necessary in attempting to improve the
condition for which I am being treated or any unforeseen condition that he may encounter during the operation.

I also consent to the administration of anesthesia, general, IV sedation, or local, to be applied by or under the direction of
the Anesthesia Department and /or the operating physician, and the use of such anesthetics as deemed advisable.
I understand the risks, complications and potential benefits of anesthesia; as well as potential problems associated with
anesthesia during the recovery phase.  These risks include but are not limited to, nausea and vomiting, trouble breathing,
low blood pressure, cardiac arrhythmia, cardiac arrest, death.

I consent to observers in the procedure room as approved by my physician for the purpose of training or quality assurance.
I authorize my physician to disclose complete information concerning his medical findings and treatment for the
undersigned, from the initial consultation until date of the conclusion of such treatment, to those individuals who in my
physicians sole determination, are required to receive such information for the purpose of medical treatment, medical
quality assurance and peer review.

___  ___
Patient         Date                    Witness

Guardian/Responsible Party             Relationship

I ___  _am_  have fully discussed and explained to _M in Hon Pith_
All the procedures and risks involved in the above identified procedure and hereby certify that I have explained the nature,
purposes, benefits, risks, and alternatives to the proposed procedure, and have offered to answer any questions and have
fully answered all such questions. I believe the patient fully understands what I have explained and answered.

Physician Signature ___  Date _11/27/17_

2/22/2021 9:55 AM  FROM: Fax QSCA LLC  TO: 19732424033  PAGE: 006 OF 013

DR D KIM 11-27-17
PARK, MINHYE
F, DOB

**Consent for Anesthesia**

I hereby authorize the anesthesiologist Dr. _____ or his/her colleague, to administrate intravenous sedation (MAC), general, or local anesthesia on me for the proposed procedure. The anesthesiologist has fully explained to me the nature, benefits, risks, possible complications and alternative treatments for the anesthesia, including no anesthesia. These risks include but are not limited to, nausea, vomiting, trouble breathing, pneumonia, aspiration, low blood pressure, cardiac arrhythmia, cardiac arrest, or death. I understand that I should not have eaten food or drank fluid at least eight hours prior to the procedure. I also understand the necessity for an escort and the potential risks in traveling after anesthesia without an escort. I have been given an opportunity to ask questions and all my questions have been answered.

**Assignment and Release**

I authorize the release of any personal and medical information necessary to process this claim. I permit copy of this authorization to be used in place of the original. I authorize Dr. _____ to apply for benefits on my behalf for covered services rendered by him or his order. I request that payment from my insurance company be made directly to the doctor. I certify that the information I have reported with regard to my insurance coverage is correct.

Patient's Name (Print): _____          Signature: _____

Witness's Name (Print): _____          Signature: _____

Physician's Signature: _____          Date: _____

**Patient discharge and Escort**

Patient Received: Mediation Prescription ☐ Y / ☑ N Discharge Instruction ☑ Y / ☐ N

Patient Signature: _____

Name of Responsible Adult Who Will Take Patient Home

Print: _____     Sign: _____     Date: 11/27/17

☆ Friend is downstairs

2/22/2021 9:55 AM FROM: Fax QSCA LLC TO: 19732424033   PAGE: 010 OF 013

QSCA
136-20 38ᵀᴴ Ave. 5l
Flushing,NY 11354
Tel. 718-939-9200

Date: November 27, 2017

### OPERATIVE REPORT

Name of patient:          MINHYE PARK

Patient date of birth:

Preoperative Diagnosis:      ELECTIVE TERMINATION OF PREGNANCY
Procedure:                   SUCTION DILATATION AND CURETTAGE
Postoperative Diagnosis:     ELECTIVE TERMINATION OF PREGNANCY

Surgeon:      David Kim, MD          Assistant:    None
Anesthesiologist: Guo, MD            Anesthesia:   MAC
Complications:      None.
Estimated Blood Loss:   20 mL
Specimen(s):      PRODUCTS OF CONCEPTION.

### Description of Operative Procedure:

After risks and benefits of options were discussed with the patient, informed consent was signed and obtained. Patient understands and accepts possible risks of suction dilatation and curettage, including but not limited to bleeding, perforation of the uterus, infection, perforation of the uterus (with or without possible injury to organs surrounding the uterus (including but not limited to the urinary bladder and/or the bowel), cervical laceration, retained products of conception, Asherman's syndrome, and/or pain. Informed consent was signed and obtained. Patient voided urine in the bathroom, and then was transferred to the operating room.

MAC anesthesia was given by Dr. Guo. Patient was then placed in the dorsal lithotomy position, the patient was prepped and draped in sterile fashion. Sterile heavy weighted speculum was placed in the posterior portion of the vaginal vault. A Sims speculum was placed in the anterior portion of the vaginal vault. An Allis clamp was used to grasp the anterior lip of the cervix. The endocervical canal was gently and gradually dilated with Hanks dilators. A 6 mm suction cursite was used to perform a suction curettage. A sharp curettage was then gently performed throughout the endometrial cavity until a gritty texture was appreciated. A suction curettage was repeated to remove the remaining products of conception. All instruments were then removed from the vagina. Excellent hemostasis was visualized. Instrument and sponge count were correct times two. Patient was transferred to the recovery room in stable condition.

### Discharge Instructions:

1.   Pelvic rest: No sex, no tampons, no douche, and no tub baths for 3 weeks.
2.   Call Dr. Kim and go immediately to NY Presbyterian-Queens ER if fever, severe abdominal pain, or heavy vaginal bleeding.
3.   Advil 400mg po q 6 hours with food for 3 days prn pain.
4.   Follow up with Dr. Kim in the office in 3 weeks.

2/22/2021 9:55 AM FROM: Fax QSCA LLC TO: 19732424033  PAGE: 007 OF 013

DR D KIM 11-27-17
PARK, MINHYE
F, DOB

## Anesthesia Record

Patient's Name: _____  D.O.B.: __
Diagnosis: _____  Date: _____
Procedure: _____  Time: 0:00 → 11:40

### PREOPERATIVE EVALUATION

Medical History:
HTN: YES( ) NO( )  DM: YES( ) NO( )
CAD: YES( ) NO( )  ASTHMA: YES( ) NO( )
OTHER: YES( ) NO( )  BLEEDING TENDENCY: YES( ) NO( )

Surgical History:
Medication:
Allergies:

BP:
Height:
Cardiovascular:
Pulmonary:
Airway Assessment:
Lab:
N.P.O. Status:
ASA Class: 2

HR-
Weight: 110  O2Sat

| Time | | 15 | 30 | 45 | | 15 | 30 | 45 | Total |
|------|--|----|----|----|--|----|----|----|-------|
| O2 (L/M) | | | | | | | | | |
| Midazolam | | | | | | | | | |
| Propofol (ml) | | | | | | | | | |
| Ketamine(mg) | | | | | | | | | |
| Fentanyl(ug) | | | | | | | | | |
| IV | | | | | | | | | |
| Ventilation | | | | | | | | | |
| ECG | | | | | | | | | |
| Pulse Ox | | | | | | | | | |

NIBP: 180, 160, 140, 120, 100, 80
HR: 60, 40

**Anesthesia Management:**

Consent obtained
Monitors Applied
IV line Placed
Time Out Prior To Procedure

Anesthesia Type:
GA ( )  MAC ( )

Airway Management ( )

Remark

### RECOVERY & DISCHARGE

Time: | BP: | HR: | O2Sa: | RR:

**Discharge Criteria**

Vital Signs Stable: ( )
Alert and Oriented X 3 ( )
Absence of Pain: ( )
Able to Ambulate: ( )

No anesthesia complications: ( )
Discharge with escort: ( )
Instruction given: ( )
Discharge Criteria Met: ( )

Discharge Time:_____

Notes:

Surgeon Name: Dr. Kim

Anesthesiologist Signature:

2/22/2021 9:55 AM  FROM: Fax QSCA LLC  TO: 19752424033   PAGE: 008 OF 013

DR D KIM 11-27-17
PARK, MINHYE
F, DOB

### Post-Operative Recovery Room Record

Patient Name: _____ Date Birth _____ Date: _____
Handoff Required ☐ No ☐Yes  Staff Performing _____ Info Revised _____

Monitor _____ Patient Identification Verifies ☑ Verbal  ☐ Medical Record

Time In: _____ Skin Color ☐ Pink ☐ Pale  Breathing ☐ Freely ☐Obstructed

Response: ☐ Awake and Oriented ☐ Unresponsive  Time Responsive: _____

| Time | BP | HR | Resps | O2 Saturation | Comments | Initials |
|---|---|---|---|---|---|---|
| Admission Time: | 11:40 | 108/64 | 16 | 97 | | Z |
| 1ˢᵗ Eval after Admission: | 12:00 | 100/62 | 17 | 98 | | Z |
| Discharged Time: | 12:50 | 100/62 | 17 | 98 | | Z |

| | Medication | Dsg | RT | Time | Initials |
|---|---|---|---|---|---|
| ☐ | Ibuprofen | 600 mg # ___ | By Mouth | | |
| ☐ | Tylenol | 500mg #2 | | | |
| ☐ | Water/Tea | | ✓ | 12:00 | |
| ☒ | Hard candy | | | | |
| ☐ | Orange Juice | | | | |
| ☐ | Coffee | | | | |
| ☐ | Apple Juice | | | | |

Bleeding ☐ Scant ☐ Moderate ☐ Heavy

Pain Scale – Initial          Ask patient to point to face that best described their level of pain

0.  No Pain   1. Mild Pain   2. Discomfort   3. Distressing   4. Intense   5. Excruciating

Pain Scale –Discharge        Ask patient to point to face that best described their level of pain

0.  No Pain   1. Mild Pain   2. Discomfort   3. Distressing   4. Intense   5. Excruciating

| Discharge Scoring System: | | OUT |
|---|---|---|
| Able to do normal activity for age | 2 | |
| Minimal Assist | 1 | |
| Ambulate with assistance | 0 | 2 |
| VS +/- 20% Pre-op level/stable | 2 | |
| VS +/- 20-50% Pre-op level/stable | 1 | |
| VS +/- 60% pre-op level/stable | 0 | 2 |
| Voided | 2 | |
| Voiding small amounts | 1 | |
| Unable to void | 0 | 2 |
| Tolerating liquids / solids well | 2 | |
| Needs encouragement to drink | 1 | |
| Not drinking. IV still infusing | 0 | 2 |
| Minimal or no nausea & vomiting | 2 | |
| Moderate nausea & vomiting | 1 | |
| Unable to control nausea & vomiting | 0 | 2 |
| Minimal or No Bleeding | 2 | |
| Bleeding Within Normal Limits | 1 | |
| Excessive Bleeding | 0 | 2 |
| Totals: | | |

Discharge Status:— Time of Discharge: _____ 12:50

Ambulatory? ☐Yes ☐No
Instructions given: ☐Yes  To: ☐ Patient ☐ Caregiver
Patient Understands Post-up Instructions ☐Yes
Patient Mental Status ☐ WNL ☐ Altered
Post-op Appointment made: ☐Yes
Pain Management Plan:
☐ Pain 4 or less take pain medication as instructed in postoperative instructions
☐Pain level greater than 4: MD plan:

☐ Patient cleared for discharge home with an escort in stable condition. Patient indicates she is feeling well
Notes _____

Discharged by: _____ M.D.

2/22/2021 9:55 AM  FROM: Fax QSCA LLC  TO: 19732424033  PAGE: 009 OF 013

Physician Name:

## PRE-OPERATIVE HISTORY AND PHYSICAL EXAMINATION

Patient Name: _____ DOB: _____ Date: _____

HEIGHT _____ WEIGHT _110_ TEMP _98_ PULSE _62_ BP _98/50_ NPO ____ # hours

ALLERGIES/ DRUG SENSITIVITIES _____ none _____

Previous Serious Illness and Surgeries _____

Pertinent Labs: ☐ Urine Pregnancy ☐ Positive ☐ Negative ☐RH ☐ Positive ☐ Negative
☐NONE  ☐ Other Labs _____
Current/Chronic Medical Issues: _____

Barriers to learning ☐ None ☐ Site impairment ☐ Hearing ☐ Speech ☐ Language _____
☐ Level of Understanding ☐ Psychosocial Status _____ ☐ Cultural Considerations _____
**Plan for Effective Teaching/Education**
☐ Translation Services _____ ☐ Large Print Materials ☐ Translated Written Materials
☐ Other _____

**MEDICATION MANAGEMENT:**
Current Medications ☐Unchanged from intake
☐ Other, explain _____
Anticoagulants?  ☐ Yes ☐ No   last dose? _____

**PHYSICAL ASSESSMENT**
Heart:       ☐ Normal   ☐ Other _____
Lungs       ☐ Normal   ☐ Other _____
Other (applicable to area to be treated) ☐ Normal ☐Other _____
General Appearance: ☐ Normal   ☐ Other _____
Review of Systems   ☐ WNL      ☐ Other, explain _____
Bleeding Tendencies ☐ None ☐ Other _____
Other pertinent finding: _____
IMPRESSION (Pre-op diagnosis and proposed procedure) _____

**TIME OUT PROCEDURE**
**VERIFIED:    Correct Patient?  ☐ Name ☐ Date of birth**
Correct surgery with patient? ☐Yes ☐ No Informed Consent Obtained? ☐ Yes 2 Person Agreement ☐ Yes

☐ Site marking n/a ☐ Surgery Site Marked

*Cleared for Procedure* ☐ *Yes* ☐*No, Reason* _____

Physician Signature: _____ Date_____

Procedure Start Time_____ Procedure End Time_____

2/22/2021 9:55 AM  FROM: Fax QSCA LLC  TO: 19732424035  PAGE: 012 OF 013



**NewPath**
**Diagnostics**

## WOMEN'S HEALTH PATHOLOGY REPORT

42-11 Parsons Boulevard, 1ST FL., Flushing, NY 11355
Phone 718-321-1106; Fax 718-321-0158

| PATIENT | PHYSICIAN | SPECIMEN | |
|---|---|---|---|
| PARK,MINHYE | DAVID KIM, M.D. | Accession #: | S17-10254 |
| Age: 28  DOB: | 138-20 38th Avenue 3l | Date Collected: | 11/27/2017 |
| Sex: Female | Flushing, NY 11354 | Date Received: | 11/27/2017 |
| | Tel #:  718-939-9200   Fax#:  718-939-7474 | Date Reported: | 12/04/2017 |
| | | # of Jars received: | 1 |
| | | Service type: | GLOBAL |

### FINAL DIAGNOSIS:

PRODUCT OF CONCEPTION, CURETTAGE

- **Decidua with reactive changes. No villi seen.**
  *Note: Report faxed to Dr. Kim's office (12/03/2017).*

### GROSS DESCRIPTION:

Product of conception, curettage received in formalin  is multiple fragment(s) of tan, soft tissue measuring 20x20x20 mm with possible villi but no fetal parts. The specimen is entirely submitted in 2 cassettes.

**PATHOLOGIST:**

Jianyou Tan, M.D., Ph.D./ Electronically Signed

CPT:  88305
ICD10:  Z33.2

Printed at 2/22/2021 5:28.59 AM
Page 1 of 1

Subject: Re: Review the documents meticulously of the name, signatures and dates, and confirm you did it or not.
From : minhye park
To: JSL LAW OFFICES, P.C.
Date: 201-07-05 1308 PM

So these 4 pages are the ones I wrote when I first went to the clinic, and where marked "x" is not my handwriting. Other than these four pages of documents, they are not written by me, and I have never seen them before.

---

Subject: Re: Review the documents meticulously of the name, signatures and dates, and confirm you did it or not.
From : minhye park
To: JSL LAW OFFICES, P.C.
Date: 201-07-05 11:55

I've checked and I've written only the parts I've circled in red, and the rest of them are not the papers I've written. Other documents are the first time I look at them, and I've never seen it or heard it. That's not my handwriting, it's someone else's. Not only did I speak English, but I didn't understand spoken English. I have never heard about any side effects or anything about surgery before or after the surgery and the doctor lied to me even when he saw the ultrasound that the baby was still there and growing because the surgery went wrong.

I just heard the doctor said that the surgery went good, without knowing the baby was still growing, and I took the contraceptive pill right after the surgery, and I came to Korea to find out that fetus was still alive. When I still think about what happened then, my whole body shakes and I feel so angry. I don't know what these documents are about, and the only part I circled is my handwriting, and the rest of the documents that I've never seen before. Those are not my handwriting. Now please stop this doctor's lying and I want to end this pain.

## Affidavit of Translation

I, _____Soohyun Park_____, am fluent in English and
_____Korean_____. I hereby certify that I have translated and verified the
following document(s) which is/are attached to this Affidavit:

Description of document(s): (title or type, document date, number of pages)

_____two email replies, sent date 7/5/21 , 1 page_____

_____

I further certify that, to the best of my knowledge, the attached document(s)
written in ___English_____ is/are a true and accurate translation of
the attached document(s) written in Korean_____.

*Soohyun Park* (signature)          Soohyun Park
_____     _____
*(Signature of Translator/Verifier)*     *(Print Name)*


================================================================

STATE OF _New York_____
COUNTY OF _Nassau_____

Subscribed and affirmed, or sworn to, before me on this ___5th__ day of
_August_____ , 202_1 , by _Soohyun Park_____.

_____          Jae S. Lee
*(Signature of Notary Public)*          *(Print Name)*

Jae S Lee
Notary Public State of New York
No. 02LE6279642
Qualified in Nassau County
Commission Expires April 15, 20___

My commission expires:

| Subject | **Re: 이름과 사인, 날짜 등을 꼼꼼히 확인 하시고, 본인이 하신 것이 맞는지 연락 주세요.** |
| --- | --- |
| From | 박민혜 <jindov12@naver.com> |
| To | JSL LAW OFFICES, P.C. <office@lawjsl.com> |
| Date | 2021-07-05 13:08 |

roundcube

- EC290651-51B1-40AE-8B12-5ED375B3B16E.jpeg(~296 KB)
- EFE60BA0-4A21-44A9-B207-839242BF4F78.jpeg(~348 KB)
- 2430BDEE-A0B1-428D-90BE-1F74D7BA78CD.jpeg(~245 KB)
- 9427492E-7CF2-4549-BD97-33450C0D8CC8.jpeg(~413 KB)

이렇게 4장은 제가 처음 병원에 갔을 때 작성한게 맞고 x친 부분은 제 글씨가 아닙니다 이 4장을 제외한 나머지 서류는 제가 쓴게 아니고 처음보는 서류들입니다

-----Original Message-----
**From:** "JSL LAW OFFICES, P.C."<office@lawjsl.com>
**To:** "박민혜"<jindov12@naver.com>;
**Cc:**
**Sent:** 2021-07-06 (화) 01:58:12 (GMT+09:00)
**Subject:** Re: 이름과 사인, 날짜 등을 꼼꼼히 확인 하시고, 본인이 하신 것이 맞는지 연락 주세요.

이것도 보세요.

---
Very truly,

JSL Law Offices, P.C.
(Main Office)
626 RXR PLAZA
UNIONDALE, NY 11556

Tel: (718) 461-8000
Fax : (866) 449-8003
www.lawjsl.com

Confidentiality Note: This e-mail and any attachments transmitted with
it are intended solely for the use of the addressee and may contain
information that is privileged and confidential. If you are not the
intended recipient, please notify the sender by return e-mail, and
delete or destroy this e-mail and any attachments. Any unauthorized
disclosure, use, distribution, or reproduction of this e-mail or any
attachments is prohibited and may be unlawful.

On 2021-07-05 11:55, 박민혜 wrote:
> 확인해보니 제가 직접 쓴 글씨는 빨간색으로
> 동그라미 친 부분만
> 제가 쓴 거고 나머지는 제가 쓴 글자가 아닙니다
> 다른 서류들은 아예 처음 보는거고 저런 서류들을
> 저는 본 적도
> 그에 대한 설명을 들은적도 없습니다 저건 제 글씨가
> 아니고 다른사람 글씨입니다 저는 영어를 못해서
> 무슨말인지 알아듣지도 못할뿐더러 수술전이나
> 수술후에도 전혀 부작용이나 수술에 관한
> 어떤글이라거나 얘기도 듣지도 보지도 못했고
> 실지어 수술이 잘못되서 아기가 크고 있는걸
> 초음파로 보고도 의사는 저에게 거짓말을 했습니다

1 of 4

7/5/2021, 1:19 PM

> 수술이 잘못되서 아기가 크고있는지도 모르고
> 수술이 잘못됐다는 의사 말만 듣고 수술 후 피임약을
> 바로 복용했으며 한국에 와서 아기가 있다는걸 알게
> 되었습니다 아직도 그때 생각을 하면 온 몸이
> 떨릴정도로 화가 납니다 저는 이 서류들이 무슨
> 내용인지도 모르고 제가 동그라미 친 부분만 제
> 글씨가 맞고 나머지 서류들은 본 적도 없는 처음보는
> 글씨입니다 이것은 제 자필이 아닙니다 이제 제발 그
> 의사가 거짓말을 그만하고 이 고통을 끝내고
> 싶습니다
>
>
> -----Original Message-----
> From: "JSL LAW OFFICES, P.C."<office@lawjsl.com>
> To: <jindov12@naver.com>;
> Cc:
> Sent: 2021-07-06 (화) 00:30:56 (GMT+09:00)
> Subject: 이름과 사인, 날짜 등을 꼼꼼히 확인 하시고,
> 본인이 하신 것이 맞는지 연락 주세요.
>
>   첨부서류에 있는 이름과 사인, 날짜 등을 꼼꼼히
> 확인 하시고, 본인이 하신 것이 맞는지 연락 주세요.
>
> --
> Very truly,
>
> JSL Law Offices, P.C.
> (Main Office)
> 626 RXR PLAZA
> UNIONDALE, NY 11556
>
> Tel:  (718) 461-8000
> Fax : (866) 449-8003
> www.lawjsl.com [1]
>
> Confidentiality Note: This e-mail and any attachments transmitted with
>
> it are intended solely for the use of the addressee and may contain
> information that is privileged and confidential. If you are not the
> intended recipient, please notify the sender by return e-mail, and
> delete or destroy this e-mail and any attachments. Any unauthorized
> disclosure, use, distribution, or reproduction of this e-mail or any
> attachments is prohibited and may be unlawful.
>
>
>
>
>
>
> Links:
> ------
> [1] http://www.lawjsl.com


EC290651-51B1-40AE-8B12-5ED375B3B16E.jpeg
~296 KB

QuestQuanum™

**David D. Kim, MD**
**Obstetrics and Gynecology**
**143-16 Sanford Ave., 1st Floor**
**Flushing, NY 11355**

**Tel.  718-445-1700**
**Fax. 718-445-3097**

## Patient Consent Form

Our Notice of Privacy Practices provides information about how we may use and disclosed pro-
tected health information about you. The Notice contains a Patient Rights section describing
your rights under the law. You have the right to review our Notice before signing this Consent.
The terms of our Notice may change. If we change our Notice you may obtain a revised copy by
contacting our office.

You have the right to request that we restrict how the protected health information about you is
used or disclosed for treatment, payment, or health care operation. We are not required to
agree to this restriction, but if we do, we shall honor that agreement.

By signing this form you consent to our use and disclosure of protected health information about
you for treatment, payment, and healthcare operations. You have the right to revoke this Con-
sent, in writing, signed by you. However, such a revocation shall not affect any disclosures we
have made in reliance on your prior Consent. The Practice provides this form to comply with the
Health Insurance Portability and Accountability Act of 1996 (HIPPA).

The Patient understands that :

1.  Protected health information my be disclosed or used for treatment, payment, or
    healthcare operations.
2.  The Practice has a Notice of Privacy Practices and that the patient has the opportunity to
    review this Notice
3.  The practice reserves that right to change the Notice of Privacy Practices.
4.  The patient has the right to restrict the uses of their information but the Practice does not
    have to agree to those restrictions.
5.  The Patient may revoke this Consent in writing at any time and all future disclosures will
    then cease
6.  The Practice may condition receipt of treatment upon the execution of this Consent.

This consent was signed by ___Park Min hye___       11 /16//7

(printed name of patient or representative)

Signature (I have received a copy of the privacy notices)       Date

2010. 11 ./6

Witness:

(Printed name of Practice representative )       Date

Signature       Date

000003

QuestQuanum™

**David D. Kim, MD**
**Obstetrics and Gynecology**
143-16 Sanford Ave., 1st Floor                                    Tel.  718-445-1700
Flushing, NY 11355                                                Fax. 718-445-3097

Patient Demographic Insurance Form

Name(이름) : Park Min hye                    Date(날짜): 2017 . 11 . 16

Address(주소): ████████████████████████

City: _____ State: _____ Zip Code: _____

Date of Birth (생년월일): ████████    Cell Phone(전화번호): 017 883 3535
                                     Home Phone: _____
                                     Work Phone: _____

Primary Insurance Carrier: _____

Insurance ID #: _____ Date Insurance Started: _____

Reason for Visit: _____

Referring Doctor / Friend: _____

Would you like to have a female present as a chaperone during your exam?          YES    NO
(검사도중 여성분이 같이 계시길 원하시나요?)
Would you like to have a Korean translator?(한국어 통역이 필요하신가요?)          YES    NO

May Dr. Kim's office call you and leave a message? (음성메세지를 남겨도 괜찮은가요?)    YES    NO

The provider (David D. Kim, MD) may release to governmental agencies, insurance carriers, or
their designated agents or the legal or financial departments representing me or the provider, all
information needed to substantiate payment for my medical care and permit representative
thereof to examine and make copies of records in relation to such care and treatment.

I hereby assign, transfer and set over to David Kim, MD monies and/or benefits to which I may
be entitled from governmental agencies, and insurance carriers or others who are financially
liable for my hospitalization and/or medical care to cover the costs of treatment rendered to my-
self or dependent I will contact David Kim, MD in writing within 30 days of any changes to my
insurance and; or of the above information and agree to pay him in full any deductible and co-
payment my insurance requires me to pay.

Signature of Patient(서명): _____    Date(날짜): _2017. 11 . 16

000002

QuestQuanum™

환자분께서는 의료보험이 현재 유효한지
환자분께서 직접 확인하시고 진찰에
임하셔야 됩니다.
만료된 의료보험으로 진찰을 받으실 경우,
환자분께서 **PAY** 하셔야 합니다.

IT IS YOUR RESPONSIBILITY TO
CHECK THE ELIGIBILITY OF YOUR
INSURANCE BEFORE THE VISIT. IF
YOUR INSURANCE IS NOT ACTIVE AT
THE TIME OF SERVICE, YOU HAVE
TO PAY FOR THE VISIT.

SIGNATURE OF PATIENT: _____

DATE: _____ 2017 . 11 . 16 _____

000004

**A-64**

QuestQuanum™

## 린치종양군 및 유전성 유방암 및 난소암 종후군에 대한위험 평가

환자 이름: Park Min hye   담당 의사:

생년월일: 68/2/5.   작성 날짜: 11/16/12

지침: 귀하(환자)의 가족 가름(모계(어머니) 또는 부계(아버지)계 모두에 해당하는 경우 아래 둥그라미) 조사를 하십시오. 각 내용 다음에, 귀하내의 관계 및 진단 연령을 적으십시오. 귀하 및 다음과 같은 가족 구성원이 해당됩니다:

부모, 형제, 자매, 자녀, 이를, 딸, 조부모, 손자녀, 숙모, 숙부, 조카, 질녀,
베드와 종제, 사촌, 종조부 및 종손자녀

각각의 항목은 개별적으로 답변하여야 합니다: 질문에 답할 때 동일한 암 진단을 한 번 이상 적을 수 있습니다. 본 설문지는 유전성 유방 및 난소암 종후군 그리고 린치 종후군의 일부분인 암상에 대한 선별검사 도구입니다. 이 내용을 귀하의 의료진과 공유하여 귀하의 암 위험을 판정하는데 도움이 되도록 하십시오.

| | 대상 및 진단군 | 자신 | 가족 | 진단시 연령 |
|---|---|---|---|---|

예 아니오 50세 이전에 자궁(자궁내막) 암

예 아니오 50세 이전에 대장암

예 아니오 동일인 또는 부계 또는 모계 쪽에서2건 이상
의 린치 종후군*

*다음을 포함한 린치 종후군: 대장/직장, 자궁/자궁내막, 난소, 위, 신장/요도, 담관, 수장, 췌장, 뇌,
그리고 피지 선종/종양

| | 유방 및 난소 암 | 자신 | 가족 | 진단시 이명 |
|---|---|---|---|---|

예 아니오 50세 이전에 유방암

예 아니오 난소암

예 아니오 동일인 또는 부계 또는 모계 중에서 2건의
유방성(무관한) 유방암*

예 아니오 남성 유방암

예 아니오 삼중 음성 유방암*
（병리검사상 ER-, PR-, HER2-）

예 아니오 모든 연령대에서 3건 이상의 HBOC 관련 암*

예 아니오 모든 연령대에서 HBOC 관련 암의 아시케나지
유대인(Ashkenazi Jewish) 조사 및 치와
또는 기족들이*

*HBOC 관련 암은 유방(DIS 포함) 난소, 췌장, 그리고 공격성 전립선 암을 포함합니다.
*1가족은 부계 및 모계의 1, 2, 3차 친척 관계/친족을 포함합니다.

예 아니오 귀하나 귀하의 기족 중에 유전성 암 위험에 대한 검사를 받은 사람이 있습니까?

환자 서명   11/16/12   날짜

실루 검사되을
□ 추가예정 위함 평가 및/또는 유전자 검사 대상서: ○ 린치 ○ HBOC
□ 검토를 위해 환자에게 의뢰 또 표
□ 추적관찰 내용을 안함

의사 서명   날짜

□ 환자에게 유전자 및 검사 권유
○ 수수 네
    ○ ○ ○ ○
    ○

진단 요청자 서명

MYRIAD®
PCRABS-13

000005

```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK



-----------------------------X
                             :
MINHYE PARK,                 :
                             :    20-CV-2636 (PKC)(LB)
             Plaintiff,      :
                             :    August 11, 2021
                             :
             V.              :    Brooklyn, New York
                             :
DAVID DENNIS KIM,            :
                             :
             Defendant.      :
-----------------------------X


       TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
             BEFORE THE HONORABLE LOIS BLOOM
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JAE SOOG LEE, ESQ.
                            Jsl Law Offices, P.C.
                            626 Rxr Plaza
                            Uniondale, NY 11358

For the Defendant:          HAYLEY B. NEWMAN, ESQ.
                            Heidell, Pittoni, Murphy &
                            Bach, LLP
                            99 Park Avenue
                            New York, NY 10016



Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            Aria@leinen.net



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE CLERK:  Civil cause for telephone status

2     conference, docket number 20-CV-2636, Park v. Kim.

3          Will the parties please state your names for

4     the record.

5          MS. LEE:  J.S. Lee from JSL Law Offices for

6     plaintiff.

7          MS. NEWMAN:  Hayley Newman from Heidell,

8     Pittoni, Murphy & Bach for defendant Dr. Kim.

9          THE CLERK:  The Honorable Lois Bloom

10    presiding.

11         THE COURT:  Good morning, Ms. Lee and Ms.

12    Newman.  This is a telephone conference in plaintiff's

13    medical malpractice case, in which he alleges that

14    defendant, who is a doctor, committed malpractice by

15    failing to remove her fetus during a medical procedure.

16    I last spoke to the parties on December 22nd, 2020 and

17    at that time, I ordered the parties to complete all

18    discovery by June 15th and that any party seeking to

19    file a dispositive motion should request a pre-motion

20    conference by June 29th.

21         On June 2nd, I granted the parties an

22    extension of time to complete all discovery by

23    September 30th and that any request for a pre-motion

24    conference should be made to Judge Chen in accordance

25    with her rules by October 15th.  After I granted that

```
 1   extension request, on July 16th, I received a motion to
 2   compel, and the motion to compel is by defendants to
 3   compel plaintiff to produce documents and responses.
 4   I've now received plaintiff's objections to that, and I
 5   have to say this case is a mess.  I really don't
 6   understand what is going on here.
 7             Ms. Lee, has there been any progress on
 8   discovery since the motion to compel was filed?
 9             MS. LEE:  Yes, your Honor.  For plaintiff
10   (ui) all authorizations on February 9th, 2021, and
11   defendant asked again so we provided twice.  Now,
12   defendant asks the plaintiff to provide the insurance
13   records of her whole life but we already --
14             THE COURT:  Ms. Lee, did you hear what my
15   question was?  My question was, since the motion was
16   filed, has there been any progress.  I did not ask you
17   what happened before they filed the motion to compel,
18   I'm asking since they filed it, has there been any
19   progress?
20             MS. LEE:  Your Honor, because the plaintiff
21   did whatever defendant asked, so at this moment, I
22   don't believe we need to provide more.  That's the
23   plaintiff's position, your Honor.
24             THE COURT:  So, Ms. Newman, has there been
25   any progress on discovery since filing the motion to
```

1   compel?

2         MS. NEWMAN:  None.

3         THE COURT:  They're saying they filed --

4   that they gave you authorizations back in February.

5         MS. NEWMAN:  Correct.

6         THE COURT:  What is going on with the

7   documents that you're trying to get from plaintiff's

8   counsel?

9         MS. NEWMAN:  Well, unfortunately, the

10  providers are all located in South Korea, and our firm

11  generally works with third parties that exclusively

12  process authorizations on our behalf to try to get

13  these records.  And the third party advised my

14  paralegal that no one is returning their calls

15  specifically at the collateral source provider in South

16  Korea.  I then had my own paralegal try to reach out to

17  them and she was unsuccessful, too.  We just don't know

18  how to obtain these records beyond sending letters and

19  making phone calls, and those efforts have been ongoing

20  for over a year and have been unproductive,

21  unfortunately.  I don't --

22        THE COURT:  Let me be straight with you, Ms.

23  Lee.  How are you going to prove that this medical

24  procedure did not remove the fetus if you don't get the

25  medical records from Korea for your client?

5

```
 1              MS. LEE:  Yes, your Honor.  We have already
 2   proved by defendant's medical records December 13ᵗʰ,
 3   2017.  Defendant clearly noted the fetus that present
 4   alive (sic).  Then also, after that --
 5              THE COURT:  Ms. Lee, Ms. Lee.
 6              MS. LEE:  Yes.
 7              THE COURT:  You are objecting to getting any
 8   of the medical records from Korea.
 9              MS. LEE:  No, your Honor.
10              THE COURT:  You have to prove that the
11   doctor here failed to remove the fetus as expected.
12              MS. LEE:  Yes, your Honor.  So we prove and
13   provided the two (ui) in South Korea.  They are
14   medical --
15              THE COURT:  The two what?  I can't --
16              MS. LEE:  Two physicians, their medical
17   records.  We provided all medical records to the
18   defendant.  Those medical records revealed the fetus
19   was alive after the surgery.  So we have three medical
20   -- three doctors to prove the fetus was alive after
21   surgery.
22              THE COURT:  Again, I'm looking at the
23   records that were attached to document 19.  Is that
24   what you're thinking proves that your client --
25              MS. LEE:  Your Honor, the plaintiff filed
```

```
 1   the letter motion that all documentation provided
 2   there.  That is all medical records of defendant Dr.
 3   Kim and two doctors from South Korea, which is (ui).
 4   We (ui) medical documents (ui).
 5              THE COURT:  Ms. Newman?
 6              MS. NEWMAN:  Yes, your Honor.  She did
 7   produce records from these two providers.  This was
 8   discussed back at the conference in December because
 9   the records should produced did not include an actual
10   procedure note of a second abortion.  This is something
11   we talked about at the last conference, you know.
12   We're not contesting that she didn't produce these
13   records, we're just saying that we need more.  First of
14   all, there's an informed consent issue, which is why we
15   wanted the collateral source records in part, because
16   this patient had two prior abortions and her knowledge
17   of the procedure before the abortion with Dr. Kim is
18   obviously relevant to what she knew going into the
19   procedure.
20              Also, what types of abortions were performed
21   before Dr. Kim is medical relevant, and our expert has
22   asked us to try and get those records as part of her
23   review.  I don't even know what authorizations to
24   demand because we don't know where those procedures
25   were performed or who performed them.
```

7

```
 1                MS. LEE:  Your Honor, if defendants now are
 2   asking to provide a (ui) insurance record of
 3   plaintiff's whole life.  (Ui) two abortions --
 4                THE COURT:  Again, Ms. Lee.
 5                MS. LEE:  Yes.
 6                THE COURT:  Your client is the one bringing
 7   the case.
 8                MS. LEE:  Yes.
 9                THE COURT:  Your client has had two prior
10   procedures that may have bearing on what happened in
11   this case.
12                MS. LEE:  Your Honor --
13                THE COURT:  So talking about -- excuse me.
14   Do not talk over me.
15                MS. LEE:  Yes.
16                THE COURT:  Talking about that you've given
17   her everything, you have not given her everything.  You
18   have not given her the records that she did talk to the
19   Court about back in December.  And in December, we
20   talked about needing those records and if you're not
21   going to help provide those records, then again, your
22   client is going to have a problem maintaining this
23   malpractice case.
24                In December, December 22nd, I held a
25   conference.  Defense counsel stated they had only
```

1   gotten some of the records and they had outlined what

2   has still to be provided.  Plaintiff says they

3   responded to everything, and I ruled that defendant was

4   entitled to get those medical records and that the

5   prior abortion was something that they were able to

6   discover records about.  Again, the documents regarding

7   the second abortion that your client is saying she was

8   caused to suffer in Korea, she needs to get those

9   records.  There is nothing in the records that have

10  already been produced that says that she had an

11  abortion in Korea, and it's not acceptable -- I said

12  this to you before -- to say that your client doesn't

13  want to turn over the records.  This is her case and if

14  she's not going to turn over these records, then you're

15  not going to be able to prove a malpractice claim

16  against this doctor in this Court.

17              MS. LEE:  Your Honor, may I interrupt you?

18              THE COURT:  What do you want to say?

19              MS. LEE:  The second abortion was, after Dr.

20  Kim failed to remove the fetus, then plaintiff went to

21  South Korea and she got second abortion.  That record

22  plaintiff provided to defendant.  Even after that,

23  defense counsel asked everything.  So we provided again

24  the ultrasound DVD, we provided everything.

25              THE COURT:  Again, Ms. Lee, you did not

1   provide everything.  Saying that you provided

2   everything -- again, that you provided an ultrasound

3   but they asked specifically --

4            Ms. Newman, what is the name of the

5   procedure sheet that you needed?

6            MS. NEWMAN:  It would be an operative report

7   or a procedure report that describes the technique and

8   what was done, whether it was a dilation and curettage,

9   a dilation and evacuation, the steps to prepare the

10  patient, what tools or instruments were used, the

11  outcome of the procedure.  There might be anesthesia

12  notes because generally, this procedure is performed

13  under anesthesia.  So I'm really looking for the

14  equivalent of an operative report and any other medical

15  records that were maintained at that time by the

16  anesthesiologist.

17           THE COURT:  Ms. Newman --

18           MS. LEE:  Your Honor --

19           THE COURT:  Excuse me, Ms. Lee.

20           MS. LEE:  Yes.

21           THE COURT:  Ms. Lee is saying that she gave

22  you the ultrasound.  Can you place on the record what

23  she has given you and why that is or is not what you've

24  been asking for?

25           MS. NEWMAN:  She gave us a copy of records

1  from two subsequent providers in Korea.  There are

2  pictures, ultrasound pictures included in those

3  records.  There is no note or second procedure note of

4  a second abortion, which was discussed in December.

5  Then after that conference, at some point in time, I

6  received a one-page piece of paper in Korean, which I

7  then paid to have a Korean translator, a certified

8  Korean translator translate into English, an unsigned

9  document that says that name of the patient and that a

10  dilation and curettage was performed.  It's like a one-

11  sentence piece of paper that could have honestly been

12  written by anyone.  It's not an operative report, it's

13  not a medical record.

14           MS. LEE:  Your Honor, we (ui) the doctor as

15  well to doctors in South Korea.  Whatever they have is

16  all records, anything they provided to us, and we

17  forwarded it to defendant.  I want to make sure.  So

18  now the defendant want to have all medical records

19  after Dr. Kim's failure or ten years before the

20  plaintiff's abortion.  (Ui) 15 years, when she was a

21  teenager.  That is the only one.  If the defendant

22  asking the plaintiff's abortion for teenager from now

23  for 15 years ago, the plaintiff even did not remember

24  the place or the name of the clinic because at the

25  time, her boyfriend brought her to a clinic.  Nobody

```
1    knows -- she cannot remember right now, then how could
2    (sic)?  The second thing is, if Dr. Kim -- the prior
3    abortion ten years ago, it is important and necessary
4    to her abortion surgery, Dr. Kim should ask her before
5    surgery.  When was it, where was it?
6              THE COURT:  Ms. Lee, Ms. Lee, Ms. Lee.
7              MS. LEE:  Yes.
8              THE COURT:  Your argument that if it was
9    important for Dr. Park to know about prior abortions,
10   he should have asked before he performed this
11   procedure, that is not a winning argument when you're
12   bringing a federal malpractice lawsuit, okay?
13             MS. LEE:  Your Honor, the doctor said --
14             THE COURT:  Ms. Lee, Ms. Lee.
15             MS. LEE:  Yes.
16             THE COURT:  If you keep interrupting me, I
17   am going to not accept you to appear by phone.  It is
18   not okay to keep interrupting me.  Do you understand?
19             MS. LEE:  Yes.
20             THE COURT:  So your client has decided to
21   bring this lawsuit.  I understand that you are saying
22   she doesn't remember the name of the prior abortion
23   provider, so we can't get those records, which I
24   imagine is why defendant's counsel is asking for the
25   insurance records, because perhaps those insurance
```

```
 1   records would show who the prior doctors were.

 2              Is that the reason why you're asking for the

 3   collateral source information from her insurer, Ms.

 4   Newman?

 5              MS. NEWMAN:  Correct.

 6              THE COURT:  So, Ms. Lee, when you bring a

 7   medical case against a doctor, yes, there are many

 8   questions that are going to be asked of the plaintiff.

 9   And that the plaintiff lives in Korea does not change

10   what the questions that need to be answered are.  So if

11   she's not able to remember who gave her these prior

12   procedures, they should be able to get information from

13   her insurer.

14              It doesn't mean, Ms. Newman, that that will

15   necessarily be reflected there, and I would like to

16   limit the temporal scope of what you're asking for.

17              MS. NEWMAN:  Okay, I understand that.

18              MS. LEE:  Your Honor?

19              MS. NEWMAN:  I can make a diligent effort.

20   She explained the reasoning as to why she doesn't

21   remember the name and location of one of the two

22   abortions but Dr. Kim's records indicate she reported

23   she had two.  I don't know when the other one happened.

24   Two prior.

25              MS. LEE:  Your Honor, if I may interrupt
```

1  here.  Defense counsel keeps saying two abortions,

2  prior two abortions.  No, that's not correct.  It's

3  only one, and defense counsel asked -- demanded her

4  medical records.  That is a violation of plaintiff's

5  privacy.

6          THE COURT:  No, it is not.  It is not.  Ms.

7  Lee, that argument is a losing argument.  Your client

8  is bringing this lawsuit.  So to the extent that she

9  has chosen to bring this lawsuit, it is a losing

10  argument for her to claim that it's a violation of her

11  privacy.  She is suing a doctor, saying the doctor

12  committed malpractice.  She must turn over these

13  records.  If she does not want to turn over these

14  records, then she should not bring the lawsuit.

15          MS. LEE:  Your Honor, as we said, she

16  provided all medical records, everything.

17          THE COURT:  No, she did not.  She did not.

18          MS. LEE:  Your Honor, the only --

19          THE COURT:  She did not provide all the

20  medical records.  There are ultrasound records provided

21  but there is no operative report talking about the

22  procedure.

23          MS. LEE:  That does not have -- the

24  plaintiff has not had that.  Whatever the doctor

25  provided -- the plaintiff provided authorization to

```
 1   defendant.  Then the defendant can get it.
 2           THE COURT:  Let me raise another issue.  Let
 3   me raise another issue.  There are three open motions.
 4   There's the motion to compel and there is also your
 5   request, Ms. Lee, for a settlement conference.
 6           MS. LEE:  Yes.
 7           THE COURT:  Have you tried to talk to Ms.
 8   Newman about settling the case?
 9           MS. LEE:  Yes.  We sent the settlement
10   demand on 2/20/2021.  However, defense counsel has
11   never responded to that settlement demand at all.
12           THE COURT:  Ms. Newman?
13           MS. LEE:  Then after that --
14           THE COURT:  Ms. Newman?
15           MS. NEWMAN:  That's untrue, your Honor.  I
16   have an email responding to her settlement demand,
17   which by the way never included an amount, just a
18   demand that we attend a settlement conference, to which
19   the response was, we still need this discovery from
20   you.  We need clarification of the interrogatory
21   responses, the medical records, we need to corroborate
22   all of the claims and damages alleged in the complaint.
23   I mean, we are focusing on the most important records
24   here, which are the subsequent abortion records and the
25   prior records.
```

```
 1          Overall, she's claiming that she had other
 2   injuries, which there's no proof of.  I've received
 3   nothing to show that she had ongoing complaints of pain
 4   and bleeding or that she suffered lost earnings, which
 5   are claimed in the case.  So yes, I did respond to that
 6   email and said, we don't have the discovery we need to
 7   even talk about that at this point in time.
 8          THE COURT:  Let me say, Ms. Lee, you are not
 9   helping your client because, again, the defendants made
10   the issue known to me back in December.  Again, they're
11   making the issue known to me now.  They're saying that
12   you did not adequately respond to the interrogatories
13   or to the demand for production of documents.  So I
14   have to say to you I don't understand what it is you
15   think is going to happen here but, Ms. Lee, I'm
16   granting the defendant's motion to compel the
17   discovery.
18          I'm going to give you a chance -- because I
19   do accept that certain of these records from Korea may
20   not be known to plaintiff.  I accept that if she had an
21   abortion many years ago, she may not know the
22   providers.  That being said, if there is information
23   from her insurer, she must turn that over.  Ms. Lee --
24          MS. LEE:  Yes, your Honor.
25          THE COURT:  The Court is ordering you to
```

**A-80**

1    turn over that information, and I will limit it so that

2    it's not for her entire life.  But she says that these

3    events happened in 2017, so I'll say that it has to go

4    back to 2010.  2010.

5              MS. LEE:  Yes.

6              THE COURT:  So she must turn over the

7    information about her insurer, and the defendants can

8    try to get the information from the insurer.  Also, if

9    there is a claim for lost earnings, she must support

10   those claims.  And last, it says that plaintiff has not

11   provided any experts.  In a malpractice case, you need

12   expert discovery.  There is no way that you could prove

13   malpractice unless you have an expert.

14             So I am going to give you until the deadline

15   that has been extended to turn over these things.  So

16   you have now until September 30th to turn over any lost

17   earnings, so any records that support claims for lost

18   earnings, who your expert is going to be and any expert

19   report, and any collateral source information going

20   back to 2010.  So that request for a motion to compel

21   is granted, and your motion for a settlement conference

22   is denied without prejudice.  You need to speak to Ms.

23   Newman about precise numbers, about what your client's

24   claims are.  She cannot have a settlement conference

25   without there being demands that have been talked

1    about.  I'm not going to schedule a conference unless

2    you and Ms. Newman start talking between your clients

3    and yourselves.

4              MS. LEE:  Your Honor, I want to ask

5    defendant, why didn't you respond to plaintiff's demand

6    for admissions and interrogatories?  Your Honor --

7              THE COURT:  Again, I am not orally accepting

8    a motion at this time.  Ms. Lee, it is not proper in a

9    case where you were able to respond and you did not say

10   anything in your response regarding missing discovery.

11   Again, I am not going to accept that you are raising

12   that now.  I'm telling you that you have -- and this

13   all has to be done -- so September 30th is the deadline

14   to complete all discovery so I'll give you thirty days

15   from today to get everything that I've discussed with

16   you.

17             So by September 10th, 9/10/21, plaintiff must

18   produce the information that the Court has specified,

19   anything to support her claim for lost earnings,

20   anything regarding expert discovery, and her

21   authorization regarding collateral source information

22   from her insurers with the names of the insurers, all

23   of that by September 10th.  And I am warning you that

24   your client can be subject to sanctions, which could be

25   as severe as dismissal of the case, if she fails to

1    comply.

2              MS. LEE:  I understand, your Honor.  Your

3    Honor, plaintiff provided all authorizations.  Then

4    what else should plaintiff provide, copies of the

5    medical records?  That's defendant's responsibility,

6    not us.  Plaintiff only provides authorizations,

7    including insurance records.

8              THE COURT:  Ms. Lee, Ms. Lee.

9              MS. LEE:  Yes.

10             THE COURT:  You're making the same argument

11   that you've already made.  They have said that they

12   never got an operative report for the abortion that

13   you're saying she was required to have because Dr. Kim

14   did not properly perform the abortion.  They say they

15   got a one-page sheet that could have been written by

16   anybody, in Korean, that it was not an operative

17   report.

18             Did it have any letterhead or name of a

19   physician on it, Ms. Newman?

20             MS. NEWMAN:  I can't honestly speak to

21   whether or not there was letterhead or the name of a

22   physician because the version I received from the

23   translator just has different boxes of medical

24   categories, most of which are left blank.  I honestly

25   don't know because I don't know if that would have been

1  translated, if they translate letterhead or not.  I

2  don't know.

3           THE COURT:  Well, you're going to need to

4  confer with Ms. Lee on that.

5           MS. NEWMAN:  Okay.

6           THE COURT:  Again, Ms. Newman, I've granted

7  your motion to compel.  I've given them until September

8  10th.  The deadline for discovery has already been

9  extended to September 30th.  Have you conducted a

10 deposition of the plaintiff?

11          MS. NEWMAN:  No, your Honor, because I was

12 hoping to have these records before deposing her.

13          THE COURT:  But it looks like that might not

14 be possible, so you need to move forward if you're

15 going to plan to depose plaintiff.

16          MS. NEWMAN:  Okay.

17          THE COURT:  Because getting records from an

18 insurer in Korea by September seems somewhat unlikely,

19 but you can certainly ask the questions that you need

20 to ask.  If she doesn't remember things that go back

21 ten years, that might be reasonable, but if she doesn't

22 remember things that happened around the time that

23 she's saying that Dr. Kim failed to live up to his

24 obligations, that's something that would be relevant in

25 any transcript.

```
 1              MS. NEWMAN:  Okay.

 2              THE COURT:  That's the same for you, Ms.

 3    Lee.  If you're intending to depose Dr. Kim, you'd

 4    better get that scheduled.

 5              MS. LEE:  Yes, your Honor.  Should the

 6    plaintiff send a letter motion to compel defendants?

 7              THE COURT:  No, absolutely not.

 8              MS. LEE:  Your Honor --

 9              THE COURT:  Again, Ms. Lee, you seem to

10    think that this is your time to complain about what

11    defendants have failed to do, and yet I had conferences

12    with you going back to December.  That was their

13    conference to say that they didn't get what they

14    needed.  I already extended the deadline for the

15    parties to complete discovery.  Still, you never said

16    anything about what you didn't get.  So no, now is your

17    time to schedule the deposition.  If you intend to

18    depose Dr. Kim, now is the time to schedule that with

19    Ms. Newman.  Do you understand me?

20              MS. LEE:  Yes, your Honor.  We demanded the

21    admissions and interrogatories back February 9, 2021.

22    But defense counsel --

23              THE COURT:  Ms. Lee, Ms. Lee, did you hear

24    what I said, that if you plan to depose the doctor who

25    is the defendant, you need to arrange for that now.  It
```

1    should be conducted remotely.  Same thing for your

2    client who is in Korea, it should be done remotely.

3    And you need to make that arrangement so you complete

4    those depositions by September 30th.  Do you understand

5    me, Ms. Lee?

6            MS. LEE:  Yes, your Honor.  Then one

7    question, your Honor.  Can we depose the defendant

8    first?

9            THE COURT:  There is no firstness in federal

10   court.  I am not going to govern who deposes who first.

11   I am going to tell you, Ms. Lee, that you need to make

12   this case move.  I am not going to extend discovery and

13   your client must make herself available for deposition

14   by defendant's counsel in advance of the deadline.  Do

15   you understand?

16           MS. LEE:  Yes, your Honor.

17           THE COURT:  Okay.

18           MS. NEWMAN:  I do believe we did talk about

19   priority, though, when the case was filed.  I

20   understand that that doesn't exist in federal court but

21   I'm already agreeing to take a deposition with very

22   limited records.  I do think I'm entitled to take a

23   deposition of her client, who has produced very little

24   documentary evidence in support of the claims, before

25   my client, who has patiently waited for the resolution

1   of this case since it was filed.

2          THE COURT:  Ms. Newman, get your notice to

3   Ms. Lee.  Again, I don't expect to hear again from the

4   parties saying that they can't get this scheduled.

5          It is something difficult because one person

6   is in Korea, but I am not letting you hold this up, Ms.

7   Lee.  They have the right to depose your client.  Even

8   without all the records, that should be something that

9   happens.  That way, we can at least lock her into

10   whatever the claim is about.  If you don't produce lost

11   earnings records, then there's not going to be any

12   claim for lost earnings.  Do you understand me, Ms.

13   Lee?

14          MS. LEE:  Yes, your Honor.  However, the New

15   York Workers Compensation Act -- in that case, they

16   applied the minimum --

17          THE COURT:  I'm sorry, Ms. Lee.  Workers

18   compensation won't apply for this case.

19          MS. LEE:  The minimum rate would apply.

20          THE COURT:  Ms. Lee, Ms. Lee, workers

21   compensation won't apply to this case.  If you don't

22   produce records or lost earnings and there's no

23   testimony that supports that she was employed and lost

24   earnings because of Dr. Kim, you will not be able to

25   rely on workers comp.  Do you understand me?

1          MS. LEE:  Then what -- I understand, your

2    Honor.  However, then the plaintiff can submit her

3    affidavit saying she wasn't able to work due to the

4    failure of the abortion.

5          THE COURT:  Let her turn over records and

6    let her testimony say where she worked and how much she

7    earned and how long she was out of work because of

8    this.  If there isn't documents or testimony to support

9    it, there is no lost earning claim.

10          Anything else that needs to be addressed,

11   Ms. Lee?  I've granted defendant's motion to compel.

12   I've given you until September 10th to turn over the

13   records.  They will be specified in my order.  Is there

14   anything else that needs to be addressed?

15          Hearing nothing, is there anything else, Ms.

16   Newman, that needs to be addressed?

17          MS. NEWMAN:  No, thank you.  I thought your

18   question was to Ms. Lee.

19          THE COURT:  I did but she didn't answer my

20   question.

21          MS. NEWMAN:  Nothing on our end, your Honor,

22   thank you.

23          THE COURT:  Ms. Lee, last chance.  Anything

24   else you want to raise before we get off the line?

25          MS. LEE:  Yes, your Honor, just to specify

**A-88**

1    -- specify up to 2010, then it's abortion records only.

2              THE COURT:  No, it was the insurance records

3    to 2010.

4              MS. LEE:  Yes, insurance records.  Your

5    Honor, that means plaintiff provides authorization or

6    (ui) the insurance record?

7              THE COURT:  Again, if she has insurance

8    records going back to 2010, she should produce them.

9              MS. LEE:  She doesn't have it.  That's why

10   she provided --

11             THE COURT:  Then she has to sign an

12   authorization for her insurance records to be given to

13   Ms. Newman.

14             MS. LEE:  Yes, she did.

15             THE COURT:  Ms. Lee, I don't think you're

16   understanding the Court.  I really don't think you're

17   understanding because --

18             MS. LEE:  Your Honor --

19             THE COURT:  -- your client brought this case

20   and you just keep repeating that she's given

21   everything.

22             MS. LEE:  No, your Honor --

23             THE COURT:  I am granting their motion to

24   compel, which will require you to turn over records and

25   respond to their interrogatories by September 10th.  You

25

1    should complete all depositions in this case by

2    September 30th.

3            With that, we are adjourned.  Thank you.

4                    * * * * * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

18      I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

ELIZABETH BARRON                    August 20, 2021

# EXPERT REPORT

# CASE: PARK V. KIM

Submitted by:

**Dr. John M. Garofalo, MD, FACOG**

## Reviewed Documents

1. EXHIBIT B_ D med records, p.31
2. EXHIBIT C_ med rec, MIRAE
3. EXHIBIT D_ med rec ROSEMOM
4. Medical Records_ Queens Surgical Care Center (Defendant Dr. Kim)_11.27, 2018

## Clinical Summary

Plaintiff visited Defendant for the first time on November 16, 2017 as her symptoms indicated that she was likely pregnant. Defendant told Plaintiff that it's too early to determine whether Plaintiff was pregnant or not, and asked Plaintiff to come later. During her second visit on November 21, 2017, Defendant confirmed that the plaintiff was indeed pregnant and performed a suction curettage on November 27, 2017. At the time of the procedure, the defendant failed to examine the tissue obtained from the suction curettage to determine the volume of tissue removed or the presence of chorionic villi. Approximately one week after the suction curettage, a pathology report indicated that there was no evidence of chorionic villi or embryonic tissue in the sample.

On December 13, 2017, Defendant Dr. Kim performed an ultrasound examination that revealed an eight week viable intrauterine pregnancy. Dr. Kim then admitted his failure to terminate plaintiff's pregnancy. On December 19, 2017,  two physicians in South Korea examined the plaintiff, including the use of ultrasound test, and confirmed a viable intrauterine pregnancy. on December 27, 2017, a repeat suction curettage was performed.

The past history of prior first trimester abortions approximately 10 years ago was appreciated.

## Background

Suction curettage  is a safe and efficacious procedure for first trimester termination of pregnancy. The failure rate of the procedure is inversely related to the gestational age at the time the procedure is performed. At five weeks since the last menstrual period (LMP) the failure rate is 1/100. This decreases to 1/500 at 7 weeks since LMP.  Following suction curettage, it is incumbent upon the surgeon to evaluate the tissue removed from the uterus in order to ascertain the completeness of the procedure so as to rule out persistent pregnancy and a ectopic pregnancy. The standard of care requires that the tissue is examined by "floating" and backlighting the tissue. This standard was clearly documented in the National Abortion Federation in 2015[1] as follows:

> Standard 13.1. Termination of pregnancy must be confirmed prior to the woman leaving the facility or further evaluation must be initiated.
> Recommendation 13.1.1. Evacuated uterine contents should be examined before the woman leaves the facility.
> Recommendation 13.1.2. In first-trimester terminations, flotation of tissue

[1] Deutsch FE. 66727 NAF S1-National Abortion National Abortion Federation Clinical Policy Guidelines.

Page 2

should be used to identify products of conception, including gestational sac.
Option 13.1.2.1. Backlighting of tissue may be useful.
Option 13.1.2.2. Sending the evacuated uterine contents for additional
pathological examination is not required.
Standard 13.2. When insufficient tissue or incomplete products of conception are
obtained, the patient must be reevaluated.
Recommendation 13.2.1. Re-aspiration, serial quantitative Hcg, and/or
ultrasonographic examination should be
considered.
Recommendation 13.2.2. In the first trimester, ectopic pregnancy should be
considered.

## Expert Opinion

It is my opinion that the defendant deviated from the standard of care as follows:

1. The defendant failed to inform the plaintiff of the differential risk of failed suction curettage
   from 5 weeks to 7 weeks.   If she had been aware of the increased risk of failure, she
   would likely have deferred the procedure for 1-2 weeks.
2. The defendant failed to examine the aspirated tissue prior to the plaintiff's departure from
   the facility. If the tissue had been examined, the patient could have been offered an repeat
   suction curettage at that time or additional testing to rule out persistent pregnancy.
3. The defendant failed to inform the plaintiff of the pathology report in a timely manner. If
   she had been aware of the absence of chorionic villi, she would have had the option to
   undergo a more prompt suction curettage.

The history of prior abortion was not a risk factor for failed termination of pregnancy.

## Expert Qualifications

*In regarding my expertise to opine in this case, I have been actively involved providing
surgical termination of pregnancy in both the first and second trimester for over 40 years. I
am a board certified Obstetrician/Gynecologist. I am licensed to practice in Connecticut, and
have recently been the Director of Minimally Invasive Gynecology, the Associate Director of
Gynecology and an Attending Physician in Obstetrics and Gynecology at Norwalk Hospital, in
Norwalk, Connecticut. I have been appointed as an assistant clinical professor of Obstetrics
and Gynecology and Reproductive Sciences at Larner College of Medicine, University of
Vermont and Assistant Clinical Professor of Obstetrics and Gynecology at Ross University. I
practiced OB/GYN for more than 38 years until the time of my retirement in December 2020. I
am familiar with the applicable standards of care for medical and surgical termination of
pregnancy as well as the management of the associated potential complications.*

**Concluding Statements**

*I believe within a reasonable degree of medical certainty that the care provided to Dr. Kim was below the accepted standard of care for the management of first trimester termination of pregnancy. This opinion is limited by the limited clinical records available for my review. I reserve the right to amend to this report in the event any additional materials become available.*

Respectfully submitted by,

Dr. John M. Garofalo, M.D. FACOG         9/12/2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MINHYE PARK,

                         Plaintiff,              Case No. 1:20-cv-02636

              -against-


DAVID DENNIS KIM, M.D.
                    Defendants
--------------------------------------------------------------X

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Now comes the Plaintiff MINHYE PARK, by and through his attorneys of record herein
and files this Motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil
Procedure, and would show unto the Court the following:


1.      This lawsuit has not been set for trial yet.  The Defendant has scheduled the
deposition of the Plaintiff for September 20, 2021, at 10:00AM.   Rule 30(b)(1) requires that a
deposition notice identify the time and place of the deposition. In a remote deposition, **this
location is deemed to be the "place where the deponent answers the questions" under Rule
30(b)(4).**


2.      The Plaintiff requests the Court enter a protective order that the deposition of
Plaintiff not be taken on September 20, 2021, as scheduled. The reason for the Motion for
Protective Order is that the Plaintiff is a resident of South Korea and is ready to attend the
deposition on September 20, 2021.

However, due to the time difference of thirteen (13) hours between South Korea and New York, Plaintiff suggested, on September 17, 202, to the Defendant that the Defendant change the starting time to 08:00 AM, New York Time (21:00 PM South Korea Time). Plaintiff also requested that the deposition be finished at midnight South Korean Time. Alternatively, the Plaintiff suggested starting at 20:00 PM New York Time (09:00 AM South Korea Time) if Defendant wants to continue seven (7) hours a day.  Defendant, however, insists that the deposition continue for seven (7) hours a day in New York Time and repeatedly rejected all Plaintiff's proposals for a reasonable time for the deposition.  The insistence of the Defendant to depose as scheduled is only designed to harass Plaintiff physically and psychologically. This is shown by the fact the Defendant is insisting that the Plaintiff attend the deposition OVERNIGHT in South Korea. This is absurd.

Only two days remain before the scheduled date of Plaintiff's deposition, and yet the parties have not agreed to the starting time for the deposition.

3.     The Defendant should not be allowed to treat Plaintiff inhumanely and tortuously by performing an overnight deposition of Plaintiff.  Defendant would suffer no prejudice by a simple, short delay of the Plaintiff's deposition. Therefore, the Plaintiff requests the Court enter a protective order that the deposition of Plaintiff not be taken until such time as the Defendant and Plaintiff have adequately and fairly set up the deposition time that is appropriate to all parties.

4.     Additionally, Plaintiff seeks sanctions against Defendant and his counsel, Ms. Newman, pursuant to Rule 11 and attorneys' fees pursuant to 15 U.S.C § 1692k(a)(3), Fed. R. Civ. P. Rule 54(d), and 28 U.S.C. § 1927 because Defendants filed this motion without any basis

in fact or in law.  Ms. Newman filed above in bad faith and for the purpose of harassing Plaintiff.

Defendant has defamed and humiliated the Plaintiff by sending a false letter to the court that

stated that Plaintiff came to New York to obtain an abortion.  *See* Defendant's letter filed on July

17, 2021.  Plaintiff was travelling in the United State before she saw the Defendant.   Plaintiff

visited Defendant for the first time on November 16, 2017 as her symptoms indicated that she

was likely pregnant. Defendant told Plaintiff that it's too early to determine whether Plaintiff was

pregnant or not, and asked Plaintiff to come later. During her second visit on November 21,

2017, Defendant confirmed that the plaintiff was indeed pregnant. It's impossible for Plaintiff to

discover her pregnancy before Plaintiff came to New York. Ms. Newman also untruthfully stated

in her motion to compel, " Prior to treatment at issue, Plaintiff underwent two abortions in South

Korea." *See* Def motion filed on July 29, 2021, doc #17-16, page 165, para 3.   Obviously

defendant's counsel's above statements are false and sanctions against  Ms. Newman's repeated

bad faiths are warranted.

        **WHEREFORE**, Plaintiff, MINHYE PARK, moves the Court for a Protective Order that

prevents the deposition of Plaintiff from being taken until such time as the Plaintiff and the

Defendant can mutually agree to a reasonable time for said deposition.


Dated: Uniondale, New York
        September 18, 2021


                        Respectfully submitted,


                        */s/ Jae s. Lee*
                        Jae S. Lee, Esq
                        JSL LAW OFFICES, P.C.
                        *Attorneys for Plaintiff*
                        626 RXR PLAZA
                        UNIONDALE, NY 11556
                        (718) 461-8000

CERTIFICATE OF SERVICE

I, Jae S. Lee, do hereby certify that I have this day caused to be sent by Email and via United States mail, first class postage prepaid, a true and correct copy of the above and foregoing pleading to the following counsel for Defendant:

Heidell, Pittoni, Murphy & Bach, LLP
Attorneys for Defendant
99 Park Avenue 7th Fl
New York, New York 10016
212-286-8585
hnewman@hpmb.com

_____*/s/ Jae s. Lee*_____
Jae S. Lee

ATTORNEY FOR PLAINTIFF

THIS, the 18th day of  September  2021.

# JSL Law Offices, P.C.

626 RXR PLAZA, Uniondale, NY 1156
Tel:  (718) 461-8000
Fax: (866) 449-8003

_____

September 22, 2021

*VIA ECF*
Honorable Pamela Chen
United States District Court
Eastern District Of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: 1:20-cv-02636 (Minhye Park v. David Kim, M.D.)**

Dear Judge Chen:

Our office represents Plaintiff MINHYE PARK in the above- referenced action for medical malpractice.  Pursuant to Rule 11, Rule 11(b) of Federal Rules of Civil Procedure, Plaintiff seeks sanctions against Defendant and his counsels and attorneys' fees pursuant to 15 U.S.C § 1692k(a)(3), Fed. R. Civ. P. Rule 54(d), and 28 U.S.C. § 1927 because Defendant filed a pleading, written motion or other papers to the court without any basis in fact or in law. It was filed in bad faith and for the purpose of harassing Plaintiff.

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is: (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b); *see*

also *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D 363, 368 (E.D.N.Y 2013); 15 U.S.C § 1692k (a) (3), Fed. R. Civ. P. Rule 54(d); and 28 U.S.C. § 1927

Defendant's counsel **Ms. Newman** untruthfully stated that Plaintiff came to New York only to obtain the abortion. *See* Defendant's letter dated July 17, 2021.  In early November 2017, Plaintiff was travelling in the United State before she saw the Defendant.   Plaintiff visited Defendant for the first time on November 16, 2017 as her symptoms indicated that she was likely pregnant. Defendant told Plaintiff that it's too early to determine whether Plaintiff was pregnant or not, and asked Plaintiff to come later. During her second visit on November 21, 2017, Defendant confirmed that the plaintiff was indeed pregnant. It's impossible for Plaintiff to discover her pregnancy in South Korea before Plaintiff came to New York. **Ms. Newman** filed the false letter for the purpose of insulting and harassing Plaintiff.

**Ms. Newman** also untruthfully stated in her motion to compel, "Prior to treatment at issue, Plaintiff underwent two abortions in South Korea." *See* Def motion filed on July 29, 2021, doc #17-16, page 165, para 3.  Plaintiff explained numerous occasions about the alleged two (2) prior abortions of Plaintiff is incorrect and even a prior abortion is not relevant to Defendant's failure to terminate Plaintiff's pregnancy. *See* Expert's report from Dr. Garofalo, filed 9/13/2021. Obviously defendant's above statements are false and in bad faith.

Rule 30(b) (1) requires that a deposition notice identify the time and place of the deposition. In a remote deposition, **this location is deemed to be the "place where the deponent answers the questions" under Rule 30(b) (4).**  The Defendant should not be allowed **to treat Plaintiff inhumanely and tortuously by performing an overnight deposition of Plaintiff.** On September 18, 2021, as Plaintiff filed a protective order, due to the time difference of thirteen (13) hours between South Korea and New York, Plaintiff suggested to the Defendant that Plaintiff should be ready, willing and able to attend her deposition on September 20, 2021 **between 09:00AM and MIDNIGHT in South Korea Time.** Accordingly, Plaintiff proposed the Defendant change the starting time to 08:00 AM, New York Time

(21:00 PM South Korea Time) and the deposition be finished at midnight South Korean Time. Alternatively, the Plaintiff suggested starting at 20:00 PM New York Time (09:00 AM South Korea Time) if Defendant wants to continue seven (7) hours a day.  Defendant, however, insists that the deposition continue for seven (7) hours a day during the court hours in New York Time and repeatedly rejected all Plaintiff's proposals for a reasonable time for the deposition.  The insistence of the Defendant to depose as scheduled overnight is only designed to harass Plaintiff physically and psychologically. This is shown by the fact the Defendant is insisting that the Plaintiff attend the **deposition OVERNIGHT from 22:00 PM to 5:00 AM in South Korea.**  Plaintiff is a victim of Defendant's malpractice, not a criminal. Ms. Newman's conduct is unreasonable and absurd.

Furthermore, on August 11, 2021, Honorable Magistrate Judge answered to Plaintiff's question if defendant could be deposed first. *See* transcript of 8/11/2021, at 21, 6-10 ("MS. LEE: …. Can we depose the defendant first? THE COURT: There is no firstness in federal court.")  Plaintiff served a notice of deposition of Defendant on the 1st day of September 2021 at 10:00AM EST and will continue consistent with Rule 30 (d) until it is completed. Defendant rejected it only because Plaintiff must be deposed first.

For the foregoing reasons, sanctions against Defendant and his counsel for the repeated bad faiths for the purpose of harassing Plaintiff are warranted and Plaintiff requests this Court to order Defendants to pay attorney's fees incurred in the matters. *See*, *e.g., Roadway Express, Inc. v. Piper*, 447 U.S. 752, (1980); *Hall v. Cole*, 412 U.S. 1, 5 (1973).

Respectfully submitted,

*/s/ Jae S. Lee*
Jae S. Lee

**JSL LAW OFFICES, P.C**
626 RXR PLAZA
UNIONDALE, NY 11556
(718) 461-8000


September 24, 2021


**VIA ECF**

Magistrate Judge Louis Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201


Re:    Minhye Park v. David Kim, M.D.
       Docket:  1:20-CV-02636(PC)


Dear Judge Bloom:

        This letter is in response to the Court's order dated September 20, 2021, directing the parties to file a letter regarding the status of plaintiff's deposition noticed to be held on September 20, 2021 and the status of rescheduling plaintiff's deposition.  Defendant rejected to submit the joint letter because Plaintiff filed a motion for sanctions.

        Plaintiff's position is as follows: Rule 30(b) (1) requires that a deposition notice identify the time and place of the deposition. In a remote deposition, **this location is deemed to be the "place where the deponent answers the questions" under Rule 30(b) (4).**  The Defendant should not be allowed **to treat Plaintiff inhumanely and tortuously by performing an overnight deposition of Plaintiff.** Due to the time difference of thirteen (13) hours between South Korea and New York, on September 17, 2021,  September 18, 2021 and September 19, 2021, Plaintiff suggested to the Defendant that Plaintiff be ready, willing and able to attend her deposition on September 20, 2021 **between 09:00AM and MIDNIGHT in South Korea Time (Between  10:00PM to 11:00AM New York Time**.)  Plaintiff rejected the time from 10:00 AM to 5:00 PM  EST ( from 23:00 PM to 6:00AM in South Korea Time) and notified the Plaintiff's rejection to Defendant, the court reporter and the Korean interpreter. Plaintiff believed it was cancelled since Plaintiff has not received any further notice or phone call on September 19, 2021 or September 20, 2021 from the defendant.

        **As for the rescheduling depositions**, Plaintiff should be able to attend her deposition on September 29, 2021 starting time to 08:00 AM, New York Time (21:00 PM South Korea Time). Plaintiff also requested that the deposition be finished at midnight South Korean Time. Alternatively, the Plaintiff suggested starting at 20:00 PM New York Time (09:00 AM South Korea Time) if Defendant wants to continue seven (7) hours a day.

With respect to the deposition of Defendant, as Plaintiff served the 2nd notice of deposition of the Defendant, it will start on the 30st day of September 2021 at 10:00AM EST and will continue consistent with Rule 30 (d) until it is completed.

Unfortunately, parties were unable to stipulate the time of the Plaintiff's deposition.

Respectfully submitted,

_/s/ Jae S. Lee_
Jae  S. Lee
JSL LAW OFFICES, P.C.
_for Plaintiff_
(718) 461-8000

2458859.1

Certified Copy

```
1
2    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
3
     ------------------------x
4
     MINHYE PARK,
5
               Plaintiff,          Index No.:
6                                  1:20-cv-02636
          -against-
7
     DAVID DENNIS KIM, M.D.,
8
               Defendant.
9
     ------------------------x
10
11                 January 6, 2022
                   8:04 a.m.
12
13
14
15         CONTINUED EXAMINATION BEFORE TRIAL
16   of MINHYE PARK, the Plaintiff in the
17   above-captioned matter, held via Zoom
18   videoconference, before a Notary Public
19   of the State of New York.
20
21
22                 Alyssa Bochnik,
                   Shorthand Reporter
23
24
25
```

Page 96

1

2    A P P E A R A N C E S:

3

4

          JSL LAW OFFICES, P.C.

5             Attorneys for Plaintiff

              163-10 Northern Boulevard, #205

6           Flushing, New York 11354

          BY: JAE S. LEE, ESQ.

7

8

9

          HEIDELL PITTONI MURPHY & BACH, LLP

10            Attorneys for Defendant

              81 Main Street

11            White Plains, New York 10601

          BY: ALEJANDRA R. GIL, ESQ.

12

13

14

15

16        ALSO PRESENT:   Cecilia Lee,

                          Korean Interpreter

17

18

19                        o0o

20

21

22

23

24

25

Page 97

```
 1
 2              IT IS HEREBY STIPULATED AND
 3    AGREED, by and between the attorneys for
 4    the respective parties hereto, that the
 5    sealing and filing of the within
 6    deposition be waived; that such
 7    deposition may be signed and sworn to
 8    before any officer authorized to
 9    administer an oath with the same force
10    and effect as if signed and sworn to
11    before a Justice of this Court.
12
13              IT IS FURTHER STIPULATED AND
14    AGREED that all objections, except as to
15    form, are reserved to the time of trial.
16
17              IT IS FURTHER STIPULATED AND
18    AGREED that the within examination and
19    any corrections thereto may be signed
20    before any Notary Public with the same
21    force and effect as if signed and sworn
22    to before this Court.
23
24
25
```

Page 98

```
 1

 2        CECILIA LEE, Korean Interpreter,

 3        was first duly sworn by Alyssa

 4        Bochnik, a Notary Public within and

 5        for the State of New York, to

 6        truthfully interpret the testimony

 7        of Minhye Park.

 8

 9                    o0o

10

11            M I N H Y E   P A R K,

12    having been duly sworn by Alyssa Bochnik,

13    a Notary Public within and for the State

14    of New York, continue to be examined and

15      testified through the interpreter as

16                  follows:

17

18                    o0o

19

20    CONTINUED EXAMINATION BY MS. GIL:

21        Q.   Good morning, Ms. Park.

22        A.   Yes, hello.

23        Q.   We're going to continue with

24    the questioning today regarding your

25    treatment with Dr. Kim.
```

1                     Minhye Park

2         A.    Okay.

3         Q.    We're going to finish with the

4    testimony we were covering yesterday

5    regarding the abortion.

6              But before we get to that, I

7    just want to go over some of your

8    medical history that we didn't discuss

9    yesterday.

10        A.    Okay.

11        Q.    You testified yesterday that

12   before your abortion with Dr. Kim, you

13   had had another abortion when you were

14   in your early 20s.

15             Do you recall if you signed any

16   paperwork for that procedure that

17   explained the risks of an abortion?

18        A.    That was a long time ago; so, I

19   do not remember.

20        Q.    Now, in 2017 did you have a

21   primary-care physician?  Meaning, a

22   doctor that you would go to when you got

23   sick or just for regular health checkups?

24        A.    No, I did not.

25        Q.    In 2017 if you became ill,

Page 100

1                    Minhye Park
2    where would you go for medical treatment?
3            MS. LEE:  Objection.
4            MS. GIL:  What's the basis of
5        the objection?
6            MS. LEE:  Not specified.
7            MS. GIL:  She can answer the
8        question.
9            MS. LEE:  You cannot order to
10       answer to my client.
11           MS. GIL:  The question is who
12       she went to when she was sick.
13       That's a completely relevant and
14       appropriate question, and there's
15       no proper objection to the
16       question.  So, she has to answer.
17           MS. LEE:  No.  You said "if."
18       If she were to get ill, where she
19       would go.
20           MS. GIL:  Okay.
21       Q.    In 2017 when you were sick,
22    where would you go for medical
23    treatment?
24       A.    You're talking if I have --
25    like if I'm sick, if I have sickness or

Page 101

```
 1                    Minhye Park
 2   pain?
 3         Q.    Yes; any type of sickness.
 4         A.    I would look for a clinic that
 5   would treat the illness, the ailment
 6   that I had at that time.
 7         Q.    And did you -- which clinics
 8   did you go to in 2017, if any?
 9         A.    In 2017, other than the OB/GYN,
10   I don't think I went anywhere else.
11         Q.    And let's say from 2015 until
12   2017, did you have any hospitalizations?
13         A.    No.
14         Q.    From 2015 to 2017, did you go
15   to any clinics for any illnesses?
16         A.    Around that time, there was no
17   specific illness that I had that I --
18   that I remember.
19         Q.    So, you don't remember going to
20   any clinics during that time?
21         A.    You mean in 2017?
22         Q.    From 2015 to 2017.
23         A.    Yes; other than Rosemom,
24   there's -- I don't remember any others.
25         Q.    And before your surgery with
```

Page 102

1                    Minhye Park

2        Dr. Kim in 2017 and not counting the

3        prior abortion that you had in your

4        early 20s, have you had any other

5        surgeries up until that point?

6            A.    No, I've never had any other

7        surgeries.

8            Q.    Okay.  And since 2017 have you

9        had any surgeries besides the surgery by

10       Dr. Kim, and then the other surgery you

11       had in Korea afterwards?

12           A.    Like I mentioned earlier, I had

13       the surgery to remove the lump on the

14       breast.

15           Q.    Okay.  You testified yesterday

16       that you had insurance.  I apologize; I

17       can't remember the name right now, but

18       it was something to do with Korea.

19               Have you had, since 2015, any

20       other insurance other than the one you

21       told me about yesterday?

22               THE INTERPRETER:  What was

23           the time?  2015, you said,

24           Counselor?

25               MS. GIL:  Yes.

Page 103

1                    Minhye Park

2        A.    Yes.

3        Q.    "Yes," only the Korea insurance?

4        A.    Yes.

5        Q.    And in 2017 -- At any point in

6     2017, were you taking any medications,

7     whether over the counter or prescription?

8        A.    In 2017 the only medication I

9     took was, after having the surgery with

10    Dr. Kim, I took the birth control pills.

11       Q.    And after 2017 up until now,

12    have you taken any medications other

13    than the medications that you said

14    you're taking for hepatitis C?

15       A.    So, after having the surgery to

16    remove the fetus, I took some herbal

17    medicines to help my body.  But other

18    than that, I did not take anything.

19       Q.    Do you have a pharmacy in Korea

20    that you go to when you need to fill

21    prescriptions?

22       A.    No.

23       Q.    Okay.  You testified yesterday

24    that in 2017, you were smoking.

25              When did you first start

Page 104

```
 1                  Minhye Park
 2    smoking cigarettes?
 3             MS. LEE:  Objection; relevance.
 4             MS. GIL:  She can answer.  It
 5         is relevant.
 6        A.   I think I had been smoking for
 7    four to five years.
 8        Q.   So, you started sometime in
 9    2012 or 2013?
10        A.   Yes.
11        Q.   And in 2017, were you drinking
12    alcohol?
13             MS. LEE:  Objection.
14             MS. GIL:  It is relevant.
15             She can answer the question.
16        A.   When I didn't know that I was
17    pregnant, I would drink once in a while.
18        Q.   And was that on a weekly basis?
19    On a daily basis?  How frequently?
20             MS. LEE:  Objection.
21             MS. GIL:  Ms. Lee, whether or
22         not she was drinking alcohol is
23         relevant to a claim for medical
24         malpractice.  So, I'm not sure what
25         the basis of the objection is.
```

```
                                              Page 105
  1                    Minhye Park
  2            MS. LEE:  It's not relevant.
  3            MS. GIL:  It is relevant.
  4            She can answer.
  5       A.   About once or twice every two
  6   weeks.
  7       Q.   And in 2017 did you smoke
  8   marijuana?
  9            MS. LEE:  Objection.
 10       Q.   You can answer, Ms. Park.
 11       A.   I don't really understand what
 12   that is.
 13            MS. GIL:  I'm sorry; can you
 14       hold.  I need to take a few-minute
 15       break to take a call.  Sorry.
 16            (Pause in the record)
 17       Q.   Do you know what marijuana is?
 18            THE INTERPRETER:  I'll use
 19       another word for it.
 20       A.   Oh, yes, I do know.
 21       Q.   And in 2017, were you smoking
 22   marijuana?
 23       A.   No; I never tried.
 24       Q.   At any time before 2017, were
 25   you diagnosed with any medical conditions
```

Page 106

1              Minhye Park

2    related to your gynecological care?

3         A.    Can you repeat the question.  I

4    didn't really understand.

5         Q.    Sure.  Well, let me ask a

6    different question:  Before 2017, did

7    you go to an OB/GYN for regular

8    checkups?

9         A.    Yes.  Well, I did go to get my

10   Pap smear done once a year for that.

11        Q.    Okay.  When you went for your

12   Pap smears, did you ever have any

13   irregular results?

14        A.    No.

15        Q.    Were you ever diagnosed with a

16   sexually transmitted disease?

17             MS. LEE:  Objection.

18        Q.    You can answer.

19             MS. GIL:  This is clearly

20        relevant.

21             MS. LEE:  No, it's not.

22        A.    No, I never was diagnosed -- I

23   never got a sexually transmitted

24   disease.

25        Q.    You testified yesterday that

```
1              Minhye Park
2    when you traveled to the United States,
3    you were working and that you took
4    vacation time from your job.
5          Do you remember giving that
6    testimony yesterday?
7       A.   Yes.
8       Q.   How much were you getting paid
9    for the job that you were working at, at
10   that time?
11      A.   I got paid 10,000 won per hour.
12      Q.   And when you took your vacation
13   time, was that paid vacation time?
14      A.   No; because I wasn't working, I
15   wouldn't be -- have been paid.
16      Q.   Yesterday, I asked you questions
17   about whether or not Dr. Kim discussed
18   the possibility of a medical abortion
19   with you.
20          So, my question is:   At the
21   time that Dr. Kim performed the
22   abortion, were you aware that there was
23   a way to have an abortion just by taking
24   a medication, instead of surgery?
25          THE INTERPRETER:   Off the record.
```

Page 108

1                  Minhye Park
2             (Off-the-record discussion)
3             THE INTERPRETER:  Alyssa, can
4       you repeat the question, please.
5             (Question read)
6             MS. LEE:  Objection.
7             MS. GIL:  What's the basis of
8       the objection?
9             MS. LEE:  Asked and answered.
10            MS. GIL:  I asked her yesterday
11       if Dr. Kim discussed it with her.
12       I'm asking her now if she was aware
13       from any source of what it was.
14            She can answer.
15       A.    I did not -- other than
16       surgery, I did not know of the existence
17       of such medicine.
18       Q.    When you arrived at the
19       surgical center for your abortion with
20       Dr. Kim, did you sign any paperwork
21       prior to going in for the procedure?
22       A.    No, I did not.
23            MS. GIL:  Sorry; just bear
24       with me one second.  I'm pulling up
25       a document.

Page 109

1                     Minhye Park
2          Q.   Ms. Park, I'm going to show you
3     a document.
4               MS. GIL:   So, we're going to
5          mark this exhibit as Defendant's
6          Exhibit B.   I'm going to show it on
7          the screen now.
8               (Sharing screen)
9          Q.   Ms. Park, do you see the
10    document on the screen now?
11         A.   Yes.
12              MS. GIL:   And for the record,
13         this is the Informed Consent for
14         Termination of Pregnancy that's
15         contained in the Queens Surgical
16         Care Center records.   It has a fax
17         header at the top.   It says it's
18         Page 5 of 13.
19              I'm scrolling down to the
20         bottom of the document.
21         Q.   Ms. Park, do you see your
22    signature on this document?
23         A.   Yes.
24         Q.   And is your signature on the
25    line that says "Patient"?

```
 1                    Minhye Park
 2        A.   I don't know English very well.
 3        Q.   I understand, but my question
 4   is:  Is your signature -- oh, okay.  I
 5   see the issue.  All right.
 6             Do you see your signature on
 7   this document, towards the bottom of the
 8   document?
 9        A.   Yes, it looks like it's my
10   signature.
11        Q.   Okay.  Scrolling to the next
12   page of this document, which we'll mark
13   as Defendant's C, it states at the top,
14   "Consent For Anesthesia."  It's Page 6
15   of 13.
16             Do you see your signature on
17   this document?
18        A.   Yes, I do see it.
19        Q.   Okay.  And now, scrolling --
20   sorry.
21             Now, we're looking at what
22   we'll mark as Defendant's Exhibit D,
23   which is Patient/Registration Form,
24   Page 3 of 13.
25             Do you see your signature on
```

1              Minhye Park

2    this document?

3         A.   Yes; but the handwriting on

4    this document is not in my handwriting.

5         Q.   Okay.  So, there's a signature;

6    and next to your signature, it looks

7    like your name is printed.

8              So, are you saying that, that

9    is your signature, but the printed

10   handwriting is not yours?

11        A.   Correct.

12        Q.   Now, the day that you went to

13   the surgical center for the abortion,

14   was there a friend with you?

15        A.   No.

16        Q.   And now, looking at Page 4 of 13,

17   which appears to be the second page of

18   Exhibit D, do you see your signature at

19   the bottom of that document, as well?

20        A.   Yes, I see it.

21        Q.   Okay.  Having reviewed these

22   documents, does it refresh your

23   recollection about signing some

24   documents at the surgical center that

25   day?

Page 112

1                    Minhye Park

2         A.   I never signed anything on this

3    kind of document.

4         Q.   Okay.   Well, we just reviewed

5    three different documents, and you

6    acknowledged that your signature was on

7    them.

8              Are you saying that you did not

9    sign these documents?

10        A.   Yes; because this signature

11   is -- anybody can sign like this.

12        Q.   So, are you saying that that is

13   not your signature on these documents?

14        A.   Yes; because I never signed

15   this kind of documents.

16        Q.   Do you recall there being

17   anybody else in the room, where the

18   procedure was performed, other than

19   Dr. Kim?

20        A.   Yes; there were two others.

21   They were non-Korean.

22        Q.   Do you know what their role was

23   in the procedure?

24        A.   I am not sure.   I think they

25   were nurses.

Page 113

1                    Minhye Park
2          Q.   Did you have any conversations
3     with them?
4          A.   No.
5          Q.   Other than your communication
6     with the person at the desk, which you
7     said was mostly with hand gestures, did
8     you have any other communications with
9     anybody at the surgical center before
10    the procedure was performed?
11         A.   No, because I couldn't
12    communicate; so, I did not say anything.
13         Q.   Do you know how long you were
14    at the surgical center?
15         A.   I don't remember exactly, but I
16    don't think it was that long.
17         Q.   And you testified yesterday
18    that you were given anesthesia for the
19    procedure, and you were asleep during
20    the procedure.
21              So, what's the first thing you
22    remember from when you woke up afterwards?
23         A.   I was in -- not the surgery
24    room, but in something like the recovery
25    room.

Page 114

1              Minhye Park

2      Q.   And was anybody in the recovery

3   room with you when you woke up?

4      A.   No; I was laying there by

5   myself.

6      Q.   And once you woke up, before

7   you left the surgical center, did

8   anybody come in to talk to you about the

9   procedure?

10     A.   No.  I just got up, myself;

11  went to the counter; and just with hand

12  gestures, said that I was going home.

13     Q.   Did anybody give you any

14  documents to take home after the

15  procedure?

16     A.   I don't think I got anything

17  like that.

18     Q.   Did you see Dr. Kim after the

19  procedure?

20     A.   You mean, after the surgery was

21  over?

22     Q.   Yes; after the surgery was over,

23  but while you were still there.

24     A.   No, I did not see him.

25     Q.   Okay.  Ms. Park, I'm going to

Page 115

1              Minhye Park
2    show you an exhibit that we will mark as
3    Defendant's Exhibit E, as in exit.
4              (Sharing screen)
5              Do you see the document on the
6    screen, the picture?
7         A.   Yes.
8         Q.   And is this a picture that you
9    took?
10        A.   Yes, correct.
11        Q.   Is that your hand in the
12   picture?
13        A.   Yes, correct.
14        Q.   And what is the document that
15   you're holding?
16        A.   So, it's precautions with
17   regards to the after -- after the
18   surgery.  Meaning, don't do anything
19   strenuous; you might be bleeding.  Stuff
20   like that.
21        Q.   Okay.  And where did you get
22   this document from?
23        A.   I think I got this from the
24   counter, but I did not get this from the
25   doctor.

1                    Minhye Park

2        Q.   Did you get this at the

3    surgical center after the surgery by

4    Dr. Kim?

5        A.   Yes; I think I got this before --

6    before going home.

7        Q.   And is this document written in

8    Korean?

9        A.   Yes.

10       Q.   Can you read what it says?

11       A.   Do you want me to read the

12   whole thing?

13       Q.   Yes.  But before you start,

14   just please read it slowly so that you

15   give the interpreter time to interpret

16   it; and then, the court reporter time to

17   write everything down.  Okay?

18       A.   Okay.

19            (Reading:)  After being

20   discharged, it's good to be laying down

21   for six to seven hours, to rest for

22   about six to seven hours.  After waking

23   up from anesthesia, it's okay to eat

24   foods that are easily digestible.  For

25   two weeks after surgery, exercise,

Page 117

1                    Minhye Park
2    baths, tampons --
3             THE INTERPRETER:  Hold on a
4        second.
5             (Witness speaking in Korean)
6        A.    (Continuing:)  Using water for
7    cleaning, the douche --
8             THE INTERPRETER:  Maybe
9        douche.
10       A.    -- and also sexual relations,
11   do not -- avoid those.
12            You can take a shower after
13   surgery.
14            You need to take the
15   medications that were prescribed by the
16   doctor at the prescribed time.
17            Two weeks after, you have to go
18   to the doctor in charge.
19            If you have any of these
20   symptoms after surgery, please let the
21   doctor in charge know:  Extreme
22   bleeding, having fever, and if you have
23   extreme -- having fever or chills, and
24   if you feel weak, if you continue to
25   feel pain after taking Tylenol or Advil.

Page 118

```
 1                  Minhye Park
 2           And if you do have to make any
 3      long- distance trips, please check with
 4      the doctor in charge.
 5           Q.   Is that it?
 6                THE INTERPRETER:  Yes.
 7                MS. GIL:  Okay.
 8                (Stopping screen share)
 9                MS. LEE:  Counselor, can we
10         can a break for five minutes?
11                MS. GIL:  Yes, that's fine.
12      (Recess held from 8:50 to 8:59 a.m.)
13      CONTINUED EXAMINATION BY MS. GIL:
14           Q.   Ms. Park, do you recall being
15      given any documents other than the
16      discharge instructions that you just
17      read?
18           A.   No.
19                But can I -- can you show me
20      the document we just saw right now?
21           Q.   Sure.
22                (Sharing screen)
23                MS. GIL:  Okay.  I'm displaying
24         what has been previously marked as
25         Defendant's Exhibit E.
```

1                    Minhye Park

2        A.    Now that I look at it, since

3    this doesn't have a date, now that I

4    remember, I think this is something I

5    got from one of the nurses at Dr. Kim's

6    office, and she told me to read it,

7    because it was in Korean.

8        Q.    Okay.  So, do you remember if

9    you got this before you had the abortion

10   by Dr. Kim or after?

11       A.    I think this is what I got when

12   I made the appointment to get the

13   surgery.

14       Q.    So, other than this document,

15   did you receive any type of instructions

16   either at Dr. Kim's office or at the

17   surgical center?

18       A.    No, not other than this.

19       Q.    Okay.  And were you given any

20   medications or any prescriptions for

21   medications after the abortion by

22   Dr. Kim?

23       A.    No, I did not get any specific

24   prescription.

25       Q.    When did you eventually return

Page 120

```
 1                 Minhye Park
 2    to Korea?
 3         A.   December 17th.
 4         Q.   And after you had the abortion,
 5    where did you go?  Where were you
 6    staying for the rest of your time?
 7         A.   I was just staying at the place
 8    I was staying.
 9         Q.   Okay.  And did you have any
10    friends or family visiting with you
11    during that time, after the abortion and
12    before you returned to Korea?
13         A.   No.
14         Q.   Were you able to do any
15    sightseeing or go on any day trips
16    during that time?
17         A.   No; I was not feeling like
18    doing those things.
19         Q.   Okay.  So, what did you do
20    during your time after the abortion and
21    before you returned to Korea?
22         A.   I did go to Dr. Kim's office
23    once more.
24         Q.   And was that approximately two
25    weeks after you had the abortion?
```

Page 121

```
 1                    Minhye Park
 2         A.    Yes.
 3         Q.    During that two-week period
 4    between the abortion and your appointment
 5    with Dr. Kim, did you experience any
 6    vaginal bleeding?
 7         A.    For about two days after
 8    surgery.
 9         Q.    And was it light bleeding?
10    Heavy bleeding?
11         A.    Just a little bit.
12         Q.    Did you have any cramping?
13         A.    So, yes, I did have cramping.
14    My stomach kept hurting and also my
15    chest after surgery.  So, that's why I
16    called the -- I called the clinic a week
17    after because of that.
18         Q.    Did you call Dr. Kim's office
19    or the surgery center?
20         A.    Yes, I called Dr. Kim's office.
21         Q.    And were you able to speak to
22    somebody when you called Dr. Kim's
23    office?
24         A.    Yes; the nurse told me to come
25    two weeks after.
```

Page 122

1               Minhye Park

2          Q.   And do you know how many days

3     after the abortion you called Dr. Kim's

4     office and spoke to the nurse?

5          A.   A week after surgery.

6          Q.   And what did you tell the nurse

7     when you spoke to her?

8          A.   So, I -- I said that even

9     though the surgery's over, my stomach

10    still hurts, and my chest also hurts.

11    So, I asked if the surgery actually went

12    well.

13         Q.   And what did the nurse say?

14         A.   So, when I asked whether the

15    surgery was successful or not because I

16    was having all these side effects, she

17    told me, you need to -- in order for us

18    to check, you need to come two weeks

19    after surgery.  So, it would've been a

20    week after, I called.

21         Q.   And did she tell you how they

22    would check you?

23         A.   No, that was not mentioned.

24         Q.   And at that time did she give

25    you a specific date to come in to see

Page 123

1              Minhye Park
2      Dr. Kim, or did you already have a date
3      scheduled?
4          A.    So, because she told me to come
5      a week after that, I just went when she
6      told me to.
7          Q.    So, before you called that day,
8      did you have an appointment scheduled
9      with Dr. Kim?
10         A.    No, there was no set time or
11     date.
12         Q.    So, after you spoke to the
13     nurse, did you continue to have stomach
14     pain and chest pain up until the time
15     that you went back to Dr. Kim?
16         A.    Yes.
17         Q.    Did you have any vomiting
18     during that two-week period?
19         A.    No, I did not vomit.
20         Q.    So, other than the stomach pain
21     and the chest pain, were you having any
22     other symptoms during that two-week
23     period?
24         A.    At that time, also my skin got
25     all messed up.

Page 124

1                    Minhye Park
2        Q.    Were you using the same facial
3   products that you had been using before
4   the surgery?
5        A.    Yes.
6        Q.    Had you had any change in your
7   diet during that time?
8        A.    No.
9        Q.    At the place that you were
10  staying, were you able to cook your own
11  meals, or were you having to order
12  takeout?
13       A.    It was possible to cook inside.
14       Q.    So, were you cooking your own
15  meals, or were you ordering takeout, or
16  going out to eat?
17       A.    I would buy ingredients at the
18  Korean market and make food at home.
19       Q.    And during that two-week period
20  between the surgery by Dr. Kim and when
21  you went back to his office to see him,
22  did you go to any other medical providers
23  or clinics?
24       A.    No.
25       Q.    Did you have to go to any

1             Minhye Park

2    hospitals during that time period?

3         A.    No.

4         Q.    So, what happened when you went

5    back to Dr. Kim's office?

6         A.    So, when I went there, I kept

7    asking "Was the surgery successful,

8    because I'm still feeling pain".

9              So, he said it was; but what

10   we're gonna do is, we're gonna check

11   your blood and make sure that the

12   numbers are normal.  And then, when we

13   see that, we're gonna know that it

14   definitely was.  And then, we also --

15   and then, I also got an ultrasound done,

16   as well.

17        Q.    And was it Dr. Kim who told you

18   that he had to check your blood and do

19   an ultrasound?

20        A.    Yes.

21        Q.    And did he do an ultrasound

22   during that appointment?

23        A.    Yes.

24        Q.    And did he tell you what the

25   ultrasound showed?

Page 126

1                    Minhye Park

2        A.    Yes.

3        Q.    What did he say?

4        A.    So, he put in the ultrasound

5    machine; and two or three seconds after,

6    he took it out immediately and his

7    facial expression changed.  And he said

8    the fetus did come out, but there are

9    other parts that did not, so that I

10   needed to get surgery tomorrow, right

11   away.

12       Q.    Was it an ultrasound that he

13   did through your vagina?

14       A.    Yes.

15       Q.    And did Dr. Kim tell you what

16   other parts did not come out?

17       A.    So, I did ask the Korean nurse,

18   "What parts is it that is left that I

19   have to get surgery tomorrow right

20   away," but she did not give me an

21   answer.  She gave me a very vague

22   answer.  It was -- she did not really

23   answer my question.

24       Q.    Was this the same nurse that

25   had been an interpreter at your prior

Page 127

```
 1                 Minhye Park
 2    appointments?
 3         A.   Yes.
 4         Q.   And when she didn't really
 5    answer your question, did you ask her
 6    any additional questions?
 7         A.   I kept asking if the surgery
 8    had been successful or not.
 9         Q.   And what did she say?
10         A.   They kept stressing that the
11    baby is not there, but I did need to get
12    surgery right away.
13         Q.   And did they explain to you
14    what kind of surgery you needed?
15         A.   I think they said that I needed
16    to get the same surgery I had done
17    before.
18         Q.   And what did you tell them?
19    Did you say that you would have the
20    surgery?
21         A.   No.   I couldn't really trust
22    that doctor; so, I just left.
23         Q.   At the time of this appointment,
24    were you taking the birth control pills
25    that you got at the Korean market?
```

Page 128

1              Minhye Park

2      A.    Yes.

3      Q.    Did Dr. Kim offer to do the

4  second procedure for free?

5      A.    No, he didn't mention anything

6  like that.

7      Q.    Did Dr. Kim tell you whether

8  there was a certain amount of time

9  during which you had to have the second

10  procedure?

11      A.    I don't understand the

12  question.

13      Q.    When Dr. Kim told you that you

14  needed to have a second surgery to take

15  out what was left, did he tell you that

16  you had to have it, you know, within a

17  week, or if you could wait?

18          MS. LEE:  Objection.

19          MS. GIL:  What's the basis of

20      the objection?

21          MS. LEE:  Asked and answered.

22      She answered, the next day.

23          MS. GIL:  That's not my

24      question.  My question is not when

25      they offered to do the procedure,

Page 129

```
 1              Minhye Park
 2     but if he gave her a timeline of
 3     the latest point that she could
 4     have the surgery.
 5          MS. LEE:  What's the
 6     difference?
 7          MS. GIL:  There's a -- She
 8     can answer the question.  It's a
 9     proper question.
10     A.    Like I mentioned earlier, he
11   said it needs to be done tomorrow, right
12   away.
13     Q.    At the time of that appointment
14   with Dr. Kim, did you already have your
15   return ticket to go back to Korea?
16     A.    No.
17     Q.    When you went to the United
18   States, did you have a return ticket?
19     A.    Yes.
20     Q.    So, what was the date of your
21   return ticket?
22     A.    So, originally, it was three
23   weeks from the time I left Korea.  But
24   then when I found out I was pregnant, I
25   changed it to a month after.
```

1                    Minhye Park

2        Q.    When you changed it when you

3    found out you were pregnant, did you

4    change it to December 17th?

5        A.    No.

6        Q.    So, when did you book your

7    ticket for December 17th?

8        A.    So, when Dr. Kim said that I

9    needed to get another surgery, I thought

10   that -- I realized I couldn't trust him.

11   So, at that time I realized that I just

12   needed to go back to Korea.  When I

13   called the airline, they said there were

14   not -- there were no seats; there were

15   no tickets.  So, I just went to the

16   airport and tried to get a ticket from

17   there, and that's how I got that ticket.

18       Q.    And did you go to the airport

19   on December 17th or sometime before

20   then?

21       A.    So, I went on December 17th;

22   and then, I waited.  And, fortunately,

23   there were two empty seats; so, I was

24   able to take off that same day.

25       Q.    And before you returned to

Page 131

1               Minhye Park
2    Korea, did you call any medical providers
3    in Korea to see if they could do the
4    second surgery?
5         A.   No, I did not.
6         Q.   Did you tell Dr. Kim that you
7    were not going to have the second
8    procedure with him?
9         A.   Yes.
10        Q.   And what did he say?
11        A.   So, he said that it was
12   dangerous to leave it as it is for a
13   long time; so, he told me to do it right
14   away and to do it -- to do the surgery
15   with him a week after.
16        Q.   And what did you say?
17        A.   So, I said, "No; I am going to
18   go get the surgery in Korea."
19             So, I asked to get my money
20   returned for the fees that I paid for
21   the surgery.
22        Q.   How much did you pay Dr. Kim
23   total for all of your treatment with
24   him?
25        A.   I don't remember exactly the --

Page 132

1                    Minhye Park

2    how much were the visits to his office,

3    but the surgery was $750.

4         Q.   Did you pay that with a credit

5    card, cash, or check, or some other way?

6         A.   Cash.

7         Q.   Do you have any receipts or

8    invoices from your payment to Dr. Kim?

9         A.   No.

10        Q.   Did Dr. Kim return your money

11   to you?

12        A.   Yes; I got my money back in

13   cash.

14        Q.   Did you get your money back for

15   the appointments, also, or just for the

16   procedure?

17        A.   Just the money for the

18   procedure.

19        Q.   Did you get any records of the

20   procedure or your treatment with Dr. Kim,

21   to take back to Korea with you?

22        A.   No, I didn't get anything.

23        Q.   Now, at the time of this

24   appointment with Dr. Kim, you already

25   testified that you were taking birth

Page 133

1                    Minhye Park

2    control pills.

3            Were you also smoking at this

4    time?

5            MS. LEE:  Objection.

6            MS. GIL:  What's the basis of

7        the objection?

8            MS. LEE:  Asked and answered

9        yesterday.  You did.  She answered

10       the same thing.

11           MS. GIL:  She can answer one

12       more time.

13       A.   No; because the doctor had told

14   me that it was dangerous to smoke while

15   taking the birth control pill; so, I

16   stopped.

17       Q.   When did he tell you that?

18       A.   So, it was before knowing that

19   the surgery had gone wrong.  So, it

20   would be before surgery.

21       Q.   You mentioned earlier that

22   Dr. Kim told you that it was dangerous

23   to stay the way you were, and that you

24   should have the surgery right away.

25           Did he explain to you why it

Page 134

```
 1                    Minhye Park
 2    was dangerous?
 3         A.   No.  I -- he did not explain.
 4              That's why I couldn't trust him
 5    anymore.
 6         Q.   Did you ask him why it was
 7    dangerous?
 8         A.   Yes, I did.
 9         Q.   And what did he say in
10    response?
11         A.   He did not answer that question.
12         Q.   Did you have any other
13    conversations with Dr. Kim during that
14    last appointment that you haven't told
15    me about already?
16         A.   The last time I went there was
17    to get my money back.  And there was no
18    one there, and the lights were all off.
19    So, I did not see him.
20         Q.   So, that was sometime after the
21    actual appointment?
22         A.   Yes; I went to get my money
23    back.
24         Q.   When you returned to get your
25    money back, were you able to get your
```

Page 135

```
 1                    Minhye Park
 2    money back?
 3        A.    Yes.
 4        Q.    Okay.  So, my question before
 5    that was:  At the last appointment with
 6    Dr. Kim, did you have any other
 7    conversations, other than the ones
 8    you've already told me about?
 9        A.    No.
10        Q.    And other than the time that
11    you returned to the office to get your
12    money back, did you have any other
13    communications with either Dr. Kim or
14    anybody at his office?
15            THE INTERPRETER:  At what
16        time frame was it?  After she --
17            MS. GIL:  After the last
18        appointment with Dr. Kim.
19            THE INTERPRETER:  After she
20        went to get the money back?
21            MS. GIL:  Any time after the
22        last appointment, besides when she
23        went to get the money back.
24            THE INTERPRETER:  Okay.
25        A.    After getting my money back, I
```

Page 136

```
1                    Minhye Park
2    did not have any communication with
3    them.
4        Q.   Okay.  And did you ever receive
5    any letters, or emails, or text messages,
6    any type of communication from either
7    Dr. Kim or his office after your last
8    appointment with him?
9        A.   No.
10       Q.   And after your last appointment
11   with Dr. Kim before you went back to
12   Korea, did you go to any other doctors,
13   hospitals, clinics in New York?
14       A.   No.
15       Q.   And how were you feeling
16   physically during that time period after
17   that last appointment with Dr. Kim and
18   when you returned to Korea?
19       A.   I still had pain on my chest
20   and stomach.
21       Q.   Was the pain making it
22   difficult for you to walk?
23       A.   It wasn't that extreme.
24       Q.   Was the pain preventing you
25   from eating?
```

Page 137

1                    Minhye Park
2         A.    I just had no appetite.
3         Q.    Were you able to eat anything
4    at all during that time period?
5         A.    Yes, I did eat.
6         Q.    Was the pain in your chest and
7    your stomach preventing you from doing
8    anything that you would do normally?
9         A.    At that time because the doctor
10   said that I needed to get surgery right
11   away and because of that stress, I did
12   not feel like doing anything.
13        Q.    Did you take any pain
14   medications during that time period
15   after your last appointment with Dr. Kim
16   and when you returned to Korea?
17        A.    No.
18        Q.    Did you tell anybody back at
19   home that you needed to have a second
20   surgery in Korea?
21        A.    No.
22        Q.    When you had your last
23   appointment with Dr. Kim -- actually,
24   withdrawn.
25             So, what happened once you

Page 138

```
 1                    Minhye Park
 2    returned to Korea?  Did you schedule an
 3    appointment right away for the second
 4    surgery?
 5         A.    No.  First, I just went to get
 6    a checkup to find out what had gone
 7    wrong with the surgery, because I didn't
 8    know why at that -- until that point.
 9         Q.    Where did you go for that
10    checkup?
11         A.    First, I went to a clinic
12    nearby where I live.
13         Q.    What's the name of the clinic?
14         A.    Future OB/GYN.
15             THE INTERPRETER:  If you
16         wanted -- Do you want the phonetic
17         in Korean?  I just translated the
18         meaning of the clinic, but...
19             MS. GIL:  Yes, I'll take the
20         phonetic.
21             THE INTERPRETER:  Okay.
22         Mirae.  It would be M-i-r-a-e.  And
23         it would be, OB/GYN.
24             MS. GIL:  All right.
25         Q.    Was this a clinic that you had
```

Page 139

```
  1                    Minhye Park
  2    been to before?
  3        A.   No; I went there for the first
  4    time.
  5        Q.   So, what happened when you went
  6    to that clinic?
  7        A.   So, I went there and told them
  8    what happened in America, and that I was
  9    told that I needed a second surgery, and
 10    that I wanted to have an ultrasound to
 11    see exactly what went wrong.
 12        Q.   And did they do an ultrasound?
 13        A.   Yes.
 14        Q.   And what did they tell you?
 15        A.   They asked, "Did you really get
 16    the surgery?  Because the baby's still
 17    there; it's nine weeks old."
 18        Q.   And what did you tell them?
 19        A.   I was in shock, myself, because
 20    I didn't think that -- because they
 21    spoke as if the surgery did not even
 22    happen.
 23             MS. GIL:  I'm sorry; can you
 24        read that last part back, Alyssa.
 25             (Answer read)
```

Page 140

1              Minhye Park

2      Q.    So, did they tell you if there

3   were any signs that a surgery had been

4   performed?

5      A.    Oh, no, they did not mention

6   anything like that.

7           So, then I asked, okay.  Then,

8   since the baby's still there, I said,

9   then I'm gonna have it.

10          But they said that because we

11  don't even know what type of anesthesia

12  you were given when you had the surgery,

13  and on top of that, you took birth

14  control pills after, so -- and that they

15  couldn't guarantee that the baby will be

16  born healthy.

17     Q.    Okay.  So, are you saying that

18  when they told you that the baby was

19  still there, you considered having the

20  baby?

21     A.    Yes; because, you know, I am a

22  person.  And then, I even heard the

23  baby's heartbeat at that time.

24          MS. GIL:  Do you need a

25          break, Ms. Park?

```
 1                Minhye Park
 2           MS. LEE:  Yes, let's take a
 3       break.
 4           MS. GIL:  Okay.
 5       (Recess held from 9:46 to 10:01 a.m.)
 6    CONTINUED EXAMINATION BY MS. GIL:
 7       Q.   Ms. Park, did you have any
 8    other testing performed at the clinic
 9    besides the ultrasound?
10           THE INTERPRETER:  We're
11       talking about the Korean clinic;
12       right?
13           MS. GIL:  I'm sorry?
14           THE INTERPRETER:  We're
15       talking about the Korean clinic?
16           MS. GIL:  Yes.
17       A.   No.
18       Q.   And after they told you that
19    they couldn't guarantee that the baby
20    would be born healthy, what happened
21    next?
22       A.   Then, a few hours after, I went
23    to another clinic.
24       Q.   Which clinic did you go to?
25       A.   I went to Rosemom OB/GYN.
```

1              Minhye Park

2         Q.    And what happened when you went

3    to Rosemom?

4         A.    So, when I went there, I told

5    them the same thing:  What happened in

6    America, and I told them that I still --

7    I had chest pain and lower belly pain;

8    so, I wanted to get it checked.

9         Q.    Okay.  And did they perform an

10   examination?

11        A.    Yes; I did have an ultrasound

12   done.

13        Q.    And what did they tell you

14   about the ultrasound at Rosemom?

15        A.    So, they told me that the

16   heart -- the baby's heart was beating

17   well, and they showed me the images of

18   the ultrasound.  And I asked the same

19   question:  If I could -- it was possible

20   for me to have this baby.

21        Q.    And what did they say?

22        A.    They told me that because I had

23   gotten full anesthesia in America and

24   because I took birth control pills, that

25   they couldn't guarantee that the baby

1              Minhye Park

2    could be born normal.

3        Q.   Did anybody, either at Rosemom

4    or the other clinic, tell you why the

5    fact that you had anesthesia would

6    affect the health of the baby?

7        A.   They told me that just the fact

8    that I got general anesthesia, is not

9    good for the baby.

10       Q.   Okay.  So, then, what happened

11   after they told you that?

12       A.   What I said to them?

13       Q.   Yes.

14       A.   Well, after I told them that I

15   wanted to have the baby, but they told

16   me that I might not be able to have a

17   normal baby, I told them that I would

18   think about it for a few days and call

19   them back later.

20       Q.   After you had these two visits

21   at the clinic, did you talk to anyone in

22   your family or any friends about what

23   you were going to do next?

24       A.   No.

25       Q.   And then, what did you

1              Minhye Park

2     eventually decide to do?

3          A.    I decided to get a surgery

4     again.  So, I called Rosemom again.

5          Q.    And when you called Rosemom,

6     did they schedule the surgery?

7          A.    Yes.

8          Q.    And when was the surgery

9     scheduled for?

10         A.    So, before getting the surgery

11    date, I contacted my attorney in

12    America.

13              And I think the surgery was in

14    January.

15         Q.    Okay.  Ms. Park, I don't want

16    you to tell me about any conversations

17    you had with your attorney, okay?

18              But, when did you first contact

19    an attorney in America?

20              MS. LEE:  Objection.

21              MS. GIL:  She can answer as

22         to when she contacted an attorney.

23         I don't need any details of any

24         conversations.

25              MS. LEE:  Including the date.

Page 145

```
1                    Minhye Park
2            MS. GIL:  I'm sorry?
3            MS. LEE:  Not to answer.
4            MS. GIL:  Based on what?
5            MS. LEE:  Privilege.
6            MS. GIL:  When she contacted
7       an attorney, is not privileged.
8            MS. LEE:  Included.
9            MS. GIL:  She can answer the
10      question.
11      A.   So, once I came back from
12  Korea -- once I came back to Korea and I
13  realized that the baby was still there,
14  it was a few days after that, that I
15  started looking into it.
16      Q.   And is the attorney you
17  contacted at that point, the attorney
18  who is currently representing you in
19  this case?
20      A.   Yes.
21      Q.   And then, what was the date of
22  the surgery at Rosemom?
23      A.   I don't remember whether it was
24  the end of December or the beginning of
25  January.
```

1                    Minhye Park
2          Q.   Okay.  So, you had -- you went
3     to the two clinics the same day when you
4     first came back to Korea.  And then, you
5     called Rosemom to schedule the surgery.
6               Before you went in for the
7     surgery, did you go to any other clinics
8     or any doctors?
9          A.   No.
10         Q.   And so, tell me what happened
11    the day you went in for the surgery at
12    Rosemom.
13         A.   I got anesthesia and got
14    surgery.
15         Q.   Before having that surgery
16    done, did anyone talk to you about the
17    risks involved with the surgery?
18         A.   Yes; before and after the
19    surgery.
20         Q.   What did they tell you?
21         A.   I don't remember, because it
22    was a lot of information.  But it was
23    all written in, in paper.
24         Q.   And did you keep copies of
25    those papers?

Page 147

1                    Minhye Park

2          A.    No, I don't have them with me.

3          Q.    But were they given to you?

4          A.    Yes, I was given it so that I

5     could read it.

6          Q.    When you left, did they give

7     you copies to keep, or did it stay with

8     the clinic?

9          A.    Yes, I didn't leave it at the

10    clinic; I brought it with me.

11         Q.    So, what happened to those

12    papers?

13         A.    So, after surgery, I just read

14    the paper; and then, I got rid of it.

15         Q.    You threw them out?

16         A.    Yes.

17         Q.    Did you ever give copies to

18    your attorney?

19         A.    That, I do not remember.

20         Q.    After you had the surgery, did

21    the doctor who performed it come in to

22    talk to you about how it had gone?

23         A.    After the surgery, I did not

24    think I saw the doctor.

25         Q.    Did you have to return for a

1              Minhye Park

2     postoperative follow-up?

3          A.   Yes, I did.

4          Q.   And when was that appointment?

5          A.   I think it was one or two weeks

6     after the surgery.

7          Q.   And what happened at that

8     postoperative follow-up?

9          A.   I got an ultrasound examination

10    and verified that the surgery was

11    successful.

12         Q.   And did they confirm that the

13    surgery was successful?

14         A.   Yes.

15         Q.   Ms. Park, at the time that you

16    had the abortion in Korea either in

17    December or January, were abortions

18    legal?

19              MS. LEE:   Objection.

20              Not to answer.

21              MS. GIL:   What's the basis of

22        her not answering that question?

23              MS. LEE:   Legal conclusion.

24        You shouldn't ask.

25              MS. GIL:   She, presumably,

1              Minhye Park

2    knows whether or not it's legal to

3    obtain an abortion.

4         MS. LEE:  Not to answer.

5         MS. GIL:  All right.  We'll

6    have to get a ruling from the court

7    on that.

8    RULING CONTEMPLATED:

9         Q.   Ms. Park, after the procedure

10   in Korea, did you experience any pain or

11   any bleeding?

12        A.   No.  The bleeding and pain was

13   just after Dr. Kim's surgery, but not in

14   Korea.

15        Q.   So, after the surgery in Korea,

16   did you have any physical symptoms or

17   complaints?

18        A.   So, I think -- what I was

19   thinking was because I had two surgeries

20   in such a short period of time, that the

21   chest pain, and the lower belly pain,

22   and my troubled skin had something to do

23   with that.

24        Q.   Okay.  But did you have the

25   chest pain, the lower belly pain, and

Page 150

                    Minhye Park
1
2    the skin issues after the surgery in
3    Korea?
4        A.    So, the skin trouble, I have it
5    'til this day.  And the chest pain, I
6    think it was because of the lump I had.
7        Q.    So, you didn't have any more
8    lower belly pain after the surgery in
9    Korea?
10       A.    That would go in and out, back
11   and forth.
12       Q.    After you had the surgery in
13   Korea, did you get your appetite back?
14       A.    So, my appetite is related to
15   stress, and I didn't have an appetite
16   because of my stress level.
17       Q.    And what was -- why did you
18   have stress?
19       A.    So, it was, like, mental stress
20   because I had -- because of -- because
21   the surgery with Dr. Kim did not go
22   well, and I had to get two surgeries in
23   a short period of time.  And I also felt
24   sorry -- I felt bad -- I felt sorry
25   towards the baby.  And then, some kind

Page 151

```
 1              Minhye Park
 2   of depression symptoms.  It was mental
 3   stress.
 4       Q.   Did you ever seek any medical
 5   treatment for your mental stress and
 6   depression?
 7       A.   No, I did not get any treatment.
 8       Q.   Did you ever take any
 9   medications to treat your stress and
10   depression?
11       A.   No.
12       Q.   Did you ever go to therapy?
13       A.   I did not have any therapy for
14   the depression.
15       Q.   Do you have any scars from
16   either the surgery from Dr. Kim or the
17   surgery from Rosemom?
18       A.   No.
19       Q.   Were you able to perform your
20   usual activities of getting dressed, of
21   walking, after you had the surgery at
22   Rosemom?
23       A.   So, after getting surgery, I
24   stayed home for a little bit, because I
25   had gotten two surgeries in a short
```

Page 152

1           Minhye Park
2    period of time.  So, for a few -- for a
3    while, I stayed at home, just resting.
4        Q.   How long did you stay at home,
5    just resting, after the second surgery?
6        A.   So, I kept resting at home for
7    a few years after that surgery.
8        Q.   So, for a few years, you didn't
9    leave your home?
10       A.   So, I would go home -- I
11   mean -- I'm sorry.  I would go to the
12   market that's nearby my home and buy
13   things.  But I wouldn't go far, because
14   I did not feel like meeting people.  So,
15   I just kind of stayed home.
16       Q.   And why didn't you feel like
17   meeting people?
18       A.   Well, because of my situation
19   and because of how my body was feeling,
20   I did not feel like meeting people and,
21   you know, laughing and doing stuff like
22   that.
23       Q.   And was it because of the way
24   your body was feeling because of the
25   surgery, or something else?

Page 153

1              Minhye Park
2      A.   I think -- what I think,
3  personally, is that after getting those
4  two surgeries, my body just got bad.
5      Q.   What do you mean by "got bad"?
6      A.   So, I feel like my physical
7  body's -- my physical body's rhythm
8  is -- has got -- Well, became kind of
9  off because of my hormone imbalance, and
10 how my -- and then, the chest pain that
11 I was having and all the stress I was
12 having, and because of that my -- my
13 liver got bad, as well.
14     Q.   Did anybody tell you that the
15 hormones and the stress that you had
16 because of these surgeries damaged your
17 liver?  Did any doctor tell you that?
18     A.   Yes; when I went to get surgery
19 for my breast, I was told it was due to
20 hormones.
21     Q.   Okay.  But did anyone tell you
22 that your liver and your hepatitis C was
23 due to the hormones or the surgeries
24 that you had?
25     A.   No; the doctor does not know

Page 154

```
 1                    Minhye Park
 2    that I had the abortion surgeries.
 3        Q.   Why didn't you tell your doctor
 4    about the abortion surgeries?
 5        A.   I didn't feel like telling
 6    these things to a male doctor, because
 7    that's my private life.
 8        Q.   After you had the abortion at
 9    Rosemom, did you have to have any other
10    medical treatment related to that
11    pregnancy that was terminated?
12        A.   No; but I just kept going for
13    general checkups.
14        Q.   And were your general checkups
15    at Rosemom or someplace else?
16        A.   At Rosemom.
17        Q.   And since you had the abortion
18    in Korea, have you gone to any OB/GYN
19    offices or clinics other than Rosemom?
20            MS. LEE:  Objection.
21            MS. GIL:  What's the basis of
22        the objection?
23            MS. LEE:  Asked and answered
24        several times.
25            MS. GIL:  She can answer one
```

Page 155

1                    Minhye Park
2     more time.
3     A.   No.
4     Q.   Did you have to pay for the
5     procedure that was performed at Rosemom
6     for the second abortion?
7     A.   Yes.
8     Q.   How much did you pay?
9          MS. LEE:  Objection.
10         MS. GIL:  What's the basis of
11    the objection?
12         MS. LEE:  Relevance.
13         MS. GIL:  Is she claiming
14    monetary damages in this case?  If
15    she's claiming monetary damages,
16    it's relevant.  If she's not, then
17    I won't ask the question.
18         MS. LEE:  (No response)
19         MS. GIL:  Okay.  She can
20    answer the question, then.
21    A.   I would have to look up how
22    much I actually paid.
23    Q.   Do you have receipts or an
24    invoice?
25         A.   I do not have an invoice -- a

1              Minhye Park

2   receipt with me.

3        Q.   Did you pay cash, or with a

4   credit card, or something else?

5        A.   Cash.

6        Q.   Since 2017 have you had any

7   other pregnancies?

8        A.   No.

9        Q.   What is your current form of

10  birth control, if any?

11           MS. LEE:  Objection.

12           MS. GIL:  What's the basis of

13       the objection?

14           MS. LEE:  Relevance.

15           MS. GIL:  It's relevant.

16           MS. LEE:  And privacy.

17           MS. GIL:  There's no privacy

18       objection in a medical malpractice

19       case when I'm asking about medical

20       history.

21           MS. LEE:  This is not

22       relevant.

23           MS. GIL:  It is relevant.

24           MS. LEE:  No.

25           MS. GIL:  All right.  We'll

Page 157

```
 1            Minhye Park
 2      mark that for a ruling, too.
 3   RULING CONTEMPLATED:
 4      Q.   Ms. Park, did you take any
 5   notes about your treatment with Dr. Kim?
 6      A.   Are you asking whether I wrote
 7   something down?
 8      Q.   Yes.
 9      A.   No, there's nothing I wrote
10   down at that time.
11      Q.   At any time since you treated
12   with Dr. Kim, have you taken any notes
13   about your treatment with Dr. Kim,
14   either in a journal or anything like
15   that?
16           MS. LEE:  Objection.
17           MS. GIL:  What is the
18      objection?
19           MS. LEE:  Answered already.
20           MS. GIL:  She said, at that
21      time.  I'm asking her if at any
22      time since then, has she written
23      down any notes.
24      A.   No.
25      Q.   Do you have any social media
```

                                              Page 158

1                          Minhye Park

2    accounts?

3        A.    I signed up, but I don't use it.

4        Q.    Which social media account did

5    you sign up for?

6               MS. LEE:   Objection.

7        A.    Facebook.

8        Q.    Did you ever take any audio or

9    video recordings of your treatment with

10   Dr. Kim or your treatment in Korea

11   afterwards?

12       A.    No.

13       Q.    Ms. Park, I'm going to show you

14   some photos that we received from your

15   attorney.

16            (Sharing screen)

17            Ms. Park, I'm showing you

18   what's been marked as Defendant's

19   Exhibit F.

20            Do you see that picture on the

21   screen?

22       A.    Yes.

23       Q.    Did you take that picture?

24       A.    Yes.

25       Q.    And what does that picture show?

Page 159

```
 1            Minhye Park
 2      A.   This is a picture I took before
 3  getting surgery in America.
 4      Q.   And why did you take this
 5  picture?
 6      A.   Because I had worn this kind of
 7  thing for the first time, because I --
 8  because I wore this thing just for the
 9  first time before surgery.
10      Q.   Did you take this picture with
11  a phone or something else?
12      A.   Yes.
13      Q.   Do you still have the phone?
14      A.   No; I changed phones.
15      Q.   Did you share this photo with
16  anybody?
17      A.   No.
18      Q.   Okay.  I'm going to show you
19  another picture, which will be
20  Defendant's G.
21           (Sharing screen)
22           Do you see the picture?
23      A.   Yes.
24      Q.   And did you take this picture?
25      A.   Yes.
```

Page 160

1           Minhye Park

2      Q.   Where did you take the picture?

3      A.   Yes, this is also a picture

4   from the place in America as I was

5   waiting to get surgery.

6      Q.   Okay.  And why did you take

7   this picture?

8      A.   Mainly because I was in a place

9   by myself in America, in a place I

10   didn't know anybody.

11      Q.   Did you share the picture with

12   anybody?

13      A.   When you're saying if I shared

14   the picture with anybody, do you mean if

15   I sent it to any friends or family?

16      Q.   Yes.

17      A.   No.

18      Q.   Okay.  I'm going to show you

19   one more pictures, which will be

20   Defendant's Exhibit H.

21           (Sharing screen)

22           What is this picture of?

23      A.   It's a picture that I took

24   for -- at the place of my first surgery,

25   and I was -- just took this picture

Page 161

1                    Minhye Park
2      while I was waiting in the waiting area.
3          Q.   Do you know any of the people
4      that you can see in the picture?
5          A.   No; these are all people that I
6      saw for the first time.
7          Q.   And why did you take this
8      picture?
9          A.   Because I thought if anything
10     were to go wrong after surgery, I just
11     wanted to have some kind of proof of
12     where I was when I got surgery.
13         Q.   And did you share this picture
14     with anybody?
15         A.   No.
16         Q.   Now, other than the three
17     pictures we just looked at and the
18     picture we looked at earlier of the
19     discharge instructions, did you take any
20     other pictures at Dr. Kim's office or
21     the surgical center?
22         A.   No.
23         Q.   Did you take any pictures at
24     Rosemom or at the other clinic you went
25     to in Korea?

Page 162

1                    Minhye Park

2      A.   No, I did not take any at

3  Rosemom.

4      Q.   Ms. Park, when you went to the

5  two clinics in Korea after you had the

6  surgery by Dr. Kim, did any of the

7  medical providers at those clinics say

8  anything that was critical about the

9  treatment you received from Dr. Kim?

10          THE INTERPRETER:  Can you

11      repeat the question?  I'm sorry.

12          MS. GIL:  Sure.

13          Can you read it back, Alyssa,

14      please.

15          (Question read)

16      A.   They just said that it looked

17  like the surgery was not even done.

18      Q.   Did any of them ever tell you

19  that it was possible that an abortion

20  performed early in a pregnancy, might

21  not remove everything?

22      A.   No.

23      Q.   Have you done any online

24  research about an abortion not removing

25  the baby?

Page 163

                    Minhye Park

1

2       A.    No.

3       Q.    Since your surgery with

4   Dr. Kim, have you seen any doctors for

5   treatment for any condition other than

6   the lump in your breast and the

7   hepatitis C?

8       A.    So, I just went to the specialist

9   for the lump in my breast and the liver

10  doctor.

11      Q.    And are you currently still

12  experiencing stress and depression due

13  to the surgery you had by Dr. Kim?

14          THE INTERPRETER:  You said

15      stress and depression; right?

16          MS. GIL:  Yes.

17      A.    Yes.  When I think about --

18  back to that time, I get stressed, and I

19  don't feel well emotionally.

20          MS. GIL:  Thank you, Ms. Park.

21          I have no further questions

22      at this time, but I am reserving my

23      right to keep the deposition open

24      since there's still outstanding

25      discovery, including responses to

Page 164

```
 1              Minhye Park
 2    interrogatories, and a notice to
 3    produce metadata, copies of prior
 4    abortion records, and other
 5    documents that have been demanded
 6    from plaintiff's counsel and which
 7    we have still not received, despite
 8    court orders to produce these
 9    documents.
10         THE WITNESS:  Okay.
11         MS. GIL:  Thank you.
12         (Whereupon, Informed Consent
13    For Termination of Pregnancy was
14    marked as Defendant's Exhibit B,
15    for ID;
16         Consent For Anesthesia, Page
17    6 of 13, was marked as Defendant's
18    Exhibit C, for ID;
19         Two-page Patient Information/
20    Registration Form was marked as
21    Defendant's Exhibit D, for ID;
22         Four photos were marked as
23    Defendant's Exhibits E - H, for ID.)
24                   o0o
25         (Time noted:  10:51 a.m.)
```

**Page 165**

```
1

2    STATE OF NEW YORK          )

3                               )    ss:

4    COUNTY OF NEW YORK         )

5

6

7          I,  MINHYE PARK, the witness

8    herein, having read the foregoing

9    testimony of the pages of this

10   deposition, do hereby certify it to be a

11   true and correct transcript, subject to

12   the corrections, if any, shown on the

13   attached page.

14

15

16                    o0o

17

18

19

20                       MINHYE PARK

21

22   Subscribed and sworn to before me

23   this _____ day of _____, 20 .

24

25
```

```
                                                    Page 166

1

2              C E R T I F I C A T E

3    STATE OF NEW YORK          )

4                               )

5    COUNTY OF ROCKLAND         )

6

7         I, ALYSSA BOCHNIK, a Notary Public

8    for and within the State of New York, do

9    hereby certify:

10        That the witness whose examination

11   is hereinbefore set forth was duly sworn

12   and that such examination is a true

13   record of the testimony given by that

14   witness.

15        I further certify that I am not

16   related to any of the parties to this

17   action by blood or by marriage and that I

18   am in no way interested in the outcome of

19   this matter.

20        IN WITNESS WHEREOF, I have

21   hereunto set my hand this 24th day of

22   January, 2022.

23

24

25   _____

          ALYSSA BOCHNIK
```

```
                                              Page 167

 1
 2              ***I N D E X***
 3                    PAGE#          LINE#
 4   EXAMINATION BY:
 5   Ms. Gil                98           20
 6
     DOCUMENT/DATA REQUESTED:
 7
     NONE
 8
 9   DEFENDANT'S EXHIBITS:
10   Exhibit B - Informed Consent For Termination of
     Pregnancy              164          12
11
     Exhibit C - Consent For Anesthesia, Page 6 of 13
12                          164          16
     Exhibit D - Two-page Patient Information/
13   Registration Form      164          19
14   Exhibits E - H - Four photos    164          22
15
     RULINGS CONTEMPLATED:
16
      Q. Ms. Park, at the time that you had the
17   abortion in Korea either in December or
     January, were abortions legal?
18                          149           8
19   Q. What is your current form of birth
     control, if any?       157           3
20
21
22
23
24
25
```

Page 168

1

2                    CORRECTION SHEET

3

4    Re:  Minhye Park -ag- David Dennis

5    Kim, M.D.

6            The following corrections,

7    additions or deletions were noted on the

8    transcript of the testimony which

9    I gave in the above-captioned matter,

10   held on January 6, 2022.

11

12   PAGE(S)  LINE(S)  SHOULD READ

13        *        *

14        *        *

15        *        *

16        *        *

17        *        *

18        *        *

19        *        *

20        *        *

21

22                        Minhye Park

23   Subscribed and sworn to before me

24   this    day of              20  .

25

[& - appropriate]                                                                                      Page 1

| | |
|---|---|

### &

**&** 96:9

### 0

**02636** 95:6

### 1

**10,000** 107:11
**10601** 96:11
**10:01** 141:5
**10:51** 164:25
**11354** 96:6
**12** 167:10
**13** 109:18 110:15
  110:24 111:16
  164:17 167:11
**149** 167:18
**157** 167:19
**16** 167:12
**163-10** 96:5
**164** 167:10,12,13
  167:14
**17th** 120:3 130:4,7
  130:19,21
**19** 167:13
**1:20** 95:6

### 2

**20** 165:23 167:5
  168:24
**2012** 104:9
**2013** 104:9
**2015** 101:11,14,22
  102:19,23
**2017** 99:20,25
  100:21 101:8,9,12
  101:14,21,22
  102:2,8 103:5,6,8
  103:11,24 104:11
  105:7,21,24 106:6
  156:6
**2022** 95:11 166:22
  168:10

**205** 96:5
**20s** 99:14 102:4
**22** 167:14
**24414** 166:24
**24th** 166:21

### 3

**3** 110:24 167:19

### 4

**4** 111:16

### 5

**5** 109:18

### 6

**6** 95:11 110:14
  164:17 167:11
  168:10

### 7

**750** 132:3

### 8

**8** 167:18
**81** 96:10
**8:04** 95:11
**8:50** 118:12
**8:59** 118:12

### 9

**98** 167:5
**9:46** 141:5

### a

**a.m.** 95:11 118:12
  141:5 164:25
**able** 120:14
  121:21 124:10
  130:24 134:25
  137:3 143:16
  151:19
**abortion** 99:5,12
  99:13,17 102:3
  107:18,22,23
  108:19 111:13

119:9,21 120:4,11
120:20,25 121:4
122:3 148:16
149:3 154:2,4,8,17
155:6 162:19,24
164:4 167:17
**abortions** 148:17
  167:17
**account** 158:4
**accounts** 158:2
**acknowledged**
  112:6
**action** 166:17
**activities** 151:20
**actual** 134:21
**additional** 127:6
**additions** 168:7
**administer** 97:9
**advil** 117:25
**affect** 143:6
**ag** 168:4
**ago** 99:18
**agreed** 97:3,14,18
**ailment** 101:5
**airline** 130:13
**airport** 130:16,18
**alcohol** 104:12,22
**alejandra** 96:11
**alyssa** 95:22 98:3
  98:12 108:3
  139:24 162:13
  166:7,25
**america** 139:8
  142:6,23 144:12
  144:19 159:3
  160:4,9
**amount** 128:8
**anesthesia** 110:14
  113:18 116:23
  140:11 142:23
  143:5,8 146:13

164:16 167:11
**answer** 100:7,10
  100:16 104:4,15
  105:4,10 106:18
  108:14 126:21,22
  126:23 127:5
  129:8 133:11
  134:11 139:25
  144:21 145:3,9
  148:20 149:4
  154:25 155:20
**answered** 108:9
  128:21,22 133:8,9
  154:23 157:19
**answering** 148:22
**anybody** 112:11
  112:17 113:9
  114:2,8,13 135:14
  137:18 143:3
  153:14 159:16
  160:10,12,14
  161:14
**anymore** 134:5
**apologize** 102:16
**appears** 111:17
**appetite** 137:2
  150:13,14,15
**appointment**
  119:12 121:4
  123:8 125:22
  127:23 129:13
  132:24 134:14,21
  135:5,18,22 136:8
  136:10,17 137:15
  137:23 138:3
  148:4
**appointments**
  127:2 132:15
**appropriate**
  100:14

[approximately - come]                                        Page 2

**approximately**
120:24
**area** 161:2
**arrived** 108:18
**asked** 107:16
108:9,10 122:11
122:14 128:21
131:19 133:8
139:15 140:7
142:18 154:23
**asking** 108:12
125:7 127:7
156:19 157:6,21
**asleep** 113:19
**attached** 165:13
**attorney** 144:11
144:17,19,22
145:7,16,17
147:18 158:15
**attorneys** 96:5,10
97:3
**audio** 158:8
**authorized** 97:8
**avoid** 117:11
**aware** 107:22
108:12

**b**

**b** 109:6 164:14
167:10
**baby** 127:11
140:15,18,20
141:19 142:20,25
143:6,9,15,17
145:13 150:25
162:25
**baby's** 139:16
140:8,23 142:16
**bach** 96:9
**back** 123:15
124:21 125:5
129:15 130:12

132:12,14,21
134:17,23,25
135:2,12,20,23,25
136:11 137:18
139:24 143:19
145:11,12 146:4
150:10,13 162:13
163:18
**bad** 150:24 153:4
153:5,13
**based** 145:4
**basis** 100:4 104:18
104:19,25 108:7
128:19 133:6
148:21 154:21
155:10 156:12
**baths** 117:2
**bear** 108:23
**beating** 142:16
**beginning** 145:24
**belly** 142:7 149:21
149:25 150:8
**birth** 103:10
127:24 132:25
133:15 140:13
142:24 156:10
167:19
**bit** 121:11 151:24
**bleeding** 115:19
117:22 121:6,9,10
149:11,12
**blood** 125:11,18
166:17
**bochnik** 95:22
98:4,12 166:7,25
**body** 103:17
152:19,24 153:4
**body's** 153:7,7
**book** 130:6
**born** 140:16
141:20 143:2

**bottom** 109:20
110:7 111:19
**boulevard** 96:5
**break** 105:15
118:10 140:25
141:3
**breast** 102:14
153:19 163:6,9
**brought** 147:10
**buy** 124:17 152:12

**c**

**c** 96:2 103:14
110:13 153:22
163:7 164:18
166:2,2 167:11
**call** 105:15 121:18
131:2 143:18
**called** 121:16,16
121:20,22 122:3
122:20 123:7
130:13 144:4,5
146:5
**captioned** 95:17
168:9
**card** 132:5 156:4
**care** 99:21 106:2
109:16
**case** 145:19
155:14 156:19
**cash** 132:5,6,13
156:3,5
**cecilia** 96:16 98:2
**center** 108:19
109:16 111:13,24
113:9,14 114:7
116:3 119:17
121:19 161:21
**certain** 128:8
**certify** 165:10
166:9,15

**change** 124:6
130:4
**changed** 126:7
129:25 130:2
159:14
**charge** 117:18,21
118:4
**check** 118:3
122:18,22 125:10
125:18 132:5
**checked** 142:8
**checkup** 138:6,10
**checkups** 99:23
106:8 154:13,14
**chest** 121:15
122:10 123:14,21
136:19 137:6
142:7 149:21,25
150:5 153:10
**chills** 117:23
**cigarettes** 104:2
**claim** 104:23
**claiming** 155:13
155:15
**cleaning** 117:7
**clearly** 106:19
**client** 100:10
**clinic** 101:4
121:16 138:11,13
138:18,25 139:6
141:8,11,15,23,24
143:4,21 147:8,10
161:24
**clinics** 101:7,15,20
124:23 136:13
146:3,7 154:19
162:5,7
**come** 114:8 121:24
122:18,25 123:4
126:8,16 147:21

communicate
113:12
communication
113:5 136:2,6
communications
113:8 135:13
complaints 149:17
completely 100:13
conclusion 148:23
condition 163:5
conditions 105:25
confirm 148:12
consent 109:13
110:14 164:12,16
167:10,11
considered 140:19
contact 144:18
contacted 144:11
144:22 145:6,17
contained 109:15
contemplated
149:8 157:3
167:15
continue 98:14,23
117:24 123:13
continued 95:15
98:20 118:13
141:6
continuing 117:6
control 103:10
127:24 133:2,15
140:14 142:24
156:10 167:19
conversations
113:2 134:13
135:7 144:16,24
cook 124:10,13
cooking 124:14
copies 146:24
147:7,17 164:3

correct 111:11
115:10,13 165:11
correction 168:2
corrections 97:19
165:12 168:6
counsel 164:6
counselor 102:24
118:9
counter 103:7
114:11 115:24
counting 102:2
county 165:4
166:5
court 95:2 97:11
97:22 116:16
149:6 164:8
covering 99:4
cramping 121:12
121:13
credit 132:4 156:4
critical 162:8
current 156:9
167:19
currently 145:18
163:11
cv 95:6

**d**

d 110:22 111:18
164:21 167:2,12
daily 104:19
damaged 153:16
damages 155:14
155:15
dangerous 131:12
133:14,22 134:2,7
data 167:6
date 119:3 122:25
123:2,11 129:20
144:11,25 145:21
david 95:7 168:4

day 111:12,25
120:15 123:7
128:22 130:24
146:3,11 150:5
165:23 166:21
168:24
days 121:7 122:2
143:18 145:14
december 120:3
130:4,7,19,21
145:24 148:17
167:17
decide 144:2
decided 144:3
defendant 95:8
96:10
defendant's 109:5
110:13,22 115:3
118:25 158:18
159:20 160:20
164:14,17,21,23
167:9
definitely 125:14
deletions 168:7
demanded 164:5
dennis 95:7 168:4
deposition 97:6,7
163:23 165:10
depression 151:2
151:6,10,14
163:12,15
desk 113:6
despite 164:7
details 144:23
diagnosed 105:25
106:15,22
diet 124:7
difference 129:6
different 106:6
112:5

difficult 136:22
digestible 116:24
discharge 118:16
161:19
discharged 116:20
discovery 163:25
discuss 99:8
discussed 107:17
108:11
discussion 108:2
disease 106:16,24
displaying 118:23
distance 118:3
district 95:2,2
doctor 99:22
115:25 117:16,18
117:21 118:4
127:22 133:13
137:9 147:21,24
153:17,25 154:3,6
163:10
doctors 136:12
146:8 163:4
document 108:25
109:3,10,20,22
110:7,8,12,17
111:2,4,19 112:3
115:5,14,22 116:7
118:20 119:14
167:6
documents 111:22
111:24 112:5,9,13
112:15 114:14
118:15 164:5,9
doing 120:18
137:7,12 152:21
douche 117:7,9
dr 98:25 99:12
102:2,10 103:10
107:17,21 108:11
108:20 112:19

[dr - gil]                                                                 Page 4

114:18 116:4
119:5,10,16,22
120:22 121:5,18
121:20,22 122:3
123:2,9,15 124:20
125:5,17 126:15
128:3,7,13 129:14
130:8 131:6,22
132:8,10,20,24
133:22 134:13
135:6,13,18 136:7
136:11,17 137:15
137:23 149:13
150:21 151:16
157:5,12,13
158:10 161:20
162:6,9 163:4,13
**dressed** 151:20
**drink** 104:17
**drinking** 104:11
   104:22
**due** 153:19,23
   163:12
**duly** 98:3,12
   166:11

**e**

**e** 96:2,2 98:11
   115:3 118:25
   138:22 164:23
   166:2,2 167:2,14
**earlier** 102:12
   129:10 133:21
   161:18
**early** 99:14 102:4
   162:20
**easily** 116:24
**eastern** 95:2
**eat** 116:23 124:16
   137:3,5
**eating** 136:25

**effect** 97:10,21
**effects** 122:16
**either** 119:16
   135:13 136:6
   143:3 148:16
   151:16 157:14
   167:17
**emails** 136:5
**emotionally**
   163:19
**empty** 130:23
**english** 110:2
**esq** 96:6,11
**eventually** 119:25
   144:2
**exactly** 113:15
   131:25 139:11
**examination** 95:15
   97:18 98:20
   118:13 141:6
   142:10 148:9
   166:10,12 167:4
**examined** 98:14
**exercise** 116:25
**exhibit** 109:5,6
   110:22 111:18
   115:2,3 118:25
   158:19 160:20
   164:14,18,21
   167:10,11,12
**exhibits** 164:23
   167:9,14
**existence** 108:16
**exit** 115:3
**experience** 121:5
   149:10
**experiencing**
   163:12
**explain** 127:13
   133:25 134:3

**explained** 99:17
**expression** 126:7
**extreme** 117:21,23
   136:23

**f**

**f** 158:19 166:2
**facebook** 158:7
**facial** 124:2 126:7
**fact** 143:5,7
**family** 120:10
   143:22 160:15
**far** 152:13
**fax** 109:16
**feel** 117:24,25
   137:12 152:14,16
   152:20 153:6
   154:5 163:19
**feeling** 120:17
   125:8 136:15
   152:19,24
**fees** 131:20
**felt** 150:23,24,24
**fetus** 103:16 126:8
**fever** 117:22,23
**filing** 97:5
**fill** 103:20
**find** 138:6
**fine** 118:11
**finish** 99:3
**first** 98:3 103:25
   113:21 138:5,11
   139:3 144:18
   146:4 159:7,9
   160:24 161:6
**five** 104:7 118:10
**flushing** 96:6
**follow** 148:2,8
**following** 168:6
**follows** 98:16
**food** 124:18

**foods** 116:24
**force** 97:9,21
**foregoing** 165:8
**form** 97:15 110:23
   156:9 164:20
   167:13,19
**forth** 150:11
   166:11
**fortunately**
   130:22
**found** 129:24
   130:3
**four** 104:7 164:22
   167:14
**frame** 135:16
**free** 128:4
**frequently** 104:19
**friend** 111:14
**friends** 120:10
   143:22 160:15
**full** 142:23
**further** 97:13,17
   163:21 166:15
**future** 138:14

**g**

**g** 159:20
**general** 143:8
   154:13,14
**gestures** 113:7
   114:12
**getting** 107:8
   135:25 144:10
   151:20,23 153:3
   159:3
**gil** 96:11 98:20
   100:4,7,11,20
   102:25 104:4,14
   104:21 105:3,13
   106:19 108:7,10
   108:23 109:4,12
   118:7,11,13,23

[gil - k]                                                                                          Page 5

128:19,23 129:7
133:6,11 135:17
135:21 138:19,24
139:23 140:24
141:4,6,13,16
144:21 145:2,4,6,9
148:21,25 149:5
154:21,25 155:10
155:13,19 156:12
156:15,17,23,25
157:17,20 162:12
163:16,20 164:11
167:5
**give**  114:13 116:15
122:24 126:20
147:6,17
**given**  113:18
118:15 119:19
140:12 147:3,4
166:13
**giving**  107:5
**go**  99:7,22 100:2
100:19,22 101:8
101:14 103:20
106:7,9 117:17
120:5,15,22
124:22,25 129:15
130:12,18 131:18
136:12 138:9
141:24 146:7
150:10,21 151:12
152:10,11,13
161:10
**going**  98:23 99:3
101:19 108:21
109:2,4,6 114:12
114:25 116:6
124:16 131:7,17
143:23 154:12
158:13 159:18
160:18

**gonna**  125:10,10
125:13 140:9
**good**  98:21 116:20
143:9
**gotten**  142:23
151:25
**guarantee**  140:15
141:19 142:25
**gyn**  101:9 106:7
138:14,23 141:25
154:18
**gynecological**
106:2

**h**

**h**  98:11 160:20
164:23 167:14
**hand**  113:7 114:11
115:11 166:21
**handwriting**
111:3,4,10
**happen**  139:22
**happened**  125:4
137:25 139:5,8
141:20 142:2,5
143:10 146:10
147:11 148:7
**header**  109:17
**health**  99:23 143:6
**healthy**  140:16
141:20
**heard**  140:22
**heart**  142:16,16
**heartbeat**  140:23
**heavy**  121:10
**heidell**  96:9
**held**  95:17 118:12
141:5 168:10
**hello**  98:22
**help**  103:17
**hepatitis**  103:14
153:22 163:7

**herbal**  103:16
**hereinbefore**
166:11
**hereto**  97:4
**hereunto**  166:21
**history**  99:8
156:20
**hold**  105:14 117:3
**holding**  115:15
**home**  114:12,14
116:6 124:18
137:19 151:24
152:3,4,6,9,10,12
152:15
**hormone**  153:9
**hormones**  153:15
153:20,23
**hospitalizations**
101:12
**hospitals**  125:2
136:13
**hour**  107:11
**hours**  116:21,22
141:22
**hurting**  121:14
**hurts**  122:10,10

**i**

**illness**  101:5,17
**illnesses**  101:15
**images**  142:17
**imbalance**  153:9
**immediately**  126:6
**included**  145:8
**including**  144:25
163:25
**index**  95:5
**information**
146:22 164:19
167:12
**informed**  109:13
164:12 167:10

**ingredients**  124:17
**inside**  124:13
**instructions**
118:16 119:15
161:19
**insurance**  102:16
102:20 103:3
**interested**  166:18
**interpret**  98:6
116:15
**interpreter**  96:16
98:2,15 102:22
105:18 107:25
108:3 116:15
117:3,8 118:6
126:25 135:15,19
135:24 138:15,21
141:10,14 162:10
163:14
**interrogatories**
164:2
**invoice**  155:24,25
**invoices**  132:8
**involved**  146:17
**irregular**  106:13
**issue**  110:5
**issues**  150:2

**j**

**jae**  96:6
**january**  95:11
144:14 145:25
148:17 166:22
167:17 168:10
**job**  107:4,9
**journal**  157:14
**jsl**  96:4
**justice**  97:11

**k**

**k**  98:11

**keep** 146:24 147:7
163:23
**kept** 121:14 125:6
127:7,10 152:6
154:12
**kim** 95:7 98:25
99:12 102:2,10
103:10 107:17,21
108:11,20 112:19
114:18 116:4
119:10,22 121:5
123:2,9,15 124:20
125:17 126:15
128:3,7,13 129:14
130:8 131:6,22
132:8,10,20,24
133:22 134:13
135:6,13,18 136:7
136:11,17 137:15
137:23 150:21
151:16 157:5,12
157:13 158:10
162:6,9 163:4,13
168:5
**kim's** 119:5,16
120:22 121:18,20
121:22 122:3
125:5 149:13
161:20
**kind** 112:3,15
127:14 150:25
152:15 153:8
159:6 161:11
**know** 104:16
105:17,20 108:16
110:2 112:22
113:13 117:21
122:2 125:13
128:16 138:8
140:11,21 152:21
153:25 160:10

161:3
**knowing** 133:18
**knows** 149:2
**korea** 102:11,18
103:3,19 120:2,12
120:21 129:15,23
130:12 131:2,3,18
132:21 136:12,18
137:16,20 138:2
145:12,12 146:4
148:16 149:10,14
149:15 150:3,9,13
154:18 158:10
161:25 162:5
167:17
**korean** 96:16 98:2
112:21 116:8
117:5 119:7
124:18 126:17
127:25 138:17
141:11,15

**l**

**latest** 129:3
**laughing** 152:21
**law** 96:4
**laying** 114:4
116:20
**leave** 131:12 147:9
152:9
**lee** 96:6,16 98:2
100:3,6,9,17 104:3
104:13,20,21
105:2,9 106:17,21
108:6,9 118:9
128:18,21 129:5
133:5,8 141:2
144:20,25 145:3,5
145:8 148:19,23
149:4 154:20,23
155:9,12,18
156:11,14,16,21

156:24 157:16,19
158:6
**left** 114:7 126:18
127:22 128:15
129:23 147:6
**legal** 148:18,23
149:2 167:17
**letters** 136:5
**level** 150:16
**life** 154:7
**light** 121:9
**lights** 134:18
**line** 109:25 167:3
168:12
**little** 121:11
151:24
**live** 138:12
**liver** 153:13,17,22
163:9
**llp** 96:9
**long** 99:18 113:13
113:16 118:3
131:13 152:4
**look** 101:4 119:2
155:21
**looked** 161:17,18
162:16
**looking** 110:21
111:16 145:15
**looks** 110:9 111:6
**lot** 146:22
**lower** 142:7
149:21,25 150:8
**lump** 102:13 150:6
163:6,9

**m**

**m** 98:11 138:22
**m.d.** 95:7 168:5
**machine** 126:5
**main** 96:10

**making** 136:21
**male** 154:6
**malpractice**
104:24 156:18
**marijuana** 105:8
105:17,22
**mark** 109:5
110:12,22 115:2
157:2
**marked** 118:24
158:18 164:14,17
164:20,22
**market** 124:18
127:25 152:12
**marriage** 166:17
**matter** 95:17
166:19 168:9
**meals** 124:11,15
**mean** 101:21
114:20 152:11
153:5 160:14
**meaning** 99:21
115:18 138:18
**media** 157:25
158:4
**medical** 99:8
100:2,22 104:23
105:25 107:18
124:22 131:2
151:4 154:10
156:18,19 162:7
**medication** 103:8
107:24
**medications** 103:6
103:12,13 117:15
119:20,21 137:14
151:9
**medicine** 108:17
**medicines** 103:17
**meeting** 152:14,17
152:20

| | | | |
|---|---|---|---|
| mental 150:19 | money 131:19 | notes 157:5,12,23 | 103:23 106:11 |
| 151:2,5 | 132:10,12,14,17 | notice 164:2 | 110:4,11,19 111:5 |
| mention 128:5 | 134:17,22,25 | numbers 125:12 | 111:21 112:4 |
| 140:5 | 135:2,12,20,23,25 | nurse 121:24 | 114:25 115:21 |
| mentioned 102:12 | month 129:25 | 122:4,6,13 123:13 | 116:17,18,23 |
| 122:23 129:10 | morning 98:21 | 126:17,24 | 118:7,23 119:8,19 |
| 133:21 | murphy 96:9 | nurses 112:25 | 120:9,19 135:4,24 |
| messages 136:5 | **n** | 119:5 | 136:4 138:21 |
| messed 123:25 | n 96:2 98:11 167:2 | **o** | 140:7,17 141:4 |
| metadata 164:3 | name 102:17 | o0o 96:19 98:9,18 | 142:9 143:10 |
| minhye 95:4,16 | 111:7 138:13 | 164:24 165:16 | 144:15,17 146:2 |
| 98:7 99:1 100:1 | nearby 138:12 | oath 97:9 | 149:24 153:21 |
| 101:1 102:1 103:1 | 152:12 | ob 101:9 106:7 | 155:19 159:18 |
| 104:1 105:1 106:1 | need 103:20 | 138:14,23 141:25 | 160:6,18 164:10 |
| 107:1 108:1 109:1 | 105:14 117:14 | 154:18 | old 139:17 |
| 110:1 111:1 112:1 | 122:17,18 127:11 | objection 100:3,5 | once 104:17 105:5 |
| 113:1 114:1 115:1 | 140:24 144:23 | 100:15 104:3,13 | 106:10 114:6 |
| 116:1 117:1 118:1 | needed 126:10 | 104:20,25 105:9 | 120:23 137:25 |
| 119:1 120:1 121:1 | 127:14,15 128:14 | 106:17 108:6,8 | 145:11,12 |
| 122:1 123:1 124:1 | 130:9,12 137:10 | 128:18,20 133:5,7 | ones 135:7 |
| 125:1 126:1 127:1 | 137:19 139:9 | 144:20 148:19 | online 162:23 |
| 128:1 129:1 130:1 | needs 129:11 | 154:20,22 155:9 | open 163:23 |
| 131:1 132:1 133:1 | never 102:6 | 155:11 156:11,13 | order 100:9 |
| 134:1 135:1 136:1 | 105:23 106:22,23 | 156:18 157:16,18 | 122:17 124:11 |
| 137:1 138:1 139:1 | 112:2,14 | 158:6 | ordering 124:15 |
| 140:1 141:1 142:1 | new 95:2,19 96:6 | objections 97:14 | orders 164:8 |
| 143:1 144:1 145:1 | 96:11 98:5,14 | obtain 149:3 | originally 129:22 |
| 146:1 147:1 148:1 | 136:13 165:2,4 | offer 128:3 | outcome 166:18 |
| 149:1 150:1 151:1 | 166:3,8 | offered 128:25 | outstanding |
| 152:1 153:1 154:1 | nine 139:17 | office 119:6,16 | 163:24 |
| 155:1 156:1 157:1 | non 112:21 | 120:22 121:18,20 | **p** |
| 158:1 159:1 160:1 | normal 125:12 | 121:23 122:4 | p 96:2,2 98:11 |
| 161:1 162:1 163:1 | 143:2,17 | 124:21 125:5 | p.c. 96:4 |
| 164:1 165:7,20 | normally 137:8 | 132:2 135:11,14 | page 109:18 |
| 168:4,22 | northern 96:5 | 136:7 161:20 | 110:12,14,24 |
| minute 105:14 | notary 95:18 | officer 97:8 | 111:16,17 164:16 |
| minutes 118:10 | 97:20 98:4,13 | offices 96:4 154:19 | 164:19 165:13 |
| mirae 138:22 | 166:7 | oh 105:20 110:4 | 167:3,11,12 |
| monetary 155:14 | noted 164:25 | 140:5 | 168:12 |
| 155:15 | 168:7 | okay 99:2,10 | pages 165:9 |
| | | 100:20 102:8,15 | |

[paid - public]                                                          Page 8

**paid** 107:8,11,13
  107:15 131:20
  155:22
**pain** 101:2 117:25
  123:14,14,20,21
  125:8 136:19,21
  136:24 137:6,13
  142:7,7 149:10,12
  149:21,21,25,25
  150:5,8 153:10
**pap** 106:10,12
**paper** 146:23
  147:14
**papers** 146:25
  147:12
**paperwork** 99:16
  108:20
**park** 95:4,16 98:7
  98:21 99:1 100:1
  101:1 102:1 103:1
  104:1 105:1,10
  106:1 107:1 108:1
  109:1,2,9,21 110:1
  111:1 112:1 113:1
  114:1,25 115:1
  116:1 117:1 118:1
  118:14 119:1
  120:1 121:1 122:1
  123:1 124:1 125:1
  126:1 127:1 128:1
  129:1 130:1 131:1
  132:1 133:1 134:1
  135:1 136:1 137:1
  138:1 139:1 140:1
  140:25 141:1,7
  142:1 143:1 144:1
  144:15 145:1
  146:1 147:1 148:1
  148:15 149:1,9
  150:1 151:1 152:1
  153:1 154:1 155:1

156:1 157:1,4
  158:1,13,17 159:1
  160:1 161:1 162:1
  162:4 163:1,20
  164:1 165:7,20
  167:16 168:4,22
**part** 139:24
**parties** 97:4
  166:16
**parts** 126:9,16,18
**patient** 109:25
  110:23 164:19
  167:12
**pause** 105:16
**pay** 131:22 132:4
  155:4,8 156:3
**payment** 132:8
**people** 152:14,17
  152:20 161:3,5
**perform** 142:9
  151:19
**performed** 107:21
  112:18 113:10
  140:4 141:8
  147:21 155:5
  162:20
**period** 121:3
  123:18,23 124:19
  125:2 136:16
  137:4,14 149:20
  150:23 152:2
**person** 113:6
  140:22
**personally** 153:3
**pharmacy** 103:19
**phone** 159:11,13
**phones** 159:14
**phonetic** 138:16
  138:20
**photo** 159:15

**photos** 158:14
  164:22 167:14
**physical** 149:16
  153:6,7
**physically** 136:16
**physician** 99:21
**picture** 115:6,8,12
  158:20,23,25
  159:2,5,10,19,22
  159:24 160:2,3,7
  160:11,14,22,23
  160:25 161:4,8,13
  161:18
**pictures** 160:19
  161:17,20,23
**pill** 133:15
**pills** 103:10
  127:24 133:2
  140:14 142:24
**pittoni** 96:9
**place** 120:7 124:9
  160:4,8,9,24
**plains** 96:11
**plaintiff** 95:5,16
  96:5
**plaintiff's** 164:6
**please** 108:4
  116:14 117:20
  118:3 162:14
**point** 102:5 103:5
  129:3 138:8
  145:17
**possibility** 107:18
**possible** 124:13
  142:19 162:19
**postoperative**
  148:2,8
**precautions**
  115:16
**pregnancies** 156:7

**pregnancy** 109:14
  154:11 162:20
  164:13 167:10
**pregnant** 104:17
  129:24 130:3
**prescribed** 117:15
  117:16
**prescription** 103:7
  119:24
**prescriptions**
  103:21 119:20
**present** 96:16
**presumably**
  148:25
**preventing** 136:24
  137:7
**previously** 118:24
**primary** 99:21
**printed** 111:7,9
**prior** 102:3 108:21
  126:25 164:3
**privacy** 156:16,17
**private** 154:7
**privilege** 145:5
**privileged** 145:7
**procedure** 99:16
  108:21 112:18,23
  113:10,19,20
  114:9,15,19 128:4
  128:10,25 131:8
  132:16,18,20
  149:9 155:5
**produce** 164:3,8
**products** 124:3
**proof** 161:11
**proper** 100:15
  129:9
**providers** 124:22
  131:2 162:7
**public** 95:18 97:20
  98:4,13 166:7

**pulling** 108:24
**put** 126:4

**q**

**queens** 109:15
**question** 100:8,11
100:14,16 104:15
106:3,6 107:20
108:4,5 110:3
126:23 127:5
128:12,24,24
129:8,9 134:11
135:4 142:19
145:10 148:22
155:17,20 162:11
162:15
**questioning** 98:24
**questions** 107:16
127:6 163:21

**r**

**r** 96:2,11 98:11
138:22 166:2
**read** 108:5 116:10
116:11,14 118:17
119:6 139:24,25
147:5,13 162:13
162:15 165:8
168:12
**reading** 116:19
**realized** 130:10,11
145:13
**really** 105:11
106:4 126:22
127:4,21 139:15
**recall** 99:15
112:16 118:14
**receipt** 156:2
**receipts** 132:7
155:23
**receive** 119:15
136:4

**received** 158:14
162:9 164:7
**recess** 118:12
141:5
**recollection**
111:23
**record** 105:16
107:25 108:2
109:12 166:13
**recordings** 158:9
**records** 109:16
132:19 164:4
**recovery** 113:24
114:2
**refresh** 111:22
**regarding** 98:24
99:5
**regards** 115:17
**registration**
110:23 164:20
167:13
**regular** 99:23
106:7
**related** 106:2
150:14 154:10
166:16
**relations** 117:10
**relevance** 104:3
155:12 156:14
**relevant** 100:13
104:5,14,23 105:2
105:3 106:20
155:16 156:15,22
156:23
**remember** 99:19
101:18,19,24
102:17 107:5
113:15,22 119:4,8
131:25 145:23
146:21 147:19

**remove** 102:13
103:16 162:21
**removing** 162:24
**repeat** 106:3 108:4
162:11
**reporter** 95:22
116:16
**representing**
145:18
**requested** 167:6
**research** 162:24
**reserved** 97:15
**reserving** 163:22
**respective** 97:4
**response** 134:10
155:18
**responses** 163:25
**rest** 116:21 120:6
**resting** 152:3,5,6
**results** 106:13
**return** 119:25
129:15,18,21
132:10 147:25
**returned** 120:12
120:21 130:25
131:20 134:24
135:11 136:18
137:16 138:2
**reviewed** 111:21
112:4
**rhythm** 153:7
**rid** 147:14
**right** 102:17 110:5
118:20 126:10,19
127:12 129:11
131:13 133:24
137:10 138:3,24
141:12 149:5
156:25 163:15,23
**risks** 99:17 146:17

**rockland** 166:5
**role** 112:22
**room** 112:17
113:24,25 114:3
**rosemom** 101:23
141:25 142:3,14
143:3 144:4,5
145:22 146:5,12
151:17,22 154:9
154:15,16,19
155:5 161:24
162:3
**ruling** 149:6,8
157:2,3
**rulings** 167:15

**s**

**s** 96:2,6 168:12,12
**saw** 118:20 147:24
161:6
**saying** 111:8 112:8
112:12 140:17
160:13
**says** 109:17,25
116:10
**scars** 151:15
**schedule** 138:2
144:6 146:5
**scheduled** 123:3,8
144:9
**screen** 109:7,8,10
115:4,6 118:8,22
158:16,21 159:21
160:21
**scrolling** 109:19
110:11,19
**sealing** 97:5
**seats** 130:14,23
**second** 108:24
111:17 117:4
128:4,9,14 131:4,7
137:19 138:3

139:9 152:5 155:6
**seconds** 126:5
**see** 109:9,21 110:5
110:6,16,18,25
111:18,20 114:18
114:24 115:5
122:25 124:21
125:13 131:3
134:19 139:11
158:20 159:22
161:4
**seek** 151:4
**seen** 163:4
**sent** 160:15
**set** 123:10 166:11
166:21
**seven** 116:21,22
**sexual** 117:10
**sexually** 106:16,23
**share** 118:8
159:15 160:11
161:13
**shared** 160:13
**sharing** 109:8
115:4 118:22
158:16 159:21
160:21
**sheet** 168:2
**shock** 139:19
**short** 149:20
150:23 151:25
**shorthand** 95:22
**show** 109:2,6
115:2 118:19
158:13,25 159:18
160:18
**showed** 125:25
142:17
**shower** 117:12
**showing** 158:17

**shown** 165:12
**sick** 99:23 100:12
100:21,25
**sickness** 100:25
101:3
**side** 122:16
**sightseeing** 120:15
**sign** 108:20 112:9
112:11 158:5
**signature** 109:22
109:24 110:4,6,10
110:16,25 111:5,6
111:9,18 112:6,10
112:13 166:24
**signed** 97:7,10,19
97:21 99:15 112:2
112:14 158:3
**signing** 111:23
**signs** 140:3
**situation** 152:18
**six** 116:21,22
**skin** 123:24
149:22 150:2,4
**slowly** 116:14
**smear** 106:10
**smears** 106:12
**smoke** 105:7
133:14
**smoking** 103:24
104:2,6 105:21
133:3
**social** 157:25
158:4
**somebody** 121:22
**someplace** 154:15
**sorry** 105:13,15
108:23 110:20
139:23 141:13
145:2 150:24,24
152:11 162:11

**source** 108:13
**speak** 121:21
**speaking** 117:5
**specialist** 163:8
**specific** 101:17
119:23 122:25
**specified** 100:6
**spoke** 122:4,7
123:12 139:21
**ss** 165:3
**start** 103:25
116:13
**started** 104:8
145:15
**state** 95:19 98:5,13
165:2 166:3,8
**states** 95:2 107:2
110:13 129:18
**stay** 133:23 147:7
152:4
**stayed** 151:24
152:3,15
**staying** 120:6,7,8
124:10
**stipulated** 97:2,13
97:17
**stomach** 121:14
122:9 123:13,20
136:20 137:7
**stopped** 133:16
**stopping** 118:8
**street** 96:10
**strenuous** 115:19
**stress** 137:11
150:15,16,18,19
151:3,5,9 153:11
153:15 163:12,15
**stressed** 163:18
**stressing** 127:10
**stuff** 115:19
152:21

**subject** 165:11
**subscribed** 165:22
168:23
**successful** 122:15
125:7 127:8
148:11,13
**sure** 104:24 106:5
112:24 118:21
125:11 162:12
**surgeries** 102:5,7
102:9 149:19
150:22 151:25
153:4,16,23 154:2
154:4
**surgery** 101:25
102:9,10,13 103:9
103:15 107:24
108:16 113:23
114:20,22 115:18
116:3,25 117:13
117:20 119:13
121:8,15,19 122:5
122:11,15,19
124:4,20 125:7
126:10,19 127:7
127:12,14,16,20
128:14 129:4
130:9 131:4,14,18
131:21 132:3
133:19,20,24
137:10,20 138:4,7
139:9,16,21 140:3
140:12 144:3,6,8
144:10,13 145:22
146:5,7,11,14,15
146:17,19 147:13
147:20,23 148:6
148:10,13 149:13
149:15 150:2,8,12
150:21 151:16,17
151:21,23 152:5,7

[surgery - two] Page 11

152:25 153:18
159:3,9 160:5,24
161:10,12 162:6
162:17 163:3,13
surgery's 122:9
surgical 108:19
109:15 111:13,24
113:9,14 114:7
116:3 119:17
161:21
sworn 97:7,10,21
98:3,12 165:22
166:11 168:23
symptoms 117:20
123:22 149:16
151:2

**t**

t 166:2,2
take 103:18
105:14,15 114:14
117:12,14 128:14
130:24 132:21
137:13 138:19
141:2 151:8 157:4
158:8,23 159:4,10
159:24 160:2,6
161:7,19,23 162:2
taken 103:12
157:12
takeout 124:12,15
talk 114:8 143:21
146:16 147:22
talking 100:24
141:11,15
tampons 117:2
tell 122:6,21
125:24 126:15
127:18 128:7,15
131:6 133:17
137:18 139:14,18
140:2 142:13

143:4 144:16
146:10,20 153:14
153:17,21 154:3
162:18
telling 154:5
terminated 154:11
termination
109:14 164:13
167:10
testified 98:15
99:11 102:15
103:23 106:25
113:17 132:25
testimony 98:6
99:4 107:6 165:9
166:13 168:8
testing 141:8
text 136:5
thank 163:20
164:11
therapy 151:12,13
thereto 97:19
thing 113:21
116:12 133:10
142:5 159:7,8
things 120:18
152:13 154:6
think 101:10
104:6 112:24
113:16 114:16
115:23 116:5
119:4,11 127:15
139:20 143:18
144:13 147:24
148:5 149:18
150:6 153:2,2
163:17
thinking 149:19
thought 130:9
161:9

three 112:5 126:5
129:22 161:16
threw 147:15
ticket 129:15,18
129:21 130:7,16
130:17
tickets 130:15
time 97:15 99:18
101:6,16,20
102:23 105:24
107:4,10,13,13,21
116:15,16 117:16
120:6,11,16,20
122:24 123:10,14
123:24 124:7
125:2 127:23
128:8 129:13,23
130:11 131:13
132:23 133:4,12
134:16 135:10,16
135:21 136:16
137:4,9,14 139:4
140:23 148:15
149:20 150:23
152:2 155:2
157:10,11,21,22
159:7,9 161:6
163:18,22 164:25
167:16
timeline 129:2
times 154:24
today 98:24
told 102:21 119:6
121:24 122:17
123:4,6 125:17
128:13 131:13
133:13,22 134:14
135:8 139:7,9
140:18 141:18
142:4,6,15,22
143:7,11,14,15,17

153:19
tomorrow 126:10
126:19 129:11
top 109:17 110:13
140:13
total 131:23
transcript 165:11
168:8
translated 138:17
transmitted
106:16,23
traveled 107:2
treat 101:5 151:9
treated 157:11
treatment 98:25
100:2,23 131:23
132:20 151:5,7
154:10 157:5,13
158:9,10 162:9
163:5
trial 95:15 97:15
tried 105:23
130:16
trips 118:3 120:15
trouble 150:4
troubled 149:22
true 165:11
166:12
trust 127:21
130:10 134:4
truthfully 98:6
twice 105:5
two 105:5 112:20
116:25 117:17
120:24 121:3,7,25
122:18 123:18,22
124:19 126:5
130:23 143:20
146:3 148:5
149:19 150:22
151:25 153:4

[two - zoom]                                                    Page 12

| | | |
|---|---|---|
| 162:5 164:19 | waking 116:22 | 166:10,14,20 |
| 167:12 | walk 136:22 | woke 113:22 114:3 |
| **tylenol** 117:25 | **walking** 151:21 | 114:6 |
| **type** 101:3 119:15 | **want** 99:7 116:11 | **won** 107:11 |
| 136:6 140:11 | 138:16 144:15 | **word** 105:19 |
| **u** | **wanted** 138:16 | **wore** 159:8 |
| **ultrasound** 125:15 | 139:10 142:8 | **working** 107:3,9 |
| 125:19,21,25 | 143:15 161:11 | 107:14 |
| 126:4,12 139:10 | **water** 117:6 | **worn** 159:6 |
| 139:12 141:9 | **way** 107:23 132:5 | **would've** 122:19 |
| 142:11,14,18 | 133:23 152:23 | **write** 116:17 |
| 148:9 | 166:18 | **written** 116:7 |
| **understand** | **weak** 117:24 | 146:23 157:22 |
| 105:11 106:4 | **week** 121:3,16 | **wrong** 133:19 |
| 110:3 128:11 | 122:5,20 123:5,18 | 138:7 139:11 |
| **united** 95:2 107:2 | 123:22 124:19 | 161:10 |
| 129:17 | 128:17 131:15 | **wrote** 157:6,9 |
| **use** 105:18 158:3 | **weekly** 104:18 | **x** |
| **usual** 151:20 | **weeks** 105:6 | **x** 95:3,9 167:2 |
| **v** | 116:25 117:17 | **y** |
| **vacation** 107:4,12 | 120:25 121:25 | **y** 98:11 |
| 107:13 | 122:18 129:23 | **year** 106:10 |
| **vagina** 126:13 | 139:17 148:5 | **years** 104:7 152:7 |
| **vaginal** 121:6 | **went** 100:12 | 152:8 |
| **vague** 126:21 | 101:10 106:11 | **yesterday** 99:4,9 |
| **verified** 148:10 | 111:12 114:11 | 99:11 102:15,21 |
| **video** 158:9 | 122:11 123:5,15 | 103:23 106:25 |
| **videoconference** | 124:21 125:4,6 | 107:6,16 108:10 |
| 95:18 | 129:17 130:15,21 | 113:17 133:9 |
| **visiting** 120:10 | 134:16,22 135:20 | **york** 95:2,19 96:6 |
| **visits** 132:2 143:20 | 135:23 136:11 | 96:11 98:5,14 |
| **vomit** 123:19 | 138:5,11 139:3,5,7 | 136:13 165:2,4 |
| **vomiting** 123:17 | 139:11 141:22,25 | 166:3,8 |
| **w** | 142:2,4 146:2,6,11 | **z** |
| **wait** 128:17 | 153:18 161:24 | **zoom** 95:17 |
| **waited** 130:22 | 162:4 163:8 | |
| **waiting** 160:5 | **whereof** 166:20 | |
| 161:2,2 | **white** 96:11 | |
| **waived** 97:6 | **withdrawn** 137:24 | |
| | **witness** 117:5 | |
| | 164:10 165:7 | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------ x

MINHYE PARK,

                    Plaintiff,

        -against-

DAVID DENNIS KIM, M.D.,

                  Defendant.

------------------------------------------------ x

      DEPOSITION of the Defendant, DAVID DENNIS

KIM, M.D, taken by the Plaintiff, pursuant to order,

held remotely via Zoom/LegalView Videoconferencing,

on January 26, 2022, at 10:03 a.m., before a Notary

Public of the State of New York.

*************************************************

```
 1   A P P E A R A N C E S:
 2           JAE LEE LAW P.C.
 3                   Attorneys for Plaintiff
 4                   626 RXR Plaza
 5                   Uniondale, New York 11556
 6
 7           BY:   CAROL STONE, ESQ.
 8
 9
10           HEIDELL PITTONI MURPHY & BACH, LLP
11                   Attorneys for Defendant
12                   99 Park Avenue
13                   New York, New York 10016
14           BY:   ALEJANDRA GIL, ESQ.
15
16
                     xxxxx
17
18
19
20
21
22
23
24
25
```

```
 1
 2                S T I P U L A T I O N S
 3   IT IS HEREBY STIPULATED AND AGREED by and between.
 4   the attorneys for the respective parties herein,
 5   that filing, sealing and certification, and the same
 6   are, hereby waived.
 7
 8          IT IS FURTHER STIPULATED AND AGREED that all
 9   objections except as to the form of the question,
10   shall be reserved to the time of the trial.
11
12          IT IS FURTHER STIPULATED AND AGREED that the
13   within deposition may be signed and sworn to by an
14   officer authorized to administer an oath, with the
15   same force and effect as if signed and sworn to
16   before the Court.
17
18
19                      xxxxx
20
21
22
23
24
25
```

```
 1
 2          IT IS FURTHER STIPULATED AND AGREED by
 3    and between counsel for all parties present that
      Pursuant to CPLR section 3113(d) this deposition is
 4    being conducted by video conference, that the court
      reporter, all counsel, and the witness are all in
 5    separate remote locations and participating via
      Videoconferencing (LegalView/Zoom) meeting under the
 6    control of Lexitas Court Reporting Service, that the
      officer administering the oath to the witness need
 7    not be in the place of the deposition and the
      witness shall be sworn in remotely by the court
 8    reporter after confirming the witnesses identity,
      that this video conference will not be recorded in
 9    any manner and that any recording without the
      express written consent of all parties shall be
10    considered unauthorized, in violation of law, and
      shall not be used for any purpose in this litigation
11    or otherwise.
12
13          IT IS FURTHER STIPULATED that exhibits may be
      marked by the attorney presenting the exhibit to the
14    witness, and that a copy of any exhibit, presented
      to a witness shall be emailed to or otherwise in
15    possession of all counsel prior to any questioning
      of a witness regarding the exhibit in question.  All
16    parties shall bear their own costs in the conduct of
      this deposition by video conference, notwithstanding
17    the obligation by CPLR to supply a copy of the
      transcript to the deposed party by the taking party
18    in civil litigation matters.
19
20                        xxxxx
21
22
23
24
25
```

```
 1              Dr. D. Kim
 2   D A V I D   D E N N I S   K I M ,
 3        having been first duly sworn before a Notary
 4        Public of the State of New York, was examined
 5        and testified as follows:
 6   BY REPORTER:
 7   Q        State your name for the record.
 8   A        David Dennis Kim.
 9   Q        What is your address?
10   A        Work address:  ███████████████
11   ███████████████████
12   EXAMINATION
13   BY MS. STONE:
14   Q        Good morning, Doctor.  My name is
15   Carol Stone.  I am questioning you in this
16   deposition on behalf of the plaintiff, Minhye
17   Park and her lawyer is Jae Lee, Esquire.  I'm
18   counsel to that firm.
19        I'm going to ask you some questions
20   this morning.  Have you ever been deposed
21   before, doctor?
22   A        Yes.
23   Q        How many times have you been deposed
24   before?
25   A        Four.
```

```
 1              Dr. D. Kim
 2    Q      Were you deposed as a defendant or
 3    something else?
 4    A      Defendant.
 5    Q      When was the last time you were
 6    deposed before today in other cases, I'm
 7    assuming?
 8    A      One year ago.
 9    Q      The four times that you were deposed
10    before today, were those four different cases
11    or something else?
12    A      They were four different cases.
13    Q      Were you the defendant in each of
14    those four cases?
15    A      Yes.
16    Q      Did any of those cases resolve?
17    A      Yes.
18    Q      Were they medical malpractice cases?
19    A      Yes.
20    Q      Were you found neglect in any one of
21    those cases?
22    A      No.
23    Q      Did any of the cases go to trial?
24    A      Yes.
25    Q      Is it your testimony that there was
```

```
 1              Dr. D. Kim
 2   not a finding during the trial of a departure
 3   from the standard of care against you?
 4   A      Can you repeat the question please.
 5              (At this point in time, the
 6              requested portion of the record was
 7              read back by the reporter.)
 8   A      Yes.
 9              MS. GIL:  Objection to form,
10              but you answered.
11   Q      How long have you been at the address
12   you testified to, Doctor?
13   A      Since 2003.
14   Q      Doctor, by the way, since you've been
15   deposed before, I'm not going to go through
16   all the rules.  I'm just going to ask you to
17   allow me to finish my question and then to
18   answer it verbally.  Also, if you need a
19   break at anytime just let me know.  I ask
20   that if there's an open question you do your
21   best to answer the open question and anytime
22   you can have a break after that.  Is that
23   acceptable to you, Doctor?
24   A      Yes.
25   Q      Where did you attend medical school?
```

```
 1                    Dr. D. Kim
 2   A       St. George's University Medical
 3   School.
 4   Q       Where is that located?
 5   A       In New York and in the Caribbean.
 6   Q       Is there a particular country in the
 7   Caribbean where that school was located?
 8   A       Grenada and St. Vincent's.
 9   Q       Did you successfully complete your
10   study at that school?
11   A       Yes.
12   Q       What year did you graduate?
13   A       1996.
14   Q       Doctor, do you speak any other
15   language besides English?
16   A       A little.
17   Q       What other language do you speak a
18   little besides English?
19   A       Spanish and Korean.
20   Q       Incidentally, is there one Korean
21   language or are there different types?  Sort
22   of like China has different languages in
23   different areas, do you know that or not?
24   A       I don't know.
25   Q       How did you learn Korean?
```

```
 1              Dr. D. Kim
 2    A      My parents are both Korean.  And I've
 3    gone to Korean schools throughout my life.
 4    Q      When did you attend Korean school?
 5    A      I don't recall the exact years but
 6    when I was in middle school and high school.
 7    Q      Is there any one else practicing
 8    medicine at the address that you put on the
 9    record, Doctor?  Do you have any partners,
10    associates?  Et cetera.
11    A      Not at this time.
12    Q      In 2017 did you have any partners or
13    associates in your practice at that time?
14    A      No.
15    Q      You were a solo practitioner then in
16    2017?
17    A      Yes.
18    Q      Doctor, after graduating medical
19    school, did you serve a residency?
20    A      Yes.
21    Q      Where was that?
22    A      In 1996 to 1997 I attended a residency
23    at Albert Einstein in the Bronx.
24    Q      In what area of medicine did you study
25    during that time?
```

```
 1              Dr. D. Kim
 2   A      Internal medicine.
 3   Q      After studying internal medicine, did
 4   you go on to study any other area of
 5   medicine?
 6   A      Yes.
 7   Q      I'm sorry.  In a residency?
 8   A      Yes.
 9   Q      Where was that?
10   A      At Flushing Hospital Medical Center.
11   Q      What years did you study at Flushing
12   Hospital?
13   A      From 1998 to 2003.
14   Q      And what area of medicine did you
15   study and train in at that time?
16   A      Obstetrics & gynecology.
17   Q      Did you successfully complete your
18   residency in obstetrics & gynecology at
19   Flushing Hospital Medical Center?
20   A      Yes.
21   Q      Are you board certified in any area of
22   medicine?
23   A      Yes.
24   Q      What area of medicine are you board
25   certified in?
```

```
 1                  Dr. D. Kim
 2    A     Obstetrics & gynecology.
 3    Q     When did you become so certified?
 4    A     2009.
 5    Q     Between 2009 and 2017, have you been
 6    continuously board certified in the area of
 7    obstetrics & gynecology?
 8    A     Yes.
 9    Q     Are you licensed to practice medicine
10    in the State of New York?
11    A     Yes.
12    Q     What year did you become so licensed?
13    A     I believe it was 2003.
14    Q     Have you been continuously licensed in
15    the State of New York in medicine since 2003?
16    A     Yes.
17    Q     Are there any other states that you
18    are licensed to practice medicine in?
19    A     No.
20    Q     Did you start any fellowships in the
21    area of obstetrics & gynecology after
22    completing your residency?
23    A     No.
24    Q     What year did you begin your practice?
25    In other words, you already testified as to
```

```
 1              Dr. D. Kim
 2   your business address.
 3           Was that your first office as a
 4   privately practicing OB/GYN?
 5   A      Yes.
 6   Q      When did that begin?
 7   A      2003.
 8   Q      In 2003 did you have any privileges at
 9   any hospital or medical center?
10   A      Yes.
11   Q      Which one or ones?
12   A      Flushing Hospital Medical Center.
13   Q      Do you have any teaching appointments
14   at any hospital or medical center?
15   A      Not at this time.
16   Q      In 2017 did you have any teaching
17   appointments at a medical center or hospital?
18   A      No.
19   Q      Did there come a time that you
20   rendered medical care and treatment to the
21   plaintiff, Minhye Park?
22   A      Yes.
23   Q      Did you review any records prior to
24   this deposition regarding Miss Park?
25   A      Yes.
```

```
1                    Dr. D. Kim
2     Q      Can you tell me what medical records
3     you reviewed?
4     A      The medical records from my medical
5     office and the medical records from the
6     Ambulatory Surgical Care Center..
7               MS. STONE:  Ms. Torres, can we
8          mark the medical records as
9          Plaintiff's 1 for identification, and
10         the Ambulatory Surgical Care Center
11         record as Plaintiff's 2.
12              (At this point in time, medical
13         records was marked as Plaintiff's
14         Exhibit 1, for identification, as of
15         this date.)
16              (At this point in time,
17         Ambulatory Surgical Care Center record
18         was marked as Plaintiff's Exhibit 2,
19         for identification, as of this date.)
20    Q      Did reviewing the chart prior to this
21    deposition refresh your recollection
22    regarding Miss Park?
23    A      Yes.
24    Q      Do you also have an independent
25    recollection of treating Miss Park?
```

```
 1                   Dr. D. Kim
 2    A      Yes.
 3    Q      Can you tell me the date that you
 4    first met Miss Park.
 5    A      November 16, 2017.
 6    Q      Do you know how Miss Park came to your
 7    care?  Was she referred to you or something
 8    else?
 9    A      I don't recall.
10    Q      Did Miss Park speak English?
11    A      I don't recall.
12    Q      Did you have an assistance or a nurse
13    or somebody working for you that was fluent
14    in Korean?
15    A      Yes.
16    Q      And who would that be?
17    A      Minji Jeong, Rachel Nham, Victoria
18    Cho.  There might have been a fourth, but I
19    don't recall if she was working at that time.
20    Q      But the other three were working in
21    2017?
22    A      Yes.
23    Q      Is there a reason that you had three
24    and possibly four people employed that were
25    fluent in Korean?
```

```
 1                  Dr. D. Kim
 2   A      Yes.
 3   Q      Can you tell me what that reason is?
 4   A      They were all part-time employees and
 5   could not offer to work full time.
 6   Q      Did you have mostly a Korean
 7   population that came to your office?
 8   A      Yes.
 9   Q      What were Miss Park's complaints at
10   the first visit?
11   A      On November 16, 2017 she presented to
12   my office to request to have an elective
13   termination of pregnancy.
14   Q      Did you perform any tests on her at
15   that time?
16   A      Yes.
17   Q      What test did you perform?
18   A      I performed a physical examination.  I
19   drew blood for blood tests, and performed a
20   bedside sonogram.
21   Q      Did you do a pregnancy test, Doctor?
22   A      Yes.
23   Q      What were the results of the pregnancy
24   test?
25   A      The urine pregnancy test on that day
```

```
 1               Dr. D. Kim

 2   was positive for pregnancy.  And the blood

 3   test was also drawn that day to check her

 4   pregnancy hormone.

 5               MS. STONE:  Just to let you

 6         know, my internet connection is going

 7         in and out all morning.  I've tried to

 8         deal with the company that provides

 9         me, so it may happen again and

10         hopefully not but I can't do much

11         better other than try to fix it.

12   Q     Did you obtain the date of Miss Park's

13   last period?

14   A     Yes.

15   Q     And when was that?

16   A     The first day of her last period was

17   October 16, 2017.

18   Q     Based on that, how many weeks pregnant

19   was Miss Park when you first encountered her?

20   A     By her last menstrual period of

21   October 16, 2017, she was four weeks and

22   three days on November 16, 2017.

23   Q     Now, Doctor, you stated that you did a

24   bedside sonogram.

25         Were you able to visualize the
```

```
 1                    Dr. D. Kim
 2    pregnancy from the sonogram?
 3    A       The bedside sonogram did show evidence
 4    of a gestational sac.
 5    Q       Was that evidence of a pregnancy?
 6    A       The evidence of a pregnancy was
 7    confirmed by the urine pregnancy test that
 8    was positive that day.
 9    Q       Did you have a conversation with
10    Miss Park with respect to her desire to have
11    an elective termination of pregnancy?
12    A       Yes.
13    Q       What was the sum and substance of that
14    conversation?
15    A       I explained to her the risks and
16    benefits of her option to terminate her
17    pregnancy.
18    Q       What options did you explain to her?
19    A       That she can terminate the pregnancy
20    by medicine or by surgery.
21    Q       What was the risk of terminating the
22    pregnancy by medicine that you explained to
23    Miss Park?
24    A       Pain.  Bleeding and/or retained
25    products of conception.
```

DEITZ Court Reporting... A Lexitas Company
800-678-0166

```
 1              Dr. D. Kim
 2   Q      What was the other option that you
 3   discussed with Miss Park?
 4   A      Surgery.
 5   Q      What were the risks that you advised
 6   her for having an abortion?
 7   A      Pain.  Bleeding.  Infection.
 8   Perforation of the uterus.  Retained products
 9   of conception and/or cervical laceration.
10   Q      Doctor, is it fair to say that there
11   are less risks of a medical abortion at the
12   stage of pregnancy that Miss Park was in when
13   you first met her over a surgical abortion?
14              MS. GIL:  Objection to form.
15          You can answer.
16   A      Can you repeat the question please.
17              MS. STONE:  Can you read it
18          back, Miss Torres.
19              (At this point in time, the
20          requested portion of the record was
21          read back by the reporter.)
22   A      Yes.
23   Q      Did you offer her a medical abortion?
24   A      No.
25   Q      Why is it that you did not offer her a
```

```
 1                Dr. D. Kim
 2   medical abortion?
 3   A      I explained to the patient I don't
 4   provide medical termination of pregnancies
 5   for a few reasons:  Number one, I'm not a
 6   prescriber for Mifepristone which is one
 7   medication that's given to patients for
 8   medical terminations of pregnancies.
 9          Number two, it's unpredictable when a
10   patient will respond to the medical
11   medications that they take for the
12   termination of pregnancy.  And if the patient
13   was to have any complications of heavy
14   bleeding or severe abdominal pain, it's very
15   hard for a lot of patients to be assessed
16   quickly either in the hospital emergency room
17   or my office.
18          Number three, if the patient doesn't
19   have medical insurance they sometimes will be
20   less likely or willing to go to the emergency
21   room for any complications in fear of medical
22   bills that they would incur.
23   Q      Did Miss Park have co-insurance, if
24   you know?
25   A      No.
```

                    Dr. D. Kim

1

2    Q      She did not.  Okay.

3          This third reason for not providing

4    the medical abortion, did you discuss the

5    cost, medical cost had she had a medical

6    abortion and had complications, did you

7    discuss with her the cost of that in the

8    emergency room?

9    A      It's my custom and practice to explain

10   that I do not provide medical terminations of

11   pregnancies.  If there were to be any

12   complications from a medical termination,

13   that that would need to be discussed with the

14   provider offering that service.

15         I explained to the patient if she was

16   to have a medical termination of pregnancy

17   and had any complications, that I would not

18   be able to help her and that she would need

19   to call the provider who was offering that

20   service, and if she had a problem and could

21   not reach that provider, she would need to go

22   to the nearest emergency room.

23   Q      Did you discuss with her the cost of

24   emergency room treatment for a person without

25   medical insurance?

```
 1                  Dr. D. Kim
 2   A      I don't recall.
 3   Q      In terms of Miss Park's history, did
 4   she give you any history that was significant
 5   to her pregnancy at the time that you met
 6   her?
 7   A      I don't understand your question.  I'm
 8   sorry.
 9   Q      Her medical history, were you aware of
10   her medical history?
11   A      Yes.
12   Q      What was that?
13   A      She reports to have had two first
14   trimester cervical terminations in the past.
15   She also mentioned that she smoked about a
16   half a pack of cigarettes a day.  She denied
17   any mental history.  She denied any previous
18   deliveries of pregnancies and reported no
19   drug allergies.
20   Q      Did she inform you that she was on
21   birth control?
22   A      Not on November 16, 2017.
23   Q      Did she tell you about what years her
24   previous two terminations of pregnancy were?
25   A      I don't recall.
```

```
 1              Dr. D. Kim
 2  Q      Did you consider that that part of her
 3  history to be any factor in whether she could
 4  have a surgical termination pregnancy with
 5  this pregnancy?
 6  A      Yes.
 7  Q      You did?  Can you explain that.
 8  A      If the patient had had two prior
 9  surgical terminations of pregnancies, that
10  with each subsequent surgery of the uterus,
11  there might be an increased risk of
12  developing scar tissue.
13  Q      Was there any evidence of scar tissue
14  during your examination of Miss Park that
15  day?
16  A      No.
17  Q      Did Miss Park ask for a termination of
18  pregnancy on that first date that she saw
19  you?
20  A      Yes.
21  Q      And what was your response to that?
22  A      That I would have to first confirm
23  that she was pregnant, obtain a history, and
24  perform physical exam and perform a sonogram.
25  Q      And is that what you did on that day?
```

```
 1                  Dr. D. Kim
 2   A      Yes.
 3   Q      Was there a reason that you did not
 4   perform the surgical abortion after
 5   performing all those tests?
 6   A      Yes.
 7   Q      Can you explain that.
 8   A      By her last menstrual period she was
 9   about four weeks and three days pregnant.
10   And after performing a bedside sonogram, I
11   only saw gestational sac.  I could not
12   determine at the time if the pregnancy was
13   growing inside the uterus or outside the
14   uterus or if she was early in her pregnancy
15   or at the end of her pregnancy.
16   Q      When you say "end of her pregnancy,"
17   can you explain that?
18   A      Possible miscarriage.
19   Q      Was there also a possibility of an
20   ectopic pregnancy at that time?
21   A      Yes.
22   Q      Did the sonogram that you performed on
23   her eliminate the possibility of an ectopic
24   pregnancy?
25   A      There is no evidence of an ectopic
```

```
 1                    Dr. D. Kim
 2   pregnancy on the bedside sonogram.
 3   Q        After performing this test, did you
 4   tell Miss Park that she would have to return
 5   for the surgical abortion?
 6   A        No.
 7   Q        What happened?  Did you have a
 8   conversation with her?
 9   A        Yes.
10   Q        Doctor, incidentally before we go on,
11   at that time was Eileen Kim, was she the
12   manager of your office?
13   A        No.
14   Q        Did she work in your office?
15   A        Not at this time.
16   Q        Doctor, I'm just going to have you
17   look at page three of four.  It says on the
18   top right "chaperone present."  Do you see
19   that?
20   A        What page?
21   Q        Page three of four.
22   A        Yes.  Number eight, is that it?
23   Q        Yes.
24   A        Okay.
25   Q        Do you see the names -- first it says
```

```
 1                Dr. D. Kim
 2    "chaperone present" and then it has four
 3    names.  Do you see that?
 4    A     Yes.
 5    Q     Does that mean that someone aside from
 6    yourself and Miss Park were in the
 7    examination room together?
 8    A     Not the names that are listed on that
 9    document.
10    Q     Someone else other than these names?
11    A     Yes.
12    Q     Can you tell me what name of the
13    person that was present?
14    A     It was Minji Jeong.
15    Q     And did Miss Jeong act as a Korean
16    translator as well?
17    A     Yes.
18    Q     At that time during that visit with
19    Miss Park, do you have a recollection as to
20    Miss Jeong translating for you with
21    Miss Park?
22    A     I don't understand the question.  I'm
23    sorry.  Can you repeat it please?
24    Q     Do you recall if Ms. Jeong acted as a
25    translator on that date with Miss Park?
```

```
 1                    Dr. D. Kim
 2   A      She was a translator on that date.
 3   Q      Did she translate for Miss Park during
 4   your examination and discussion with
 5   Miss Park about her options?
 6   A      Yes.
 7   Q      Doctor, did you then advise Miss Park
 8   to come back for a surgical abortion?
 9   A      No.
10   Q      How did the visit to your office, how
11   did it come about?
12   A      After I explained the risks and
13   benefits of her options to terminate the
14   pregnancy, I asked the patient to return to
15   my office the following week.
16   Q      Did she do so?
17   A      Yes.
18   Q      What was the date that you saw her the
19   second time?
20   A      November 21st, 2017.
21   Q      And did you see her in your office
22   that day?
23   A      Yes.
24   Q      Did you examine Miss Park that day?
25   A      Yes.
```

```
 1              Dr. D. Kim
 2    Q      What kind of tests did you perform?
 3    A      I performed a physical exam and a
 4    bedside sonogram.
 5    Q      What were the results of the tests?
 6    A      That her physical examination was
 7    unremarkable, and that her bedside sonogram
 8    showed gestational sac inside the uterus and
 9    a yolk sac, but that there was no fetal pole
10    or fetal heartbeat visualized.
11    Q      How many weeks pregnant was she at
12    that time?
13    A      Five weeks and one day.
14    Q      Did you have a discussion with
15    Miss Park that day?
16    A      Yes.
17    Q      And what was the sum and substance?
18    A      I reviewed the lab results of the
19    blood test that were performed on
20    November 16th.  I reviewed the risks and
21    benefits of her option to terminate her
22    pregnancy.
23    Q      What were the results of her blood
24    test that day, Doctor?
25    A      Her hcg on November 16th was 256, and
```

```
 1              Dr. D. Kim
 2   her progesterone level was 28.
 3   Q      What did those results signify to you,
 4   if anything?
 5   A      The blood tests confirmed that she was
 6   pregnant and that there is a very good chance
 7   this pregnancy would be a viable pregnancy.
 8   Q      What was your plan of treatment at
 9   that time, Doctor?
10   A      The patient requested to have a
11   medical termination of pregnancy.  I
12   explained to the patient that I do not
13   provide medical termination of pregnancies.
14          I offered her to go to Planned
15   Parenthood where they do perform that
16   service, and that I only perform surgical
17   terminations of pregnancy.
18   Q      When you so advised her, what was her
19   response to that?
20   A      Advised her about what?
21   Q      About a medical termination and that
22   you only did surgical termination.
23   A      I did not tell Miss Park to have
24   either a medical or surgical termination of
25   pregnancy.  It was her choice and she decided
```

```
 1                  Dr. D. Kim
 2    to have a medical termination of pregnancy.
 3    And for that reason I gave her the contact
 4    information for Planned Parenthood.
 5    Q      So did there come another time that
 6    you saw Miss Park?
 7    A      Yes.
 8    Q      And when was that?
 9    A      November 27, 2017.
10    Q      Where did you see Miss Park on
11    11/27/17?  Did you see her in your office or
12    somewhere else?
13    A      Somewhere else.
14    Q      Where did you see her?
15    A      At the Surgical Care Center.
16    Q      Did Miss Park change her mind about
17    the medical termination or something else?
18    A      She changed her mind.
19    Q      Did she tell you that in a phonecall,
20    something else?
21    A      I do recall she called my office to
22    inform me that she changed her mind about
23    having a medical termination of pregnancy.
24           She expressed that she wanted to have
25    surgical to terminate the pregnancy and after
```

```
 1               Dr. D. Kim
 2    being given that message I told the secretary
 3    to tell the patient I can do the surgery --
 4    perform the surgery on November 27, 2017.
 5    Q       So that was at a surgical center,
 6    Doctor?
 7    A       Yes.
 8    Q       And where is that center located?
 9    A       136-20 38th Avenue, suite 5-I,
10    Flushing, New York 11354.
11    Q       Is that a surgical center that you
12    have privileges at or that you use somehow or
13    you have some kind of relation with the
14    people that are there?  Can you explain that?
15    A       I have privileges at that Surgical
16    Care Center.
17    Q       Is there a person or entity or a party
18    that owns that surgical center?
19    A       Yes.
20    Q       Do you know who that is?
21    A       I believe her name is Christine.
22    Q       Do you know her last name?
23    A       I don't recall.
24    Q       If we leave a space in the record you
25    can provide that?
```

```
 1                Dr. D. Kim
 2   A      Yes.
 3   Q      You'll provide it to your attorney and
 4   then she'll provide it to us.
 5   A      Yes.
 6              MS. STONE:  Just leave a space.
 7   REQUEST:
 8   Q      Doctor, is that the location that you
 9   customarily perform surgical abortions?
10   A      Yes.
11   Q      Do you have a particular schedule
12   there or is it an "as needed" schedule or
13   something else?
14   A      I don't have any scheduled time, but
15   if I do have a patient to request that
16   surgery, I will call them to set up an
17   appointment.
18   Q      So, on that day 11/27/17 did you meet
19   Miss Park at the surgical center?
20   A      Yes.
21   Q      Doctor, did Miss Park ever sign an
22   informed consent form either at your office
23   or at the surgical center?
24   A      Yes.
25   Q      Is it contained in the record?
```

Case 22-2057, Document 117, 04/25/2023, 3505100, Page224 of 265

**A-222**

```
 1                    Dr. D. Kim
 2    A       Yes.
 3    Q       Which place did she sign an informed
 4    consent?
 5    A       At the Surgical Care Center.
 6    Q       Can you tell me what page that is and
 7    possibly hold it up for me.
 8    A       This is from the Surgical Care Center.
 9    Q       Is your signature on it?
10    A       Yes.
11              MS. STONE:  I'm going to need a
12              copy of that.  I did not receive that.
13    REQUEST:
14    Q       Where did you sign that?
15    A       It's on the bottom of the page.
16    Q       When did you sign that?
17    A       On November 27, 2017.
18    Q       And were you present when Miss Park
19    signed hers?
20    A       Yes.
21    Q       Can you point out Miss Park's
22    signature by holding it up?
23    A       Right by my finger  (indicating).
24              MS. GIL:  Informed consent was
25              marked as an exhibit at the
```

```
 1                    Dr. D. Kim
 2           Plaintiff's deposition, and I provided
 3           it to the court reporter, so, it
 4           should be part of that transcript.
 5                    MS. STONE:  Oh, thank you.
 6   Q       Was the form in English or Korean or
 7   both?
 8   A       English.
 9   Q       Was any translation in writing done on
10   that form in Korean?
11   A       No.
12   Q       Did someone at the surgical center, if
13   you know, verbally translate that form to
14   Miss Park?
15   A       Yes.
16   Q       Who is that?
17   A       Her name is also Christine.
18   Q       Do you know her last name?
19   A       No.
20   Q       Is she still working there?
21   A       Yes.
22   Q       So if we leave a space in the
23   transcript you can provide her last name?
24   A       Yes.
25   REQUEST:
```

```
1                    Dr. D. Kim

2    Q        Were you present when she translated

3    the form to Miss Park?

4    A        Yes.

5    Q        Now, Doctor, did you perform an

6    examination of Miss Park before the surgical

7    abortion occurred?

8    A        Yes.

9    Q        What test did you perform?

10   A        A bedside sonogram.

11   Q        Do you have the results of the

12   sonogram in the record?

13              MS. STONE:  It looks like this

14          (indicating).

15   A        Yes.

16   Q        Was that done before the abortion took

17   place?

18   A        Yes.

19   Q        What were your findings from that

20   sonogram?

21   A        That there was an intrauterine

22   pregnancy with a gestational sac and a yolk

23   sac.

24   Q        And is that in the top image on that

25   page here, the one we're looking at right
```

```
 1                    Dr. D. Kim
 2   now?
 3   A       No.
 4   Q       Is the pregnancy the bottom image?
 5   A       Yes.
 6   Q       In other words, before the abortion
 7   the bottom image shows the pregnancy?
 8   A       Yes.
 9   Q       Did you do any blood test that day?
10   A       A blood test was performed on that
11   day.
12              MS. GIL:  Hold on.  I want to
13          clarify the record.  The pictures
14          you're referring to are page 38 of
15          Plaintiff's Exhibit 1.
16   Q       Where is that from?
17   A       It is my record in my office, the
18   sonogram was performed at the surgical center
19   on the day of the surgery.
20   Q       Doctor, how many surgical abortions
21   have you performed in your career,
22   approximately?
23   A       Hundreds, probably close to 1000.
24   Q       Now, Doctor, can you describe how you
25   proceeded after taking the ultrasound of
```

```
 1              Dr. D. Kim
 2   Miss Park that day?
 3   A      Do you want me to explain the surgical
 4   procedure to you?
 5   Q      Yes.
 6   A      The patient was in the operating room
 7   when the sonogram was performed, and after
 8   the sonogram the anesthesiologist had already
 9   spoken to the patient regarding the risks and
10   benefits of anesthesia, he initiated
11   anesthesia to the patient.
12          The patient was placed in a dorsal
13   lithotomy position.  She was prepped and
14   draped in sterile fashion.  A sterile heavy
15   weighted speculum was placed in the posterior
16   portion of the patient's vagina.  A Sims
17   speculum was placed in the anterior portion
18   of the patient's vagina.  An Allis clamp was
19   used to grasp the anterior lip of the cervix.
20   The endocervical canal was gently and
21   gradually dilated with Hank's dilators.  A
22   6-millimeter suction curette was used to
23   perform a suction curettage.  A sharp
24   curettage was then gently performed
25   throughout the endometrial cavity until a
```

```
 1                    Dr. D. Kim
 2   gritty texture was appreciated.  A suction
 3   curettage was repeated to remove the
 4   remaining products of conception.  All
 5   instruments were removed from the vagina.
 6   Excellent hemostasis was visualized.
 7   Q     Now, Doctor, with respect to that
 8   testimony, you were reading it from the
 9   operative report; is that correct?
10   A     Yes.
11   Q     Referring to page 37, that's your
12   operative report of this termination of
13   pregnancy, correct?
14   A     Yes.
15   Q     Did you sign this report anywhere?
16   A     I have not my signature but I write a
17   little note, a little circle on the top right
18   corner of the document.
19   Q     So that's your --
20   A     Not my signature but just a notation
21   that I reviewed the record.
22   Q     Doctor, after the termination was
23   completed, did you then do a sonogram?
24   A     Yes.
25   Q     Was it during the time that Miss Park
```

1                    Dr. D. Kim

2    was still in the surgery suite?

3    A       Yes.

4    Q       So it was right after you finished?

5    A       Yes.

6    Q       How long did the procedure take

7    approximately?

8    A       Approximately of seven to ten minutes.

9    Q       And then you performed another

10   ultrasound?

11   A       Yes.

12   Q       Proceed to page 38, again, Doctor.

13   The image on the top there, is that the

14   ultrasound from the post termination?

15   A       Yes.

16   Q       What findings did you make on that

17   ultrasound?

18   A       That the previous gestational sac and

19   yolk sac that was seen prior to the surgery

20   was no longer seen inside the uterus.

21   Q       Doctor, did you examine physically,

22   visually, the products of conception after

23   the term?

24   A       I recall seeing tissue pass through

25   the suction curette when that was being

1              Dr. D. Kim

2     performed, and some tissue from the sharp

3     curettage and that specimen was sent to the

4     pathology lab.

5     Q      When you say you recall seeing it, did

6     you examine it?  Did you visually examine it?

7     A      I visualized it but I did not perform

8     any pathological examination of it.

9     Q      Did you see any fetal products in the

10    products that came out with the abortion?

11    A      I recall seeing tissue passing through

12    the suction curette into the suction

13    canister, and tissue from the sharp curettage

14    that was performed.

15    Q      What kind of tissue was that?

16    A      It appeared to be products of

17    conception.

18    Q      Doctor, did the surgical center have

19    some kind of backlight to give a visual of

20    the products of conception?

21    A      No.

22    Q      When you say that you recall seeing

23    some tissue in the curettage, correct, that

24    was the tube leading out of the vagina and

25    into somewhere else?

```
 1                   Dr. D. Kim
 2   A      The tissue that I saw was from the
 3   suction curette attached to a plastic tube
 4   that was attached to a suction device.
 5   Q      So where did that product end up at
 6   the end?
 7   A      There is a canister that collects that
 8   tissue.
 9   Q      Did you observe any of that tissue in
10   the canister?
11   A      I saw that tissue was collected in the
12   cannister.
13   Q      Did you visualize it in the cannister?
14   A      I saw that there was tissue in the
15   cannister.
16   Q      Did you visually examine it in the
17   cannister?
18   A      I did not do anything more than
19   visualize the tissue in the cannister.
20   Q      Did you or did you not visualize it in
21   the cannister?
22   A      I saw that there was tissue in the
23   cannister.
24   Q      Did you examine the tissue visually
25   while it was in the cannister?
```

```
 1                  Dr. D. Kim
 2              MS. GIL:  Objection to form.
 3        You can answer.
 4    A     I did not perform any exam of that
 5    tissue that was in the cannister.
 6    Q     Did you then send the products of the
 7    surgical abortion to pathology?
 8    A     Yes.
 9    Q     Is this New Path Diagnostics?
10    A     Yes.
11    Q     Did you send the products of
12    conception on 11/27/17 the date of the
13    surgical abortion?
14    A     Yes.
15    Q     Doctor, I'm looking now at the
16    pathology report.  It's the last page of
17    the -- well, for me it's the last page of the
18    surgical center.  I'm not really sure if it's
19    part of your record or part of the surgical
20    center's record, Surgical Center's record.
21    Maybe if you clarify that for me.
22    A      There is a copy of the pathology
23    report on the last page of the records from
24    the surgical center.  And I believe there's
25    one in my medical records as well.
```

```
 1                    Dr. D. Kim
 2   Q       When was it that you received that
 3   report, Doctor?
 4   A       The report mentions that it was faxed
 5   to my office on December 3rd.
 6   Q       Doctor, considering that the pathology
 7   had the specimen as of 11/27/2017, did you
 8   consider it to be a prolonged period of time
 9   before the report was received?
10               MS. GIL:  Objection to form.
11   A       I don't know if there is a schedule
12   amount of time that the pathologist tried to
13   return the reports of the specimen.  It's
14   hard for me to comment if it was a long
15   period of time.  There just is no standard
16   time that the pathologists usually send the
17   reports.
18   Q       Doctor, when you received this report
19   by fax, did you read it?
20   A       Yes.
21   Q       What day did you read it?
22   A       Probably the same day that it was sent
23   or the next business day.
24   Q       Doctor, under "gross description" can
25   you just read that into the record.
```

```
 1                    Dr. D. Kim
 2    A       (Reading): Product of conception.
 3    Curettage received in formalin in multiple
 4    fragments of tan soft tissue measuring 20 x
 5    20 x 20 millimeters with possible villi but
 6    no fetal parts.  The specimen is entirely
 7    submitted in two cassettes.
 8                    MS. STONE:  Off the record.
 9                    (At this point in time, a brief
10           recess was taken.)
11    BY MS. STONE:
12    Q       Doctor, on this pathology report sort
13    of the top right there's a little circular
14    mark; is that your mark?
15    A       Yes.
16    Q       And you put that there to indicate
17    that you reviewed that report?
18    A       Yes.
19    Q       Did you speak with the pathologist
20    after that?
21    A       I don't recall.
22    Q       Doctor, were you concerned at all
23    about the patient after seeing that report?
24    A       Yes.
25    Q       Can you tell me the basis of your
```

```
 1                  Dr. D. Kim
 2   concern?
 3   A      Whether or not there was retained
 4   products of conception or not.
 5   Q      Did that report signify that there
 6   were retained products of conception?
 7   A      I'm sorry, you broke up a little bit.
 8   Can you repeat that?
 9   Q      Did that report signify that there
10   were retained products of conception?
11   A      No.  Well, it's not clear.  I'll
12   rephrase.  It's not clear.  The report stated
13   that there was decidua with reactive changes
14   but no villi was seen.  However, in the gross
15   description it's reported that there were
16   possible villi.
17          So it wasn't quite clear whether or
18   not there was tissue collected in that
19   specimen from the products of conception or
20   not.
21   Q      Doctor, in the latter part of the
22   report when it says, "no fetal parts," does
23   that indicate that whatever came out of
24   Miss Park on the date of the surgical
25   abortion did not include the parts of the
```

1              Dr. D. Kim

2    fetus that would ordinarily be seen in the

3    residual products?

4    A      I don't understand the question.  I'm

5    sorry.

6    Q      What does "no fetal parts" mean?

7    A      That the pathologist didn't see any

8    gross fetal parts.

9    Q      So would that signify if there were no

10   fetal parts in the pathology, that they were

11   retained by Miss Park?

12   A      Not necessarily.

13   Q      Then what does it mean if the

14   pathology comes back "no fetal parts"?

15   A      You would have to ask the pathologist

16   that question.

17   Q      Let me ask it a different way:  What

18   was the significance to you of the report

19   that said "no fetal parts"?

20   A      It's not common to see fetal parts

21   when a surgical termination is performed that

22   early in the pregnancy.  And, so, what was

23   concerning was that no villi was seen and

24   that prompted me to tell my secretary to call

25   the patient to come back.

```
 1                 Dr. D. Kim
 2   Q       Were they told to inform the patient
 3   that there was this concern about the
 4   pathology report?
 5   A       It's my custom and practice to tell my
 6   staff not to discuss any medical issues with
 7   patients over the phone but to alert this
 8   patient that I wanted to talk to her, I was
 9   concerned about the pathology report and I
10   would want to discuss this report with her
11   and to see how she's doing.
12   Q       So when was that phonecall made,
13   Doctor?
14   A       I don't recall.
15   Q       Can you approximate in any way, a day
16   after, a few days after, something like that?
17   A       Either that day or the following
18   business day when it was received.
19   Q       Did Miss Park return to your office?
20   A       She did.
21   Q       What date did she return?
22   A       On December 13, 2017.
23   Q       Doctor, was Miss Park told or advised
24   to return to the office as soon as possible
25   during this phonecall to her?
```

```
 1                    Dr. D. Kim
 2   A       I didn't make the phonecall, so, I
 3   don't recall the exact conversation, but my
 4   secretaries were told to call the patient to
 5   inform her that I need to speak to her -- and
 6   she her about her pathology report.
 7   Q       Was any urgency given to that message?
 8   Did you instruct your secretary or your
 9   assistant to indicate to some sort of urgency
10   to Miss Park to return to your office?
11   A       It would be my custom and practice if
12   there was anything of concern such as this,
13   that I would tell my secretary to call the
14   patient now at the time of the receipt of the
15   report.
16   Q       Would it be your custom and practice
17   to indicate to the patient that either they
18   should not wait too long to come back, or
19   that there's some urgency in terms of you
20   having to examine her?
21   A       It depends on the situation.
22   Q       On this situation, Doctor, would that
23   be your custom and practice?
24   A       It would be my custom and practice to
25   tell the patient that she needs to come in to
```

```
 1              Dr. D. Kim
 2   review this report with me and to be further
 3   evaluated.
 4   Q      Would that include any sort of urgency
 5   to come in and not wait too long?
 6   A      It depends on the situation.
 7   Q      In this situation, Doctor, would you
 8   consider it a rather urgent situation to see
 9   the patient as soon as possible?
10   A      I would not say that it was an
11   emergency.
12   Q      Would you consider it an urgent
13   situation?
14   A      That depends on how you define
15   "urgent."
16   Q      Doctor, did you consider Miss Park to
17   possibly have retained products of conception
18   in her womb after seeing the pathology
19   report?
20   A      That was a concern of mine.
21   Q      Was that an urgent concern of yours?
22   A      I can say it was a concern of mine.
23   Q      You can't say that it was an urgent
24   concern then?
25   A      I would say that it would be
```

1               Dr. D. Kim

2    important.

3    Q       Okay.

4            Doctor, what happens to a woman who

5    has retained products of conception after an

6    abortion, is she at a high risk for an

7    infection or something else?

8    A       There are different complications that

9    can arise with a patient who has retained

10   products of conception.

11   Q       Can you tell me what they are?

12   A       It can range from an absence of any

13   complaints.  Patient can have vaginal

14   bleeding, pelvic pain, fever, foul-smelling

15   vaginal odor or discharge.

16   Q       If the products of conception are not

17   removed surgically, can the person be at risk

18   of an infection?

19   A       It's possible.

20   Q       Can the person be at risk of a severe

21   infection?

22   A       It depends on your definition of

23   "severe."

24   Q       Can the person be at risk of losing

25   their uterus?

DEITZ Court Reporting... A Lexitas Company
800-678-0166

```
 1                    Dr. D. Kim
 2   A       I'm not aware of any cases where that
 3   has happened.
 4   Q       Doctor, on this pathology report there
 5   is also a circle on the bottom right, if you
 6   look at it, and with some numbers and some
 7   letters above the numbers.  Do you see that?
 8   A       I do.
 9   Q       Do you recognize what that is?
10   A       Yes.
11   Q       Can you tell me?
12   A       It's my signature with my writing
13   where I wrote "discussed with patient
14   12/13/17. "
15   Q       So when the patient came to your
16   office on 12/13 you had a discussion with
17   her?
18   A       Yes.
19   Q       What was the sum and substance of your
20   discussion?
21   A       I asked her if she had any complaints
22   of fever, chills, abdominal, pelvic pain or
23   vaginal bleeding; she denied.
24           I also explained -- I also did a
25   physical exam which was unremarkable.  I
```

```
 1                    Dr. D. Kim
 2   reviewed the results of the pathology report
 3   and expressed to the patient that I was
 4   concerned about the possibility of retaining
 5   products of conception, and that I would like
 6   to perform a pelvic sonogram to check her
 7   uterus.
 8   Q      Did you then perform the pelvic
 9   sonogram?
10   A      Yes.
11   Q      And was it on that date, 12/13/17?
12   A      Yes.
13   Q      What were the results of the pelvic
14   sonogram?
15   A      That there was a small fetus seen in
16   the uterus with movement visualized.  And by
17   her last menstrual period that would make her
18   at eight weeks and three days pregnant.
19   Q      Do your records contain a copy of that
20   sonogram?
21   A      No.
22   Q      Why is that, Doctor?
23   A      I do not know but it is my custom and
24   practice to have a copy of the sonograms done
25   on the patients in the chart.
```

```
 1              Dr. D. Kim
 2   Q      Did you inform Miss Park that she had
 3   an alive fetus in her uterus at that time?
 4   A      Yes.
 5   Q      Did the fetus have arms or legs?
 6   A      Yes.
 7   Q      Did the fetus have a head?
 8   A      Yes.
 9   Q      What was Miss Park's reaction to
10   learning that she was carrying a live fetus?
11   A      She was very upset.
12   Q      What did she say?
13   A      She declined my offer to perform the
14   surgery the following day.  She demanded a
15   refund of the money that she paid for the
16   surgery.  She said that she is going to have
17   the surgery in Korea in the month of
18   December.
19   Q      Doctor, how much had Miss Park paid
20   you for your services?
21   A      $750 for the surgery.
22   Q      How much did you refund her?
23   A      $750.
24   Q      Did you apologize to Miss Park?
25   A      I don't recall.
```

```
1                    Dr. D. Kim
2    Q      Did any of your staff apologize to
3    Miss Park?
4    A      I don't recall.
5    Q      Do you know why Miss Park refused to
6    have a second surgical abortion the next day
7    from you?
8    A      She didn't say.
9    Q      Is there a reason why you refunded her
10   her money?
11   A      Because I didn't do the surgery that
12   was intended to be done.  It wasn't
13   successful.
14   Q      Did you advise Miss Park against going
15   to Korea for the surgical abortion to remove
16   the fetus?
17   A      I remember I did offer to do the
18   surgery the next day, or at her earliest
19   convenience, and she was very upset and
20   refused that offer.
21   Q      Did you advise her against going to
22   Korea for the surgical termination?
23   A      I don't recall.
24   Q      Did Miss Park have any complaints with
25   regard to having a retained fetus?  In other
```

```
 1               Dr. D. Kim
 2   words, any complaint of pain, bleeding, fever
 3   or anything like that?
 4   A       She denied having any fever, chills,
 5   abdominal or pelvic pain or vaginal bleeding.
 6   I do believe she did say that she had nausea.
 7   She reported occasional nausea, but that was
 8   the only complaint that she had at the time.
 9   Q       Doctor, after she left your office
10   that day, did you ever hear from Miss Park
11   again?
12   A       She returned to my office the
13   following day to pick up her money but did
14   not talk to me at that time.
15   Q       After that, did you ever hear from her
16   again?
17   A       No.
18   Q       Did you ever review the records of her
19   surgical abortion that occurred in Korea?
20   A       No.
21   Q       Doctor, have you ever reviewed any
22   records to any prior abortion of Miss Park?
23   A       No.
24   Q       Doctor, are you aware of any evidence
25   that Miss Park was contributorily neglect in
```

Page 55
January 26, 2022

```
 1                 Dr. D. Kim
 2   the abortion or the incident that occurred
 3   here?
 4               MS. GIL:  Objection.  That
 5          question is calling for a legal
 6          conclusion.
 7   Q     Are you aware of any evidence of facts
 8   that would lead to the conclusion that
 9   somehow Miss Park's actions or inactions had
10   caused or partially caused the incomplete
11   abortion here?
12               MS. GIL:  Objection to form.
13          You can answer, if you understand.
14   A     Can you repeat the question.
15               MS. STONE:  Can you read it
16          back, Vilma.
17               (At this point in time, the
18          requested portion of the record was
19          read back by the reporter.)
20   A     I don't know.
21   Q     Do you have an opinion as to what
22   caused the retained fetus in this case?
23   A     I don't know.
24   Q     Doctor, with respect to the four times
25   that you had been deposed as a defendant in a
```

```
 1                  Dr. D. Kim
 2    medical malpractice case, do you have the
 3    index number of those cases?
 4    A      I do not.
 5    Q      Do you have the venue of those cases?
 6    A      Not with me, no.
 7    Q      Well, do you have them somewhere in
 8    your office?
 9    A      I could obtain that for you.
10             MS. STONE:  So you'll give it
11          to your lawyer and she can give it to
12          us.
13    REQUEST:
14    Q      Doctor, are you a citizen of the
15    United States?
16    A      Yes.
17    Q      Are you a citizen of any other
18    country?
19
20
21
22          (Continued on the next page
23           to accommodate the jurat.)
24
25
```

```
 1              Dr. D. Kim
 2   A     No.
 3              MS. STONE:  I have no further
 4       questions.  Thank you.
 5              (Time noted:  11:45 p.m.)
 6
 7              _____
 8                   DAVID DENNIS KIM, M.D
 9
10   Subscribed and Sworn to before me
11   this      day of          , 2022.
12   _____
13   Notary Public
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 22-2057, Document 117, 04/25/2023, 3505100, Page250 of 265

**A-248**

```
 1                    I N D E X

 2

 3   EXAMINATION BY                        PAGE

 4   MS. STONE                              5

 5

 6                 E X H I B I T S

 7

 8     PLAINTIFF'S

 9   FOR IDENTIFICATION    DESCRIPTION     PAGE

10   1   Medical records                   13

11   2   Ambulatory Surgical Care Center record   13

12

13

14                 R E Q U E S T S

15

16                   DESCRIPTION          PAGE

17   Full name of the owner of the surgical   31

18   center

19

20   Informed consent from Surgical Care    32

21   Center

22

23   Name of translator                   33

24

25   Venue of medical malpractice cases   56
```

Case 22-2057, Document 117, 04/25/2023, 3505100, Page251 of 265
**A-249**

```
1              C E R T I F I C A T E

2

3          I, VILMA TORRES, hereby certify that the

4    Deposition held before me on the 26th day of

5    January, 2022; that said witness was duly sworn

6    before the commencement of  testimony; that the

7    testimony was taken stenographically by myself and

8    then transcribed by myself; that the party was

9    represented by counsel as appears herein;

10          That the within transcript is a true record

11   of the Deposition of said witness;

12          That I am not connected by blood or marriage

13   with any of the parties; that I am not interested

14   directly or indirectly in the outcome of this

15   matter; that I am not in the employ of any of the

16   counsel.

17          IN WITNESS WHEREOF, I have hereunto set my

18   hand this 2nd day of February, 2022.

19

20   _____

21               VILMA TORRES,RPR,CSR

22

23

24

25
```

Page 60
January 26, 2022

```
 1   ERRATA SHEET FOR: DAVID DENNIS KIM
 2      DAVID DENNIS KIM, being duly sworn, deposes and
 3      says: I have reviewed the transcript of my
 4      proceeding taken on 01/26/2022. The following
 5      changes are necessary to correct my testimony.
 6   _____
 7   PAGE LINE    CHANGE              REASON
 8   ----|----|--------------------|--------------
 9   ----|----|--------------------|--------------
10   ----|----|--------------------|--------------
11   ----|----|--------------------|--------------
12   ----|----|--------------------|--------------
13   ----|----|--------------------|--------------
14   ----|----|--------------------|--------------
15   ----|----|--------------------|--------------
16   ----|----|--------------------|--------------
17   ----|----|--------------------|--------------
18   ----|----|--------------------|--------------
19   ----|----|--------------------|--------------
20   ----|----|--------------------|--------------
21        Witness Signature:_____
22   Subscribed and sworn to, before me
23   this ___ day of _____, 20 ___.
24   _____        _____
25   (NOTARY PUBLIC)              MY COMMISSION EXPIRES
```

DEITZ Court Reporting... A Lexitas Company
800-678-0166

January 26, 2022

[Page 61]

| A | | | |
|---|---|---|---|
| **a.m (1)** | **against- (1)** | **appears (1)** | **authorized (1)** | 19:22 |
| 1:14 | 1:6 | 59:9 | 3:14 | **birth (1)** |
| **abdominal (3)** | **ago (1)** | **appointment...** | **Avenue (3)** | 21:21 |
| 19:14 50:22 | 6:8 | 31:17 | 2:12 5:10 30:9 | **bit (1)** |
| 54:5 | **AGREED (4)** | **appointment...** | **aware (4)** | 44:7 |
| **able (2)** | 3:3,8,12 4:2 | 12:13,17 | 21:9 50:2 | **bleeding (7)** |
| 16:25 20:18 | **Albert (1)** | **appreciated (...** | 54:24 55:7 | 17:24 18:7 |
| **abortion (24)** | 9:23 | 37:2 | | 19:14 49:14 |
| 18:6,11,13,23 | **ALEJANDR...** | **approximate...** | **B** | 50:23 54:2,5 |
| 19:2 20:4,6 | 2:14 | 46:15 | **B (1)** | **blood (9)** |
| 23:4 24:5 | **alert (1)** | **approximate...** | 58:6 | 15:19,19 16:2 |
| 26:8 34:7,16 | 46:7 | 35:22 38:7,8 | **BACH (1)** | 27:19,23 28:5 |
| 35:6 39:10 | **alive (1)** | **area (7)** | 2:10 | 35:9,10 59:12 |
| 41:7,13 44:25 | 52:3 | 9:24 10:4,14 | **back (9)** | **board (3)** |
| 49:6 53:6,15 | **allergies (1)** | 10:21,24 11:6 | 7:7 18:18,21 | 10:21,24 11:6 |
| 54:19,22 55:2 | 21:19 | 11:21 | 26:8 45:14,25 | **bottom (4)** |
| 55:11 | **Allis (1)** | **areas (1)** | 47:18 55:16 | 32:15 35:4,7 |
| **abortions (2)** | 36:18 | 8:23 | 55:19 | 50:5 |
| 31:9 35:20 | **allow (1)** | **arms (1)** | **backlight (1)** | **break (2)** |
| **absence (1)** | 7:17 | 52:5 | 39:19 | 7:19,22 |
| 49:12 | **Ambulatory ...** | **aside (1)** | **Based (1)** | **brief (1)** |
| **acceptable (1)** | 13:6,10,17 | 25:5 | 16:18 | 43:9 |
| 7:23 | 58:11 | **asked (2)** | **basis (1)** | **broke (1)** |
| **accommodat...** | **amount (1)** | 26:14 50:21 | 43:25 | 44:7 |
| 56:23 | 42:12 | **assessed (1)** | **bear (1)** | **Bronx (1)** |
| **act (1)** | **and/or (2)** | 19:15 | 4:16 | 9:23 |
| 25:15 | 17:24 18:9 | **assistance (1)** | **bedside (8)** | **business (3)** |
| **acted (1)** | **anesthesia (2)** | 14:12 | 15:20 16:24 | 12:2 42:23 |
| 25:24 | 36:10,11 | **assistant (1)** | 17:3 23:10 | 46:18 |
| **actions (1)** | **anesthesiolo...** | 47:9 | 24:2 27:4,7 | |
| 55:9 | 36:8 | **associates (2)** | 34:10 | **C** |
| **address (5)** | **answer (5)** | 9:10,13 | **behalf (1)** | **C (3)** |
| 5:9,10 7:11 9:8 | 7:18,21 18:15 | **assuming (1)** | 5:16 | 2:1 59:1,1 |
| 12:2 | 41:3 55:13 | 6:7 | **believe (4)** | **call (5)** |
| **administer (1)** | **answered (1)** | **attached (2)** | 11:13 30:21 | 20:19 31:16 |
| 3:14 | 7:10 | 40:3,4 | 41:24 54:6 | 45:24 47:4,13 |
| **administerin...** | **anterior (2)** | **attend (2)** | **benefits (4)** | **called (1)** |
| 4:6 | 36:17,19 | 7:25 9:4 | 17:16 26:13 | 29:21 |
| **advise (3)** | **anytime (2)** | **attended (1)** | 27:21 36:10 | **calling (1)** |
| 26:7 53:14,21 | 7:19,21 | 9:22 | **best (1)** | 55:5 |
| **advised (4)** | **apologize (2)** | **attorney (2)** | 7:21 | **canal (1)** |
| 18:5 28:18,20 | 52:24 53:2 | 4:13 31:3 | **better (1)** | 36:20 |
| 46:23 | **appeared (1)** | **attorneys (3)** | 16:11 | **canister (3)** |
| | 39:16 | 2:3,11 3:4 | **bills (1)** | 39:13 40:7,10 |

cannister (9)
40:12,13,15,17
40:19,21,23
40:25 41:5
care (12)
7:3 12:20 13:6
13:10,17 14:7
29:15 30:16
32:5,8 58:11
58:20
career (1)
35:21
Caribbean (2)
8:5,7
Carol (2)
2:7 5:15
carrying (1)
52:10
case (2)
55:22 56:2
cases (12)
6:6,10,12,14
6:16,18,21,23
50:2 56:3,5
58:25
cassettes (1)
43:7
caused (3)
55:10,10,22
cavity (1)
36:25
center (27)
10:10,19 12:9
12:12,14,17
13:6,10,17
29:15 30:5,8
30:11,16,18
31:19,23 32:5
32:8 33:12
35:18 39:18
41:18,24
58:11,18,21
center's (2)
41:20,20

certification ...
3:5
certified (4)
10:21,25 11:3
11:6
certify (1)
59:3
cervical (2)
18:9 21:14
cervix (1)
36:19
cetera (1)
9:10
chance (1)
28:6
change (2)
29:16 60:7
changed (2)
29:18,22
changes (2)
44:13 60:5
chaperone (2)
24:18 25:2
chart (2)
13:20 51:25
check (2)
16:3 51:6
chills (2)
50:22 54:4
China (1)
8:22
Cho (1)
14:18
choice (1)
28:25
Christine (2)
30:21 33:17
cigarettes (1)
21:16
circle (2)
37:17 50:5
circular (1)
43:13
citizen (2)

56:14,17
civil (1)
4:18
clamp (1)
36:18
clarify (2)
35:13 41:21
clear (3)
44:11,12,17
close (1)
35:23
co-insurance...
19:23
collected (2)
40:11 44:18
collects (1)
40:7
come (8)
12:19 26:8,11
29:5 45:25
47:18,25 48:5
comes (1)
45:14
commencem...
59:6
comment (1)
42:14
COMMISSI...
60:25
common (1)
45:20
company (1)
16:8
complaint (2)
54:2,8
complaints (4)
15:9 49:13
50:21 53:24
complete (2)
8:9 10:17
completed (1)
37:23
completing (1)
11:22

complication...
19:13,21 20:6
20:12,17 49:8
conception (...
17:25 18:9
37:4 38:22
39:17,20
41:12 43:2
44:4,6,10,19
48:17 49:5,10
49:16 51:5
concern (7)
44:2 46:3
47:12 48:20
48:21,22,24
concerned (3)
43:22 46:9
51:4
concerning (1)
45:23
conclusion (2)
55:6,8
conduct (1)
4:16
conducted (1)
4:4
conference (3)
4:4,8,16
confirm (1)
22:22
confirmed (2)
17:7 28:5
confirming (1)
4:8
connected (1)
59:12
connection (1)
16:6
consent (5)
4:9 31:22 32:4
32:24 58:20
consider (5)
22:2 42:8 48:8
48:12,16

considered (1)
4:10
considering (1)
42:6
contact (1)
29:3
contain (1)
51:19
contained (1)
31:25
Continued (1)
56:22
continuously...
11:6,14
contributoril...
54:25
control (2)
4:6 21:21
convenience ...
53:19
conversation...
17:9,14 24:8
47:3
copy (6)
4:14,17 32:12
41:22 51:19
51:24
corner (1)
37:18
correct (4)
37:9,13 39:23
60:5
cost (4)
20:5,5,7,23
costs (1)
4:16
counsel (6)
4:3,4,15 5:18
59:9,16
country (2)
8:6 56:18
court (6)
1:1 3:16 4:4,6
4:7 33:3

January 26, 2022

[Page 63]

| | | | | |
|---|---|---|---|---|
| **CPLR (2)** | 58:1 | 49:22 | 8:22,23 45:17 | **doing (1)** |
| 4:3,17 | **date (12)** | **deliveries (1)** | 49:8 | 46:11 |
| **curettage (7)** | 13:15,19 14:3 | 21:18 | **dilated (1)** | **dorsal (1)** |
| 36:23,24 37:3 | 16:12 22:18 | **demanded (1)** | 36:21 | 36:12 |
| 39:3,13,23 | 25:25 26:2,18 | 52:14 | **dilators (1)** | **Dr (53)** |
| 43:3 | 41:12 44:24 | **denied (4)** | 36:21 | 5:1 6:1 7:1 8:1 |
| **curette (4)** | 46:21 51:11 | 21:16,17 50:23 | **directly (1)** | 9:1 10:1 11:1 |
| 36:22 38:25 | **David (6)** | 54:4 | 59:14 | 12:1 13:1 |
| 39:12 40:3 | 1:7,11 5:8 57:8 | **Dennis (6)** | **discharge (1)** | 14:1 15:1 |
| **custom (7)** | 60:1,2 | 1:7,11 5:8 57:8 | 49:15 | 16:1 17:1 |
| 20:9 46:5 | **day (32)** | 60:1,2 | **discuss (5)** | 18:1 19:1 |
| 47:11,16,23 | 15:25 16:3,16 | **departure (1)** | 20:4,7,23 46:6 | 20:1 21:1 |
| 47:24 51:23 | 17:8 21:16 | 7:2 | 46:10 | 22:1 23:1 |
| **customarily (...** | 22:15,25 | **depends (4)** | **discussed (3)** | 24:1 25:1 |
| 31:9 | 26:22,24 | 47:21 48:6,14 | 18:3 20:13 | 26:1 27:1 |
| | 27:13,15,24 | 49:22 | 50:13 | 28:1 29:1 |
| **D** | 31:18 35:9,11 | **deposed (8)** | **discussion (4)** | 30:1 31:1 |
| **D (57)** | 35:19 36:2 | 4:17 5:20,23 | 26:4 27:14 | 32:1 33:1 |
| 5:1,2,2,2 6:1 | 42:21,22,23 | 6:2,6,9 7:15 | 50:16,20 | 34:1 35:1 |
| 7:1 8:1 9:1 | 46:15,17,18 | 55:25 | **DISTRICT (2)** | 36:1 37:1 |
| 10:1 11:1 | 52:14 53:6,18 | **deposes (1)** | 1:1,2 | 38:1 39:1 |
| 12:1 13:1 | 54:10,13 | 60:2 | **doctor (49)** | 40:1 41:1 |
| 14:1 15:1 | 57:11 59:4,18 | **deposition (11)** | 5:14,21 7:12 | 42:1 43:1 |
| 16:1 17:1 | 60:23 | 1:11 3:13 4:3,7 | 7:14,23 8:14 | 44:1 45:1 |
| 18:1 19:1 | **days (4)** | 4:16 5:16 | 9:9,18 15:21 | 46:1 47:1 |
| 20:1 21:1 | 16:22 23:9 | 12:24 13:21 | 16:23 18:10 | 48:1 49:1 |
| 22:1 23:1 | 46:16 51:18 | 33:2 59:4,11 | 24:10,16 26:7 | 50:1 51:1 |
| 24:1 25:1 | **deal (1)** | **describe (1)** | 27:24 28:9 | 52:1 53:1 |
| 26:1 27:1 | 16:8 | 35:24 | 30:6 31:8,21 | 54:1 55:1 |
| 28:1 29:1 | **December (3)** | **description (4)** | 34:5 35:20,24 | 56:1 57:1 |
| 30:1 31:1 | 42:5 46:22 | 42:24 44:15 | 37:7,22 38:12 | **draped (1)** |
| 32:1 33:1 | 52:18 | 58:9,16 | 38:21 39:18 | 36:14 |
| 34:1 35:1 | **decided (1)** | **desire (1)** | 41:15 42:3,6 | **drawn (1)** |
| 36:1 37:1 | 28:25 | 17:10 | 42:18,24 | 16:3 |
| 38:1 39:1 | **decidua (1)** | **determine (1)** | 43:12,22 | **drew (1)** |
| 40:1 41:1 | 44:13 | 23:12 | 44:21 46:13 | 15:19 |
| 42:1 43:1 | **declined (1)** | **developing (1)** | 46:23 47:22 | **drug (1)** |
| 44:1 45:1 | 52:13 | 22:12 | 48:7,16 49:4 | 21:19 |
| 46:1 47:1 | **defendant (7)** | **device (1)** | 50:4 51:22 | **duly (3)** |
| 48:1 49:1 | 1:8,11 2:11 6:2 | 40:4 | 52:19 54:9,21 | 5:3 59:5 60:2 |
| 50:1 51:1 | 6:4,13 55:25 | **Diagnostics (1)** | 54:24 55:24 | |
| 52:1 53:1 | **define (1)** | 41:9 | 56:14 | **E** |
| 54:1 55:1 | 48:14 | **different (7)** | **document (2)** | **E (9)** |
| 56:1 57:1 | **definition (1)** | 6:10,12 8:21 | 25:9 37:18 | 2:1,1 5:2 58:1 |

**A-254**

| | | | | |
|---|---|---|---|---|
| 58:6,14,14 | **English (5)** | **exhibits (1)** | 45:2 51:15 | 3:15 |
| 59:1,1 | 8:15,18 14:10 | 4:13 | 52:3,5,7,10 | **form (11)** |
| **earliest (1)** | 33:6,8 | **EXPIRES (1)** | 53:16,25 | 3:9 7:9 18:14 |
| 53:18 | **entirely (1)** | 60:25 | 55:22 | 31:22 33:6,10 |
| **early (2)** | 43:6 | **explain (7)** | **fever (4)** | 33:13 34:3 |
| 23:14 45:22 | **entity (1)** | 17:18 20:9 | 49:14 50:22 | 41:2 42:10 |
| **EASTERN (1)** | 30:17 | 22:7 23:7,17 | 54:2,4 | 55:12 |
| 1:2 | **ERRATA (1)** | 30:14 36:3 | **filing (1)** | **formalin (1)** |
| **ectopic (3)** | 60:1 | **explained (7)** | 3:5 | 43:3 |
| 23:20,23,25 | **ESQ (2)** | 17:15,22 19:3 | **finding (1)** | **foul-smelling...** |
| **effect (1)** | 2:7,14 | 20:15 26:12 | 7:2 | 49:14 |
| 3:15 | **Esquire (1)** | 28:12 50:24 | **findings (2)** | **found (1)** |
| **eight (2)** | 5:17 | **express (1)** | 34:19 38:16 | 6:20 |
| 24:22 51:18 | **Et (1)** | 4:9 | **finger (1)** | **four (12)** |
| **Eileen (1)** | 9:10 | **expressed (2)** | 32:23 | 5:25 6:9,10,12 |
| 24:11 | **evaluated (1)** | 29:24 51:3 | **finish (1)** | 6:14 14:24 |
| **Einstein (1)** | 48:3 | | 7:17 | 16:21 23:9 |
| 9:23 | **evidence (7)** | **F** | **finished (1)** | 24:17,21 25:2 |
| **either (5)** | 17:3,5,6 22:13 | **F (1)** | 38:4 | 55:24 |
| 19:16 28:24 | 23:25 54:24 | 59:1 | **firm (1)** | **fourth (1)** |
| 31:22 46:17 | 55:7 | **factor (1)** | 5:18 | 14:18 |
| 47:17 | **exact (2)** | 22:3 | **first (11)** | **fragments (1)** |
| **elective (2)** | 9:5 47:3 | **facts (1)** | 5:3 12:3 14:4 | 43:4 |
| 15:12 17:11 | **exam (4)** | 55:7 | 15:10 16:16 | **full (2)** |
| **eliminate (1)** | 22:24 27:3 | **fair (1)** | 16:19 18:13 | 15:5 58:17 |
| 23:23 | 41:4 50:25 | 18:10 | 21:13 22:18 | **further (6)** |
| **emailed (1)** | **examination ...** | **fashion (1)** | 22:22 24:25 | 3:8,12 4:2,13 |
| 4:14 | 5:12 15:18 | 36:14 | **Five (1)** | 48:2 57:3 |
| **emergency (6)** | 22:14 25:7 | **fax (1)** | 27:13 | |
| 19:16,20 20:8 | 26:4 27:6 | 42:19 | **fix (1)** | **G** |
| 20:22,24 | 34:6 39:8 | **faxed (1)** | 16:11 | **gently (2)** |
| 48:11 | 58:3 | 42:4 | **fluent (2)** | 36:20,24 |
| **employ (1)** | **examine (7)** | **fear (1)** | 14:13,25 | **George's (1)** |
| 59:15 | 26:24 38:21 | 19:21 | **Flushing (6)** | 8:2 |
| **employed (1)** | 39:6,6 40:16 | **February (1)** | 5:11 10:10,11 | **gestational (5)** |
| 14:24 | 40:24 47:20 | 59:18 | 10:19 12:12 | 17:4 23:11 |
| **employees (1)** | **examined (1)** | **fellowships (1)** | 30:10 | 27:8 34:22 |
| 15:4 | 5:4 | 11:20 | **following (5)** | 38:18 |
| **encountered ...** | **Excellent (1)** | **fetal (11)** | 26:15 46:17 | **GIL (9)** |
| 16:19 | 37:6 | 27:9,10 39:9 | 52:14 54:13 | 2:14 7:9 18:14 |
| **endocervical ...** | **exhibit (7)** | 43:6 44:22 | 60:4 | 32:24 35:12 |
| 36:20 | 4:13,14,15 | 45:6,8,10,14 | **follows (1)** | 41:2 42:10 |
| **endometrial ...** | 13:14,18 | 45:19,20 | 5:5 | 55:4,12 |
| 36:25 | 32:25 35:15 | **fetus (9)** | **force (1)** | **give (4)** |

January 26, 2022

[Page 65]

21:4 39:19
56:10,11
**given (3)**
19:7 30:2 47:7
**go (7)**
6:23 7:15 10:4
19:20 20:21
24:10 28:14
**going (9)**
5:19 7:15,16
16:6 24:16
32:11 52:16
53:14,21
**good (2)**
5:14 28:6
**gradually (1)**
36:21
**graduate (1)**
8:12
**graduating (1)**
9:18
**grasp (1)**
36:19
**Grenada (1)**
8:8
**gritty (1)**
37:2
**gross (3)**
42:24 44:14
45:8
**growing (1)**
23:13
**gynecology (5)**
10:16,18 11:2
11:7,21

**H**

**H (1)**
58:6
**half (1)**
21:16
**hand (1)**
59:18
**Hank's (1)**

36:21
**happen (1)**
16:9
**happened (2)**
24:7 50:3
**happens (1)**
49:4
**hard (2)**
19:15 42:14
**hcg (1)**
27:25
**head (1)**
52:7
**hear (2)**
54:10,15
**heartbeat (1)**
27:10
**heavy (2)**
19:13 36:14
**HEIDELL (1)**
2:10
**held (2)**
1:13 59:4
**help (1)**
20:18
**hemostasis (1)**
37:6
**hereunto (1)**
59:17
**high (2)**
9:6 49:6
**history (7)**
21:3,4,9,10,17
22:3,23
*hold (2)*
32:7 35:12
**holding (1)**
32:22
**hopefully (1)**
16:10
**hormone (1)**
16:4
**hospital (8)**
10:10,12,19

12:9,12,14,17
19:16
**Hundreds (1)**
35:23

**I**

**identificatio...**
13:9,14,19
58:9
**identity (1)**
4:8
**image (4)**
34:24 35:4,7
38:13
**important (1)**
49:2
**inactions (1)**
55:9
**incident (1)**
55:2
**incidentally (...**
8:20 24:10
**include (2)**
44:25 48:4
**incomplete (1)**
55:10
**increased (1)**
22:11
**incur (1)**
19:22
**independent ...**
13:24
**index (1)**
56:3
**indicate (4)**
43:16 44:23
47:9,17
**indicating (2)**
32:23 34:14
**indirectly (1)**
59:14
**infection (4)**
18:7 49:7,18
49:21

**inform (5)**
21:20 29:22
46:2 47:5
52:2
**information ...**
29:4
**informed (4)**
31:22 32:3,24
58:20
**initiated (1)**
36:10
**inside (3)**
23:13 27:8
38:20
**instruct (1)**
47:8
**instruments ...**
37:5
**insurance (2)**
19:19 20:25
**intended (1)**
53:12
**interested (1)**
59:13
**internal (2)**
10:2,3
**internet (1)**
16:6
**intrauterine ...**
34:21
**issues (1)**
46:6

**J**

**Jae (2)**
2:2 5:17
**January (2)**
1:14 59:5
**Jeong (5)**
14:17 25:14,15
25:20,24
**jurat (1)**
56:23

**K**

**K (1)**
5:2
**Kim (60)**
1:7,12 5:1,8
6:1 7:1 8:1
9:1 10:1 11:1
12:1 13:1
14:1 15:1
16:1 17:1
18:1 19:1
20:1 21:1
22:1 23:1
24:1,11 25:1
26:1 27:1
28:1 29:1
30:1 31:1
32:1 33:1
34:1 35:1
36:1 37:1
38:1 39:1
40:1 41:1
42:1 43:1
44:1 45:1
46:1 47:1
48:1 49:1
50:1 51:1
52:1 53:1
54:1 55:1
56:1 57:1,8
60:1,2
**kind (4)**
27:2 30:13
39:15,19
**know (15)**
7:19 8:23,24
14:6 16:6
19:24 30:20
30:22 33:13
33:18 42:11
51:23 53:5
55:20,23
**Korea (4)**
52:17 53:15,22

January 26, 2022

[Page 66]

54:19
**Korean (12)**
8:19,20,25 9:2
9:3,4 14:14
14:25 15:6
25:15 33:6,10

**L**

**L (1)**
3:2
**lab (2)**
27:18 39:4
**laceration (1)**
18:9
**language (3)**
8:15,17,21
**languages (1)**
8:22
**law (2)**
2:2 4:10
**lawyer (2)**
5:17 56:11
**lead (1)**
55:8
**leading (1)**
39:24
**learn (1)**
8:25
**learning (1)**
52:10
**leave (3)**
30:24 31:6
33:22
**Lee (2)**
2:2 5:17
**left (1)**
54:9
**legal (1)**
55:5
**LegalView/Z...**
4:5
**legs (1)**
52:5
**letters (1)**

50:7
**level (1)**
28:2
**Lexitas (1)**
4:6
**licensed (4)**
11:9,12,14,18
**life (1)**
9:3
**LINE (1)**
60:7
**lip (1)**
36:19
**listed (1)**
25:8
**lithotomy (1)**
36:13
**litigation (2)**
4:10,18
**little (6)**
8:16,18 37:17
37:17 43:13
44:7
**live (1)**
52:10
**LLP (1)**
2:10
**located (3)**
8:4,7 30:8
**location (1)**
31:8
**locations (1)**
4:5
**long (5)**
7:11 38:6
42:14 47:18
48:5
**longer (1)**
38:20
**look (2)**
24:17 50:6
**looking (2)**
34:25 41:15
**looks (1)**

34:13
**losing (1)**
49:24
**lot (1)**
19:15

**M**

**M (1)**
5:2
**M.D (3)**
1:7,12 57:8
**malpractice (...**
6:18 56:2
58:25
**manager (1)**
24:12
**manner (1)**
4:9
**mark (3)**
13:8 43:14,14
**marked (4)**
4:13 13:13,18
32:25
**marriage (1)**
59:12
**matter (1)**
59:15
**matters (1)**
4:18
**mean (3)**
25:5 45:6,13
**measuring (1)**
43:4
**medical (46)**
6:18 7:25 8:2
9:18 10:10,19
12:9,12,14,17
12:20 13:2,4
13:4,5,8,12
18:11,23 19:2
19:4,8,10,19
19:21 20:4,5
20:5,10,12,16
20:25 21:9,10

28:11,13,21
28:24 29:2,17
29:23 41:25
46:6 56:2
58:10,25
**medication (1)**
19:7
**medications ...**
19:11
**medicine (13)**
9:8,24 10:2,3,5
10:14,22,24
11:9,15,18
17:20,22
**meet (1)**
31:18
**meeting (1)**
4:5
**menstrual (3)**
16:20 23:8
51:17
**mental (1)**
21:17
**mentioned (1)**
21:15
**mentions (1)**
42:4
**message (2)**
30:2 47:7
**met (3)**
14:4 18:13
21:5
**middle (1)**
9:6
**Mifepristone...**
19:6
**millimeters (1)**
43:5
**mind (3)**
29:16,18,22
**mine (2)**
48:20,22
**Minhye (3)**
1:4 5:16 12:21

**Minji (2)**
14:17 25:14
**minutes (1)**
38:8
**miscarriage (...**
23:18
**money (3)**
52:15 53:10
54:13
**month (1)**
52:17
**morning (3)**
5:14,20 16:7
**movement (1)**
51:16
**multiple (1)**
43:3
**MURPHY (1)**
2:10

**N**

**N (5)**
2:1 3:2 5:2,2
58:1
**name (10)**
5:7,14 25:12
30:21,22
33:17,18,23
58:17,23
**names (4)**
24:25 25:3,8
25:10
**nausea (2)**
54:6,7
**nearest (1)**
20:22
**necessarily (1)**
45:12
**necessary (1)**
60:5
**need (7)**
4:6 7:18 20:13
20:18,21
32:11 47:5

needed (1)
31:12
needs (1)
47:25
neglect (2)
6:20 54:25
New (12)
1:2,15 2:5,13
2:13 5:4,11
8:5 11:10,15
30:10 41:9
Nham (1)
14:17
Notary (4)
1:14 5:3 57:13
60:25
notation (1)
37:20
note (1)
37:17
noted (1)
57:5
notwithstand...
4:16
November (10)
14:5 15:11
16:22 21:22
26:20 27:20
27:25 29:9
30:4 32:17
number (5)
19:5,9,18
24:22 56:3
numbers (2)
50:6,7
nurse (1)
14:12

**O**

O (1)
3:2
oath (2)
3:14 4:6
OB/GYN (1)

12:4
Objection (6)
7:9 18:14 41:2
42:10 55:4,12
objections (1)
3:9
obligation (1)
4:17
observe (1)
40:9
obstetrics (5)
10:16,18 11:2
11:7,21
obtain (3)
16:12 22:23
56:9
occasional (1)
54:7
occurred (3)
34:7 54:19
55:2
October (2)
16:17,21
odor (1)
49:15
offer (6)
15:5 18:23,25
52:13 53:17
53:20
offered (1)
28:14
offering (2)
20:14,19
office (22)
12:3 13:5 15:7
15:12 19:17
24:12,14
26:10,15,21
29:11,21
31:22 35:17
42:5 46:19,24
47:10 50:16
54:9,12 56:8
officer (2)

3:14 4:6
Oh (1)
33:5
Okay (3)
20:2 24:24
49:3
ones (1)
12:11
open (2)
7:20,21
operating (1)
36:6
operative (2)
37:9,12
opinion (1)
55:21
option (3)
17:16 18:2
27:21
options (3)
17:18 26:5,13
order (1)
1:12
ordinarily (1)
45:2
outcome (1)
59:14
outside (1)
23:13
owner (1)
58:17
owns (1)
30:18

**P**

P (3)
2:1,1 3:2
P.C (1)
2:2
p.m (1)
57:5
pack (1)
21:16
page (17)

24:17,20,21
32:6,15 34:25
35:14 37:11
38:12 41:16
41:17,23
56:22 58:3,9
58:16 60:7
paid (2)
52:15,19
pain (7)
17:24 18:7
19:14 49:14
50:22 54:2,5
Parenthood (...
28:15 29:4
parents (1)
9:2
Park (56)
1:4 2:12 5:17
12:21,24
13:22,25 14:4
14:6,10 16:19
17:10,23 18:3
18:12 19:23
22:14,17 24:4
25:6,19,21,25
26:3,5,7,24
27:15 28:23
29:6,10,16
31:19,21
32:18 33:14
34:3,6 36:2
37:25 44:24
45:11 46:19
46:23 47:10
48:16 52:2,19
52:24 53:3,5
53:14,24
54:10,22,25
Park's (6)
15:9 16:12
21:3 32:21
52:9 55:9
part (5)

22:2 33:4
41:19,19
44:21
part-time (1)
15:4
partially (1)
55:10
participating...
4:5
particular (2)
8:6 31:11
parties (5)
3:4 4:3,9,16
59:13
partners (2)
9:9,12
parts (9)
43:6 44:22,25
45:6,8,10,14
45:19,20
party (4)
4:17,17 30:17
59:8
pass (1)
38:24
passing (1)
39:11
Path (1)
41:9
pathological ...
39:8
pathologist (4)
42:12 43:19
45:7,15
pathologists ...
42:16
pathology (14)
39:4 41:7,16
41:22 42:6
43:12 45:10
45:14 46:4,9
47:6 48:18
50:4 51:2
patient (29)

January 26, 2022

[Page 68]

19:3,10,12,18
20:15 22:8
26:14 28:10
28:12 30:3
31:15 36:6,9
36:11,12
43:23 45:25
46:2,8 47:4
47:14,17,25
48:9 49:9,13
50:13,15 51:3
**patient's (2)**
36:16,18
**patients (4)**
19:7,15 46:7
51:25
**pelvic (6)**
49:14 50:22
51:6,8,13
54:5
**people (2)**
14:24 30:14
**Perforation (1)**
18:8
**perform (18)**
15:14,17 22:24
22:24 23:4
27:2 28:15,16
30:4 31:9
34:5,9 36:23
39:7 41:4
51:6,8 52:13
**performed (1...**
15:18,19 23:22
27:3,19 35:10
35:18,21 36:7
36:24 38:9
39:2,14 45:21
**performing (3)**
23:5,10 24:3
**period (7)**
16:13,16,20
23:8 42:8,15
51:17

**person (6)**
20:24 25:13
30:17 49:17
49:20,24
**phone (1)**
46:7
**phonecall (4)**
29:19 46:12,25
47:2
**physical (5)**
15:18 22:24
27:3,6 50:25
**physically (1)**
38:21
**pick (1)**
54:13
**pictures (1)**
35:13
**PITTONI (1)**
2:10
**place (3)**
4:7 32:3 34:17
**placed (3)**
36:12,15,17
**plaintiff (5)**
1:5,12 2:3 5:16
12:21
**Plaintiff's (7)**
13:9,11,13,18
33:2 35:15
58:8
**plan (1)**
28:8
**Planned (2)**
28:14 29:4
**plastic (1)**
40:3
**Plaza (1)**
2:4
**please (3)**
7:4 18:16
25:23
**point (7)**
7:5 13:12,16

18:19 32:21
43:9 55:17
**pole (1)**
27:9
**population (1)**
15:7
**portion (5)**
7:6 18:20
36:16,17
55:18
**position (1)**
36:13
**positive (2)**
16:2 17:8
**possession (1)**
4:15
**possibility (3)**
23:19,23 51:4
**possible (6)**
23:18 43:5
44:16 46:24
48:9 49:19
**possibly (3)**
14:24 32:7
48:17
**post (1)**
38:14
**posterior (1)**
36:15
**practice (11)**
9:13 11:9,18
11:24 20:9
46:5 47:11,16
47:23,24
51:24
**practicing (2)**
9:7 12:4
**practitioner ...**
9:15
**pregnancies ...**
19:4,8 20:11
21:18 22:9
28:13
**pregnancy (4...**

15:13,21,23,25
16:2,4 17:2,5
17:6,7,11,17
17:19,22
18:12 19:12
20:16 21:5,24
22:4,5,18
23:12,14,15
23:16,20,24
24:2 26:14
27:22 28:7,7
28:11,17,25
29:2,23,25
34:22 35:4,7
37:13 45:22
**pregnant (6)**
16:18 22:23
23:9 27:11
28:6 51:18
**prepped (1)**
36:13
**prescriber (1)**
19:6
**present (6)**
4:3 24:18 25:2
25:13 32:18
34:2
**presented (2)**
4:14 15:11
**presenting (1)**
4:13
**previous (3)**
21:17,24 38:18
**prior (6)**
4:15 12:23
13:20 22:8
38:19 54:22
**privately (1)**
12:4
**privileges (3)**
12:8 30:12,15
**probably (2)**
35:23 42:22
**problem (1)**

20:20
**procedure (2)**
36:4 38:6
**Proceed (1)**
38:12
**proceeded (1)**
35:25
**proceeding (1)**
60:4
**product (2)**
40:5 43:2
**products (20)**
17:25 18:8
37:4 38:22
39:9,10,16,20
41:6,11 44:4
44:6,10,19
45:3 48:17
49:5,10,16
51:5
**progesterone...**
28:2
**prolonged (1)**
42:8
**prompted (1)**
45:24
**provide (7)**
19:4 20:10
28:13 30:25
31:3,4 33:23
**provided (1)**
33:2
**provider (3)**
20:14,19,21
**provides (1)**
16:8
**providing (1)**
20:3
**Public (4)**
1:15 5:4 57:13
60:25
**purpose (1)**
4:10
**pursuant (2)**

| | | | | |
|---|---|---|---|---|
| 1:12 4:3 | 29:3 53:9 | 54:18,22 | 37:9,12,15 | 19:10 |
| **put (2)** | 60:7 | 58:10 | 41:16,23 42:3 | **response (2)** |
| 9:8 43:16 | **reasons (1)** | **referred (1)** | 42:4,9,18 | 22:21 28:19 |
| | 19:5 | 14:7 | 43:12,17,23 | **results (8)** |
| **Q** | **recall (19)** | **referring (2)** | 44:5,9,12,22 | 15:23 27:5,18 |
| **question (13)** | 9:5 14:9,11,19 | 35:14 37:11 | 45:18 46:4,9 | 27:23 28:3 |
| 3:9 4:15 7:4,17 | 21:2,25 25:24 | **refresh (1)** | 46:10 47:6,15 | 34:11 51:2,13 |
| 7:20,21 18:16 | 29:21 30:23 | 13:21 | 48:2,19 50:4 | **retained (11)** |
| 21:7 25:22 | 38:24 39:5,11 | **refund (2)** | 51:2 | 17:24 18:8 |
| 45:4,16 55:5 | 39:22 43:21 | 52:15,22 | **reported (3)** | 44:3,6,10 |
| 55:14 | 46:14 47:3 | **refunded (1)** | 21:18 44:15 | 45:11 48:17 |
| **questioning (2)** | 52:25 53:4,23 | 53:9 | 54:7 | 49:5,9 53:25 |
| 4:15 5:15 | **receipt (1)** | **refused (2)** | **reporter (7)** | 55:22 |
| **questions (2)** | 47:14 | 53:5,20 | 4:4,8 5:6 7:7 | **retaining (1)** |
| 5:19 57:4 | **receive (1)** | **regard (1)** | 18:21 33:3 | 51:4 |
| **quickly (1)** | 32:12 | 53:25 | 55:19 | **return (7)** |
| 19:16 | **received (5)** | **regarding (4)** | **Reporting (1)** | 24:4 26:14 |
| **quite (1)** | 42:2,9,18 43:3 | 4:15 12:24 | 4:6 | 42:13 46:19 |
| 44:17 | 46:18 | 13:22 36:9 | **reports (3)** | 46:21,24 |
| | **recess (1)** | **relation (1)** | 21:13 42:13,17 | 47:10 |
| **R** | 43:10 | 30:13 | **represented (...** | **returned (1)** |
| **R (3)** | **recognize (1)** | **remaining (1)** | 59:9 | 54:12 |
| 2:1 58:14 59:1 | 50:9 | 37:4 | **request (6)** | **review (3)** |
| **Rachel (1)** | **recollection (3)** | **remember (1)** | 15:12 31:7,15 | 12:23 48:2 |
| 14:17 | 13:21,25 25:19 | 53:17 | 32:13 33:25 | 54:18 |
| **range (1)** | **record (20)** | **remote (1)** | 56:13 | **reviewed (8)** |
| 49:12 | 5:7 7:6 9:9 | 4:5 | **requested (4)** | 13:3 27:18,20 |
| **reach (1)** | 13:11,17 | **remotely (2)** | 7:6 18:20 | 37:21 43:17 |
| 20:21 | 18:20 30:24 | 1:13 4:7 | 28:10 55:18 | 51:2 54:21 |
| **reaction (1)** | 31:25 34:12 | **remove (2)** | **reserved (1)** | 60:3 |
| 52:9 | 35:13,17 | 37:3 53:15 | 3:10 | **reviewing (1)** |
| **reactive (1)** | 37:21 41:19 | **removed (2)** | **residency (5)** | 13:20 |
| 44:13 | 41:20,20 | 37:5 49:17 | 9:19,22 10:7 | **right (7)** |
| **read (8)** | 42:25 43:8 | **rendered (1)** | 10:18 11:22 | 24:18 32:23 |
| 7:7 18:17,21 | 55:18 58:11 | 12:20 | **residual (1)** | 34:25 37:17 |
| 42:19,21,25 | 59:10 | **repeat (5)** | 45:3 | 38:4 43:13 |
| 55:15,19 | **recorded (1)** | 7:4 18:16 | **resolve (1)** | 50:5 |
| **reading (2)** | 4:8 | 25:23 44:8 | 6:16 | **risk (6)** |
| 37:8 43:2 | **recording (1)** | 55:14 | **respect (3)** | 17:21 22:11 |
| **really (1)** | 4:9 | **repeated (1)** | 17:10 37:7 | 49:6,17,20,24 |
| 41:18 | **records (12)** | 37:3 | 55:24 | **risks (6)** |
| **reason (7)** | 12:23 13:2,4,5 | **rephrase (1)** | **respective (1)** | 17:15 18:5,11 |
| 14:23 15:3 | 13:8,13 41:23 | 44:12 | 3:4 | 26:12 27:20 |
| 20:3 23:3 | 41:25 51:19 | **report (26)** | **respond (1)** | 36:9 |

| | | | | |
|---|---|---|---|---|
| room (7) | secretary (4) | 17:3 | 51:14,20 | 56:15 |
| 19:16,21 20:8 | 30:2 45:24 | showed (1) | sonograms (1) | stenographic... |
| 20:22,24 25:7 | 47:8,13 | 27:8 | 51:24 | 59:7 |
| 36:6 | section (1) | shows (1) | soon (2) | sterile (2) |
| rules (1) | 4:3 | 35:7 | 46:24 48:9 | 36:14,14 |
| 7:16 | see (13) | sign (5) | sorry (5) | STIPULAT... |
| RXR (1) | 24:18,25 25:3 | 31:21 32:3,14 | 10:7 21:8 | 3:3,8,12 4:2,13 |
| 2:4 | 26:21 29:10 | 32:16 37:15 | 25:23 44:7 | Stone (16) |
| | 29:11,14 39:9 | signature (6) | 45:5 | 2:7 5:13,15 |
| **S** | 45:7,20 46:11 | 32:9,22 37:16 | sort (4) | 13:7 16:5 |
| S (7) | 48:8 50:7 | 37:20 50:12 | 8:21 43:12 | 18:17 31:6 |
| 2:1 3:2,2 5:2 | seeing (6) | 60:21 | 47:9 48:4 | 32:11 33:5 |
| 58:6,14,14 | 38:24 39:5,11 | signed (3) | space (3) | 34:13 43:8,11 |
| sac (8) | 39:22 43:23 | 3:13,15 32:19 | 30:24 31:6 | 55:15 56:10 |
| 17:4 23:11 | 48:18 | significance (... | 33:22 | 57:3 58:4 |
| 27:8,9 34:22 | seen (6) | 45:18 | Spanish (1) | study (5) |
| 34:23 38:18 | 38:19,20 44:14 | significant (1) | 8:19 | 8:10 9:24 10:4 |
| 38:19 | 45:2,23 51:15 | 21:4 | speak (5) | 10:11,15 |
| Sanford (1) | send (3) | signify (4) | 8:14,17 14:10 | studying (1) |
| 5:10 | 41:6,11 42:16 | 28:3 44:5,9 | 43:19 47:5 | 10:3 |
| saw (8) | sent (2) | 45:9 | specimen (5) | submitted (1) |
| 22:18 23:11 | 39:3 42:22 | Sims (1) | 39:3 42:7,13 | 43:7 |
| 26:18 29:6 | separate (1) | 36:16 | 43:6 44:19 | Subscribed (2) |
| 40:2,11,14,22 | 4:5 | situation (6) | speculum (2) | 57:10 60:22 |
| says (4) | serve (1) | 47:21,22 48:6 | 36:15,17 | subsequent (1) |
| 24:17,25 44:22 | 9:19 | 48:7,8,13 | spoken (1) | 22:10 |
| 60:3 | service (4) | small (1) | 36:9 | substance (3) |
| scar (2) | 4:6 20:14,20 | 51:15 | St (2) | 17:13 27:17 |
| 22:12,13 | 28:16 | smoked (1) | 8:2,8 | 50:19 |
| schedule (3) | services (1) | 21:15 | staff (2) | successful (1) |
| 31:11,12 42:11 | 52:20 | soft (1) | 46:6 53:2 | 53:13 |
| scheduled (1) | set (2) | 43:4 | stage (1) | successfully (... |
| 31:14 | 31:16 59:17 | solo (1) | 18:12 | 8:9 10:17 |
| school (8) | seven (1) | 9:15 | standard (2) | suction (8) |
| 7:25 8:3,7,10 | 38:8 | somebody (1) | 7:3 42:15 | 36:22,23 37:2 |
| 9:4,6,6,19 | severe (3) | 14:13 | start (1) | 38:25 39:12 |
| schools (1) | 19:14 49:20,23 | sonogram (21) | 11:20 | 39:12 40:3,4 |
| 9:3 | sharp (3) | 15:20 16:24 | State (5) | suite (2) |
| sealing (1) | 36:23 39:2,13 | 17:2,3 22:24 | 1:15 5:4,7 | 30:9 38:2 |
| 3:5 | she'll (1) | 23:10,22 24:2 | 11:10,15 | sum (3) |
| second (2) | 31:4 | 27:4,7 34:10 | stated (2) | 17:13 27:17 |
| 26:19 53:6 | SHEET (1) | 34:12,20 | 16:23 44:12 | 50:19 |
| secretaries (1) | 60:1 | 35:18 36:7,8 | states (3) | supply (1) |
| 47:4 | show (1) | 37:23 51:6,9 | 1:1 11:17 | 4:17 |

January 26, 2022

[Page 71]

| | | | | |
|---|---|---|---|---|
| **sure (1)** | 46:8 54:14 | **testified (3)** | 43:4 44:18 | **true (1)** |
| 41:18 | **tan (1)** | 5:5 7:12 11:25 | **today (2)** | 59:10 |
| **surgery (15)** | 43:4 | **testimony (5)** | 6:6,10 | **try (1)** |
| 17:20 18:4 | **teaching (2)** | 6:25 37:8 59:6 | **told (4)** | 16:11 |
| 22:10 30:3,4 | 12:13,16 | 59:7 60:5 | 30:2 46:2,23 | **tube (2)** |
| 31:16 35:19 | **tell (17)** | **tests (6)** | 47:4 | 39:24 40:3 |
| 38:2,19 52:14 | 13:2 14:3 15:3 | 15:14,19 23:5 | **top (5)** | **two (5)** |
| 52:16,17,21 | 21:23 24:4 | 27:2,5 28:5 | 24:18 34:24 | 19:9 21:13,24 |
| 53:11,18 | 25:12 28:23 | **texture (1)** | 37:17 38:13 | 22:8 43:7 |
| **surgical (44)** | 29:19 30:3 | 37:2 | 43:13 | **types (1)** |
| 13:6,10,17 | 32:6 43:25 | **thank (2)** | **Torres (3)** | 8:21 |
| 18:13 22:4,9 | 45:24 46:5 | 33:5 57:4 | 13:7 18:18 | |
| 23:4 24:5 | 47:13,25 | **third (1)** | 59:3 | **U** |
| 26:8 28:16,22 | 49:11 50:11 | 20:3 | **TORRES,R...** | **U (2)** |
| 28:24 29:15 | **ten (1)** | **three (8)** | 59:21 | 3:2 58:14 |
| 29:25 30:5,11 | 38:8 | 14:20,23 16:22 | **train (1)** | **ultrasound (4)** |
| 30:15,18 31:9 | **term (1)** | 19:18 23:9 | 10:15 | 35:25 38:10,14 |
| 31:19,23 32:5 | 38:23 | 24:17,21 | **transcribed (1)** | 38:17 |
| 32:8 33:12 | **terminate (5)** | 51:18 | 59:8 | **unauthorize...** |
| 34:6 35:18,20 | 17:16,19 26:13 | **time (38)** | **transcript (5)** | 4:10 |
| 36:3 39:18 | 27:21 29:25 | 3:10 6:5 7:5 | 4:17 33:4,23 | **understand (4)** |
| 41:7,13,18,19 | **terminating (...** | 9:11,13,25 | 59:10 60:3 | 21:7 25:22 |
| 41:20,24 | 17:21 | 10:15 12:15 | **translate (2)** | 45:4 55:13 |
| 44:24 45:21 | **termination (...** | 12:19 13:12 | 26:3 33:13 | **Uniondale (1)** |
| 53:6,15,22 | 15:13 17:11 | 13:16 14:19 | **translated (1)** | 2:5 |
| 54:19 58:11 | 19:4,12 20:12 | 15:5,15 18:19 | 34:2 | **United (2)** |
| 58:17,20 | 20:16 22:4,17 | 21:5 23:12,20 | **translating (1)** | 1:1 56:15 |
| **surgically (1)** | 28:11,13,21 | 24:11,15 | 25:20 | **University (1)** |
| 49:17 | 28:22,24 29:2 | 25:18 26:19 | **translation (1)** | 8:2 |
| **sworn (8)** | 29:17,23 | 27:12 28:9 | 33:9 | **unpredictabl...** |
| 3:13,15 4:7 5:3 | 37:12,22 | 29:5 31:14 | **translator (4)** | 19:9 |
| 57:10 59:5 | 38:14 45:21 | 37:25 42:8,12 | 25:16,25 26:2 | **unremarkab...** |
| 60:2,22 | 53:22 | 42:15,16 43:9 | 58:23 | 27:7 50:25 |
| | **terminations...** | 47:14 52:3 | **treating (1)** | **upset (2)** |
| **T** | 19:8 20:10 | 54:8,14 55:17 | 13:25 | 52:11 53:19 |
| **T (6)** | 21:14,24 22:9 | 57:5 | **treatment (3)** | **urgency (4)** |
| 3:2,2 58:6,14 | 28:17 | **times (3)** | 12:20 20:24 | 47:7,9,19 48:4 |
| 59:1,1 | **terms (2)** | 5:23 6:9 55:24 | 28:8 | **urgent (5)** |
| **take (2)** | 21:3 47:19 | **tissue (19)** | **trial (3)** | 48:8,12,15,21 |
| 19:11 38:6 | **test (12)** | 22:12,13 38:24 | 3:10 6:23 7:2 | 48:23 |
| **taken (4)** | 15:17,21,24,25 | 39:2,11,13,15 | **tried (2)** | **urine (2)** |
| 1:12 43:10 | 16:3 17:7 | 39:23 40:2,8 | 16:7 42:12 | 15:25 17:7 |
| 59:7 60:4 | 24:3 27:19,24 | 40:9,11,14,19 | **trimester (1)** | **use (1)** |
| **talk (2)** | 34:9 35:9,10 | 40:22,24 41:5 | 21:14 | 30:12 |

January 26, 2022

[Page 72]

**usually (1)**
42:16
**uterus (10)**
18:8 22:10
23:13,14 27:8
38:20 49:25
51:7,16 52:3

**V**

**V (1)**
5:2
**vagina (4)**
36:16,18 37:5
39:24
**vaginal (4)**
49:13,15 50:23
54:5
**venue (2)**
56:5 58:25
**verbally (2)**
7:18 33:13
**viable (1)**
28:7
**Victoria (1)**
14:17
**video (3)**
4:4,8,16
**Videoconfer...**
1:13 4:5
**villi (4)**
43:5 44:14,16
45:23
**Vilma (3)**
55:16 59:3,21
**Vincent's (1)**
8:8
**violation (1)**
4:10
**visit (3)**
15:10 25:18
26:10
**visual (1)**
39:19
**visualize (4)**

16:25 40:13,19
40:20
**visualized (4)**
27:10 37:6
39:7 51:16
**visually (4)**
38:22 39:6
40:16,24

**W**

**wait (2)**
47:18 48:5
**waived (1)**
3:6
**want (3)**
35:12 36:3
46:10
**wanted (2)**
29:24 46:8
**wasn't (2)**
44:17 53:12
**way (3)**
7:14 45:17
46:15
**we're (1)**
34:25
**week (1)**
26:15
**weeks (6)**
16:18,21 23:9
27:11,13
51:18
**weighted (1)**
36:15
**WHEREOF ...**
59:17
**willing (1)**
19:20
**witness (10)**
4:4,6,7,14,16
4:15 59:5,11
59:17 60:21
**witnesses (1)**
4:8

**woman (1)**
49:4
**womb (1)**
48:18
**words (3)**
11:25 35:6
54:2
**work (3)**
5:10 15:5
24:14
**working (4)**
14:13,19,20
33:20
**write (1)**
37:16
**writing (2)**
33:9 50:12
**written (1)**
4:9
**wrote (1)**
50:13

**X**

**x (6)**
1:3,9 43:4,5
58:1,6
**xxxxx (3)**
2:16 3:19 4:20

**Y**

**year (4)**
6:8 8:12 11:12
11:24
**years (3)**
9:5 10:11
21:23
**yolk (3)**
27:9 34:22
38:19
**York (11)**
1:2,15 2:5,13
2:13 5:4,11
8:5 11:10,15
30:10

**Z**
**Zoom/Legal...**
1:13

**0**

**01/26/2022 (1)**
60:4

**1**

**1 (4)**
13:9,14 35:15
58:10
**10:03 (1)**
1:14
**1000 (1)**
35:23
**10016 (1)**
2:13
**11/27/17 (3)**
29:11 31:18
41:12
**11/27/2017 (1)**
42:7
**11:45 (1)**
57:5
**11354 (1)**
30:10
**11355 (1)**
5:11
**11556 (1)**
2:5
**12/13 (1)**
50:16
**12/13/17 (2)**
50:14 51:11
**13 (3)**
46:22 58:10,11
**136-20 (1)**
30:9
**143-16 (1)**
5:10
**16 (6)**
14:5 15:11
16:17,21,22

21:22
**16th (2)**
27:20,25
**1996 (2)**
8:13 9:22
**1997 (1)**
9:22
**1998 (1)**
10:13

**2**

**2 (3)**
13:11,18 58:11
**20 (4)**
43:4,5,5 60:23
**2003 (6)**
7:13 10:13
11:13,15 12:7
12:8
**2009 (2)**
11:4,5
**2017 (16)**
9:12,16 11:5
12:16 14:5,21
15:11 16:17
16:21,22
21:22 26:20
29:9 30:4
32:17 46:22
**2022 (4)**
1:14 57:11
59:5,18
**21st (1)**
26:20
**256 (1)**
27:25
**26 (1)**
1:14
**26th (1)**
59:4
**27 (3)**
29:9 30:4
32:17
**28 (1)**

DEITZ Court Reporting... A Lexitas Company
800-678-0166

| | |
|---|---|
| 28:2 | **99 (1)** |
| **2nd (1)** | 2:12 |
| 59:18 | |
| **3** | |
| **31 (1)** | |
| 58:17 | |
| **3113(d) (1)** | |
| 4:3 | |
| **32 (1)** | |
| 58:20 | |
| **33 (1)** | |
| 58:23 | |
| **37 (1)** | |
| 37:11 | |
| **38 (2)** | |
| 35:14 38:12 | |
| **38th (1)** | |
| 30:9 | |
| **3rd (1)** | |
| 42:5 | |
| **4** | |
| **5** | |
| **5 (1)** | |
| 58:4 | |
| **5-I (1)** | |
| 30:9 | |
| **56 (1)** | |
| 58:25 | |
| **6** | |
| **6-millimeter ...** | |
| 36:22 | |
| **626 (1)** | |
| 2:4 | |
| **7** | |
| **750 (2)** | |
| 52:21,23 | |
| **8** | |
| **9** | |